E278ULBC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                        14 Cr. 68 (KBF)

5   ROSS WILLIAM ULBRICHT,

6                Defendant.

7   ------------------------------x
                                          February 7, 2014
8                                         12:00 p.m.

9   Before:

10                    HON. KATHERINE B. FORREST

11                                        District Judge

12                            APPEARANCES

13  PREET BHARARA
          United States Attorney for the
14        Southern District of New York
    SERRIN TURNER
15        Assistant United States Attorney

16  JOSHUA DRATEL
    LINDSAY LEWIS
17        Attorneys for Defendant

18
    ALSO PRESENT:
19
          Special Agent Ilh Wan Yum
20        Special Agent Gary Alfred

21

22

23

24

25

E278ULBC

1           (Case called)

2           THE DEPUTY CLERK:  Counsel, please state your names

3     for the record.

4           MR. TURNER:  Good afternoon, your Honor.  Serrin

5     Turner for the government.  With me at counsel table is Special

6     Agent Ilh Wan Yum of the FBI and Special Agent Gary Alfred of

7     the IRS.

8           THE COURT:  Good afternoon.

9           MR. DRATEL:  Good afternoon, your Honor.  Joshua

10    Dratel and Lindsay Lewis for Mr. Ulbricht.

11          THE COURT:  Good afternoon, Mr. Dratel and Ms. Lewis.

12          The Court notes Mr. Ulbricht is present and here in

13    court this afternoon.

14          We are here for the arraignment of -- how do you

15    pronounce your client's name, Mr. Dratel?

16          MR. DRATEL:  Ulbricht.

17          THE COURT:  I wanted to make sure I got it right.

18          We are here for his arraignment and also for a

19    pretrial conference.  Is there anything else that we need to

20    take up today?

21          MR. DRATEL:  Not today from the defense.

22          THE COURT:  Thank you.

23          Let's then first proceed through the arraignment.

24    Then I would like to hear, Mr. Turner, the typical things one

25    would address during a pretrial conference, in terms of the

1    amount of discovery, the nature of the discovery, etc., and

2    timing in particular.

3            Mr. Dratel, you're standing.

4            MR. DRATEL:  I was anticipating.

5            THE COURT:  Mr. Ulbricht, would you please stand, sir?

6            Mr. Ulbricht, have you seen a copy of the indictment

7    that contains the four counts against you?

8            THE DEFENDANT:  I have.

9            THE COURT:  Have you had a chance to read it?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Have you reviewed it with your attorney?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Do you understand that you are charged

14   with one count of a narcotics trafficking conspiracy?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Do you understand that in Count Two you're

17   charged with a continuing criminal enterprise?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you understand that in Count Three

20   you're charged with a computer hacking conspiracy?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you understand in Count Four you're

23   charged with a money laundering conspiracy?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Would you like for the Court to read the

E278ULBC

1    indictment to you here now in open court?

2             THE DEFENDANT:  No, thank you.

3             THE COURT:  I am going to ask you one by one how you

4    plead to each count.

5             How do you plead, sir, to Count One, the narcotics

6    trafficking conspiracy, guilty or not guilty?

7             THE DEFENDANT:  Not guilty.

8             THE COURT:  How do you plead, sir, to Count Two, the

9    continuing criminal enterprise?

10            THE DEFENDANT:  Not guilty.

11            THE COURT:  How do you plead, sir, to count Three, the

12   computer hacking conspiracy?

13            THE DEFENDANT:  Not guilty.

14            THE COURT:  How do you plead, sir, to Count Four, the

15   money laundering conspiracy?

16            THE DEFENDANT:  Not guilty.

17            THE COURT:  You may be seated, sir.  Thank you.

18            THE DEFENDANT:  Thank you.

19            THE COURT:  Mr. Turner, tell me about the discovery in

20   this case.

21            MR. TURNER:  The discovery is voluminous, your Honor.

22   There were a number of servers seized in connection with this

23   investigation.  So we have informed defense counsel that that

24   will probably consume eight to ten terabytes, and we have asked

25   counsel to provide drives that we can copy, begin to copying

E278ULBC

1    the data on to.

2         THE COURT:  Is the government ready to start copying

3    as soon as the drives are provided to you?

4         MR. TURNER:  We are, your Honor.  We have consulted

5    with defense counsel and agreed to propose a 90-day schedule

6    for discovery.  We will be able to provide the data, we expect,

7    much sooner than that, but with this sort of case there can

8    often be technical issues that are encountered, and just to

9    make sure we have adequate time to resolve those issues and

10   make sure defense has the information they need, we ask for 90

11   days to complete the discovery process.

12        THE COURT:  All right.  I interrupted you.  Apart from

13   the servers, what else is there?

14        MR. TURNER:  There is also materials seized from the

15   defendant himself on the date of his arrest, his laptop

16   computer and some other computer devices, as well as some

17   documents seized from his apartment.  And then there is also

18   subpoenaed records and bank account returns and there is e-mail

19   search warrants that were executed, other electronic account

20   search warrants that were executed.

21        So it is a voluminous set of discovery materials that

22   will take some time to compile.  We have already begun the

23   process of pulling it together, and again, we expect to provide

24   most of this data well in advance of the 90 day deadline, but I

25   just want to make sure we have an adequate cushion to make sure

1    everything is taken care of at that point.

2         THE COURT:  So you will be able to provide things on a

3    rolling basis, where some of the materials, the subpoenas, the

4    e-mails, the search warrants, you will be able to produce those

5    forthwith?

6         MR. TURNER:  Yes.  One issue, your Honor, is we have

7    to make preparations to give the defendant a computer at the

8    MCC or the MDC and sometimes that can present some issues that

9    need to be worked through.  Again, we just want to make sure we

10   have time to work out those sort of technical or logistical

11   issues, but as to the substance of the discovery, we are

12   working on compiling it and we will produce it as fast as we

13   can.

14        THE COURT:  You and Mr. Dratel and Ms. Lewis have

15   discussed providing the defendant with a laptop in at the MDC?

16        MR. TURNER:  Yes.

17        THE COURT:  And he has agreed to do that?

18        MR. TURNER:  We will make the appropriate arrangements

19   with MDC.

20        THE COURT:  That's an agreed issue between the two

21   sides.  Terrific, Mr. Turner.

22        Let me also ask, from your perspective, Mr. Turner,

23   how long do you think that the government needs to prepare the

24   case for trial?

25        MR. TURNER:  We were discussing this before the

E278ULBC

1      conference, your Honor.  It sounds like defense counsel has a

2      number of trials that would complicate scheduling, but as far

3      as the government is concerned, we think trial would take less

4      than a month, and my only potential conflict at this point is

5      toward the end of this year I expect I may have a lengthy

6      trial.  So those are my conflicts, but I think defense counsel

7      has some other trials he is dealing with.

8               THE COURT:  What I am thinking of is November 3.

9               Mr. Dratel, why don't you describe to me, if you have

10     got sort of a sense of the discovery, of the type at least, in

11     your conversations with the government and of what is going to

12     be required in terms of your ability to review it, go through

13     it, etc., if you know of motions now as to the indictment that

14     you're thinking of or whether or not you haven't considered

15     that and whether or not on what schedule you will be able to

16     let the Court know for any other motions you might want to

17     bring.

18              MR. DRATEL:  As far as discovery, we have discussed

19     it.  I think the issue for us is probably going to be the form

20     in which we receive it.  What I mean by that is whether it's

21     static or dynamic, in the sense that whether we are going to

22     have to recreate a platform to view it in a dynamic form as

23     opposed to something that's static.  I think it may be

24     different for the server material versus the laptop material,

25     at least from our preliminary discussions.  So that's something

E278ULBC

1    maybe we will have to address once we get the material.

2            THE COURT:  I understand.

3            MR. DRATEL:  The Court understands what I mean.

4            THE COURT:  Yes.

5            Let me just ask Mr. Turner, in terms of the eight to

6    ten terabytes for the servers, is that going to be static?

7            MR. TURNER:  It will be in a form where it will need

8    to be reconstructed, your Honor.  I expect the defense would

9    need to hire an expert to do that.

10           THE COURT:  And the laptop will be?

11           MR. TURNER:  That I think will be immediately

12   browseable or searchable.

13           THE COURT:  OK.

14           So, Mr. Dratel, you were going to get an expert on

15   board for all of this?

16           MR. DRATEL:  Yes.

17           THE COURT:  Let's assume for the moment that you have

18   got somebody.  Have you spoken to somebody about how long it

19   will take them to build the appropriate platform?

20           MR. DRATEL:  It's hard to tell because I just had the

21   conversations with Mr. Turner very recently about the nature of

22   how they are going to be provided to us.  Also, I think there

23   will probably be a number of technical questions I won't be

24   able to answer until we have the material in hand so I don't

25   know the answer to the timing issue.

1        THE COURT:  What I am wondering is, is it possible,

2    because I understand the gating factor for you to be able to

3    review it is both to get it and get it onto a platform, is it

4    possible that there is a way Mr. Dratel can look at and have an

5    expert come look at the material at the U.S. Attorney's Office

6    so that they can determine what the platform is, how to build

7    it, and can start on that front end work before, for instance,

8    if it takes you 60 days, Mr. Turner, to produce it, if they

9    have started that process then, perhaps they can get a head

10   start.

11       MR. TURNER:  I don't think that would be necessary.  I

12   think we can provide the material quite soon.  As soon as we

13   get the drives it will probably take a week to copy the

14   material and the drive.  But I think in terms of the expertise

15   involved here, it's relatively straightforward.  Anybody who

16   knows how to set up a Web site and a sequel database will be

17   able to reconstruct this without that much problem.  I don't

18   think it will take an extraordinary length of time to get it up

19   and running for the defense.

20       THE COURT:  I think I am a little bit confused why 90

21   days is necessary, because that was premised upon some thought

22   that it was going to take you a while to put everything

23   together.  If you can get the servers out in a week or two,

24   then that should greatly condense the time period that's

25   necessary.

1          MR. TURNER:  We first need to get the drives from

2    defense counsel.

3          THE COURT:  He can go down do J&R.

4          MR. TURNER:  Defense usually provides that for the

5    government.  The 90-day deadline I have in mind is in terms of

6    the timing we would reappear before the Court and defense to

7    raise the possibility of motions.

8          THE COURT:  Let's start over again.  Not in terms of

9    all over, but tell me the soonest the government can finish the

10   production.

11         MR. TURNER:  I would propose 30 days after we get the

12   drives we need from the defense.

13         THE COURT:  Let me ask Mr. Dratel and Ms. Lewis, the

14   drives aren't that hard to acquire.  Those I think can be at

15   J&R or someplace relatively accessible.  They don't have to be

16   custom ordered.  So how quickly can you get them to Mr. Turner?

17         MR. DRATEL:  Probably next week.

18         THE COURT:  Why don't we say that by the 12th of

19   February, Mr. Dratel, you will be able to get the drives to Mr.

20   Turner?

21         MR. DRATEL:  We will say the 13th.  The 12th is a

22   holiday.

23         THE COURT:  By February 13th the defendant's counsel

24   will provide Mr. Turner with a number of drives.  You will need

25   enough to capture eight to ten terabytes.  Assume ten so it

E278ULBC

1   doesn't run into problems in terms of not having a sufficient

2   number of drives.

3            Mr. Turner, it will take you one week then to turn

4   that around?

5            MR. TURNER:  Optimally, but there could be errors in

6   the copying process.  I would ask for at least two weeks to

7   make sure that we have them right.

8            THE COURT:  Then you can tell me if you can beat the

9   one week.  I will give you two, and then if you beat the one

10  week, you let me know.

11           The 27th of February the government will provide the

12  electronic material, the eight to ten terabytes from the

13  servers.

14           How about the laptop?  You're going to put that onto a

15  different drive?

16           MR. TURNER:  That can be provided at the same time.

17           THE COURT:  So by February 27th the laptop will be

18  provided.

19           In terms of the subpoenas, the e-mails, the other what

20  I am going to call sort of more straightforward discovery, how

21  quickly can that be provided?

22           MR. TURNER:  We can do it at the same time, or if your

23  Honor would like it earlier, we can provide it by the 20th.

24           THE COURT:  The 20th for the other matters.  That way

25  there will be something that Mr. Dratel and Ms. Lewis can start

E278ULBC

1      reviewing.  Then the production will be completed by the 27th.

2              At that point, it sounds like Mr. Dratel and Ms. Lewis

3      will then need to look at the materials, work with an expert,

4      get them appropriately reviewable in whatever form and fashion.

5              It sounds like, Mr. Dratel, from your perspective,

6      your client will be personally involved in assisting you with

7      the review.  He is going to have a laptop accessible to him?

8              MR. DRATEL:  I hope so.  That's something that's

9      clearly out of our control, obviously, in terms of how long it

10     takes MDC to do that.  I hope by the time that all of this is

11     done that will be taken care of, yes.  But that's true, your

12     Honor.

13             THE COURT:  So you folks can work on getting the

14     appropriate clearances through the MDC and you can work on

15     getting the laptop and all of the materials.  As we know from

16     past experience, you will work on getting how it's going to be

17     charged and recharged?

18             MR. DRATEL:  Yes.

19             THE COURT:  We have run into that before.  So the

20     recharging will be dealt with.  That way, when you get the

21     material, the only gating factor after the 27th of February is

22     how quickly you can get your expert to get it up and running.

23             At this point in time, do you have an estimate as to

24     length?  Mr. Turner has provided a view; he doesn't think it's

25     going to be that complicated.  I don't have any way to know one

E278ULBC

1    way or the other how complicated or uncomplicated it is.

2              MR. DRATEL:  I don't know.  I just know that it's a

3    lot of material obviously.

4              The other issue is I don't know what the expert's time

5    frame is going to be.  I also know that we have our hands full

6    on another issue with another case at this time.  So I think,

7    just trying to scope it out, I think the additional 60 days

8    that Mr. Turner was anticipating would be for our review

9    essentially.  Hopefully we can get it done by then.

10             THE COURT:  So you will start reviewing it and getting

11   it up and running essentially right at the end of February, on

12   the 27th, and you will have March and April to get your hands

13   around it.  Why don't we set then a date at the end of April to

14   have you tell us what motions you expect to come out of that,

15   but I want to talk separately about any motions you may have to

16   the indictment.

17             Do we have something on April 30, Joe?

18             THE DEPUTY CLERK:  1:00.

19             THE COURT:  April 30 at 1 p.m.  We will then talk

20   about motions you have that may relate to the discovery.

21             Now, in terms of any motions that don't relate to the

22   discovery, as to the indictment or other matters that you know

23   of now, you may know of issues with the search or post-arrest

24   statements or something of that nature.

25             MR. DRATEL:  I don't know about the searches because

E278ULBC

1    we need to look get the warrants and look at that material.

2             THE COURT:  I have a proposal on motions.  Are there

3    going to be any motions as to the indictment?

4             MR. DRATEL:  I think so.

5             THE COURT:  If there are, let me throw out my

6    proposal, because as to the indictment, it strikes me that we

7    ought to be able to get those going and under review in a

8    relatively straightforward way.

9             The dates that I was thinking were March 7, with the

10   government opposing March 21, and any reply on March 28.  So

11   that makes those non-discovery related motions or motion fully

12   briefed by the beginning of April.  How does that sound to you?

13            MR. DRATEL:  That sounds fine.  May I ask to kick it

14   over to the following Monday, the 10th, because February is a

15   short month and we have a lot of other issues that we will have

16   to address during February.

17            THE COURT:  That's fine.

18            MR. DRATEL:  I think that is reasonable.

19            THE COURT:  March 10.

20            The government would oppose by March 24.  Does that

21   make sense, Mr. Turner?

22            MR. TURNER:  That's fine.

23            THE COURT:  Then there would be a reply, Mr. Dratel,

24   by the 31st, March 31?

25            MR. DRATEL:  Right.  OK.

E278ULBC

1              THE COURT:  So 3/10, 3/24, 3/31.  That would be the

2       schedule for motions as to the indictment.

3              The other motions, if you learn of them and want to

4       bring them sooner than you were scheduled to come in, you can

5       file any motions at any time.  But we will set the outside date

6       for motions on the discovery, at least those of which you can

7       reasonably be aware, at our conference on April 30.

8              Let's talk about the next piece, which is you haven't

9       seen the discovery yet, I understand that.  It sounds like it's

10      at least voluminous.  From my reading of the complaint, it

11      sounds somewhat complex, although you will form your own view.

12      I don't know if it is or if it is not complex.  I am thinking

13      that, therefore, you're going to need several months to get

14      ready, but also anticipating that you may want to put on a

15      case.  So I assumed the government was going to take about two

16      to three weeks for the government's case?

17              MR. TURNER:  That's right.

18              THE COURT:  I assume, Mr. Dratel, that I should book

19      you down for something of a couple of weeks.  I don't know what

20      you will take and who knows, but you may want to have experts

21      or something of that nature of your own.  Which is why I picked

22      November 3, because I thought that would give us a runway to

23      get it done, accounting for the fact that we will run into the

24      Thanksgiving holiday, and will want to get it done before the

25      Christmas holidays because then we lose the jury for a little

E278ULBC

1    while.

2              MR. DRATEL:  I understand your concerns.

3              November 3 is fine with us.  I have something in

4    September that is probably a couple of weeks.

5              THE COURT:  We can go in October.

6              MR. DRATEL:  I think November is better just because

7    the other one is a multi-defendant case and I have no idea what

8    it's going to look like by the end of the day.  It's a couple

9    of homicides in it.

10              THE COURT:  I would be happy to do it in October.  For

11    me, it's just a matter of making sure I block enough time, and

12    I can actually block anything right now between October and the

13    end of the year, I think.

14              When, Mr. Dratel, would you want to do it?  You want

15    to back it up a week?

16              MR. DRATEL:  November 3 is good.

17              THE COURT:  I know your client is in custody so I am

18    sure that you want to get this done sooner rather than later.

19              We will put it down for November 3.  As you know, Mr.

20    Turner, Mr. Dratel, Ms. Lewis, I like to set hard trial dates,

21    and we will try to keep this date, understanding that you folks

22    will have to review the discovery and prepare, but we will all

23    block the appropriate time on our calendars.  We ought to block

24    four to six weeks, and at least not have another big trial that

25    you don't warn another court about that falls in that time

E278ULBC

1    period between November 3rd and the Christmas holidays, because

2    we will be interrupted I think at least during the Thanksgiving

3    break.

4              So that being the date, November 3rd, then I had final

5    a pretrial conference for October 28.  Does that work for us?

6              THE DEPUTY CLERK:  1 p.m.

7              THE COURT:  October 28, 1 p.m.  Then we will deal with

8    the rest of the dates at another time in terms of counting our

9    way back to that.

10             Does that all sound reasonable?

11             MR. TURNER:  Yes.

12             MR. DRATEL:  Yes.

13             THE COURT:  Mr. Turner, can you tell me what the

14   potential is for a superseder is?

15             MR. TURNER:  I think the potential is good for a

16   superseder.  It won't be based on additional evidence, but we

17   may very well want to add charges to the indictment.

18             THE COURT:  Do you have any estimate right now as to

19   how long the government needs to determine whether or not,

20   based upon the information it either knows or is currently

21   developing, that it will be able to file a superseder?

22             MR. TURNER:  I actually misspoke.  I think it will

23   depend on the development of some additional evidence.  So I

24   would ask for at least 60 days, your Honor.

25             THE COURT:  We will adjust as necessary, but let's put

E278ULBC

1    it down then for March 31 would the time that the Court would

2    hope that the government would, if it's going to file a

3    superseder to file, so that we can know if there are going to

4    be any additional motions, if there is additional discovery

5    that is necessary, whether or not it will impact the length of

6    the trial or the timing of the trial.  So we will shoot for

7    March 31.  It's not that I would have a wall come down on March

8    31, but I would hope that if it's later than March 31, that

9    you're able to tell us why it needs to be later.

10            MR. TURNER:  That sounds good, your Honor.

11            THE COURT:  Just because you have said there might be,

12   obviously there might not be, and we can talk about that at the

13   conference that's on schedule for April 30 right now.  If there

14   is a superseder, we will obviously meet again because there

15   will be another arraignment on that, and we will set that date

16   as necessary.

17            What else should we do today?

18            MR. TURNER:  We would ask for time to be excluded to

19   allow defense to review the discovery and to allow for the

20   potential discussions between the parties.

21            THE COURT:  Mr. Dratel?

22            MR. DRATEL:  No objection to the exclusion based on

23   the review of the discovery.

24            THE COURT:  The Court does find that it's in the

25   interests of justice to prospectively exclude time between

E278ULBC

1    today's date and April 30, 2014, to allow the government to

2    provide discovery to the defendant and to allow the defendant

3    to review that discovery and determine any motions that it may

4    want to bring, and that those interests are in the interests of

5    justice and outweigh the interests of this defendant and the

6    public in a speedy trial.  So that time is prospectively

7    excluded.

8              Anything further today?

9              MR. TURNER:  No, your Honor.  Thank you.

10             MR. DRATEL:  No, your Honor.

11             THE COURT:  Thank you.  We are adjourned.

12             (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25