E62zulbc                        Conference

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                New York, N.Y.

          v.                             14 CR 68 (KBF)

ROSS WILLIAM ULBRICHT,

          Defendant.

------------------------------x
                                         June 2, 2014
                                         2:10 p.m.

Before:

              HON. KATHERINE B. FORREST,

                                         District Judge

                     APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  SERRIN TURNER
     TIMOTHY HOWARD
     Assistant United States Attorneys

JOSHUA DRATEL
LINDSAY LEWIS
     Attorneys for Defendant

Also Present:  Gary Alford, IRS
```

1              THE DEPUTY CLERK:  All rise.
2              THE COURT:  Hi.  Good afternoon, everyone.  Please be
3     seated.
4              (Case called)
5              MR. TURNER:  Good afternoon, your Honor, Serrin Turner
6     for the government.  With me at counsel table is AUSA Tim
7     Howard and Special Agent Gary Alford of the IRS.
8              THE COURT:  All right, good afternoon all of you.
9              MR. DRATEL:  Good afternoon, your Honor, Joshua Dratel
10    with Lindsay Lewis, with Mr. Ulbricht seated between us.
11             THE COURT:  All right.  Good afternoon, all of you.
12    And good afternoon, Mr. Ulbricht.
13             We're here for a status conference and to talk about a
14    couple of things in particular.  We have had a couple of
15    adjournments because of the trial that Mr. Dratel and Ms. Lewis
16    and I were all involved in, but here we are.
17             So I've got the fully briefed motion to dismiss the
18    various counts in the indictment, and that's pending before me.
19             Does either side feel like there's anything they in
20    particular had intended to raise with respect to that motion
21    today?
22             MR. TURNER:  No, your Honor.
23             MR. DRATEL:  No.  We didn't know what the Court wanted
24    to do, but we were prepared to argue, obviously, if the Court
25    wanted to do that.

1      THE COURT:  All right, if you're prepared to argue, I
2  may ask you a question or two, but I'll circle around to the
3  other things first, and then come back to that.  I hadn't told
4  you that I would ask you questions, and so I was hesitant.  But
5  now that you opened the door, Mr. Dratel, I may ask you a
6  couple of questions.
7      Are there any other -- well, first, Mr. Turner, why
8  don't you update me on discovery.  We'll figure out where we
9  are with discovery, and then whether or not there is an
10 additional motion schedule that needs to be put in place.
11     MR. TURNER:  Certainly.  Discovery has been completed.
12 It was produced in two waives as originally discussed.  And the
13 last production, the second waive was produced in mid March.
14     And it was brought to my attention that there are some
15 issues with the defendant's ability to read some of the files
16 or the drives in prison, and we need to work those out.  And I
17 plan on following up with defense counsel to work out those
18 issues this week.
19     But in terms of the evidence having been produced to
20 defense generally, that has been done.
21     THE COURT:  All right.  And does the defendant have a
22 laptop on which the materials are loaded or how is he accessing
23 it?
24     MR. TURNER:  It was produced on hard drives, your
25 Honor, that can be plugged into a laptop.  My understanding is

1    that there are laptops at the MDC, but defense counsel has

2    requested a laptop be specially provided to the defendant, and

3    that's one of the issues that we need to work out this week.

4            THE COURT:  You folks are in conversations about that?

5            MR. TURNER:  Yes.

6            THE COURT:  All right.  Well, if the discovery is

7    really contained -- this is so centrally a computer-related

8    case and the materials are resident on hard drives, it would

9    make sense I think for the defendant to have as much access in

10   terms of amount of time as possible.  And I don't know whether

11   or not he can get enough computer time.  I just don't know

12   whether he could get enough computer time without that.  So

13   hopefully you folks will be able to work that out.

14           Mr. Dratel.

15           MR. DRATEL:  Yes.  Your Honor, just so the Court is

16   aware, the four two terabyte drives, each two terabytes, have

17   not been made available to Mr. Ulbricht yet.  Apparently, they

18   were rejected initially by MDC, went back to the government,

19   the government did whatever formatting MDC required and was

20   sent back recently, but Mr. Ulbricht still has not received

21   them.

22           The second part of that, I think there are -- of the

23   six disks of we called the non -- it's digital, but it's

24   non-digital in the sense that it's not server or -- I think the

25   Court understands what I mean.  Five of those disks, the

1    programs at MDC are unable -- MDC does not have the programs

2    capable of doing that.  That's one of the reasons why we want a

3    laptop that is loaded by the U.S. Attorney's Office that has

4    the proper -- so Mr. Ulbricht did not have access to -- he's

5    only had access to an insignificant amount of time total

6    discovery.

7             THE COURT:  Right.  Now what's the roadblock here?  I

8    mean, in the past the U.S. Attorney's Office has come up with a

9    computer that's got loaded on it all the appropriate programs

10   and is otherwise clean so that it'll pass whatever MDC or MCC

11   regulations are in place, which can change from time to time.

12   Is that possible here?

13            MR. TURNER:  Yes, your Honor.  That's what we're

14   working on.  So the drives have to be reformatted and re-sent.

15   You know, we're responding as quickly as we can.  As you know,

16   defense counsel has been tied up with this trial, so that's

17   been an obstacle to getting those things done.  But we will

18   work with defense counsel and the BOP to resolve all the issues

19   as quickly as possible, hopefully this week or at latest next

20   week.

21            THE COURT:  All right.  So not only are you, just to

22   sort of summarize, in discussions about getting Mr. Ulbricht

23   the computer, but it sounds like you will get Mr. Ulbricht the

24   computer.

25            MR. TURNER:  I'm in discussion with the BOP about

1  that, as well as Mr. Dratel.

2  THE COURT: All right. But from your perspective, so
3  long as BOP is willing to accept it, which they will be --

4  MR. TURNER: That's right.

5  THE COURT: -- then you don't have any problem
6  providing one.

7  MR. TURNER: Either if the computer there needs to be
8  equipped with certain programs for him to view it or if we need
9  to provide a computer ourselves, it will get done this week.

10  THE COURT: You folks can talk about it. But given
11  the volume of material, I would want to be sure that the
12  defendant has sufficient time on the computer, that if he's
13  sharing it with other residents, then he may or may not have
14  enough time to really spend the time. And, therefore, if he
15  can have it -- I don't know if he'll be able to have it in his
16  cell or wouldn't be able to have it in his cell under the
17  circumstances, but what are your thoughts?

18  MR. TURNER: That cannot be done, your Honor, under
19  the prison's regulation. There are too many safety risks
20  involved.

21  THE COURT: With this particular defendant or
22  generally? Because I've had defendants who have had it
23  actually in their cells.

24  MR. TURNER: My understanding is those defendants are
25  under SAMS. That's a different issue. But if it's a prisoner

1  in the general population, that's not an accommodation they can
2  make.
3            THE COURT:  All right.  So that they can do version
4  two, which I've had as well.  Version two is they have the
5  computer, it is their computer, and is put with a Lieutenant,
6  and then it's brought down to the defendant who can work in a
7  common area during all of the common area time, and then it
8  gets returned to the Lieutenant at the end of the day.  So
9  that's version two.  Is that possible?
10           MR. TURNER:  That's consistent with my understanding.
11           THE COURT:  All right.  So that I think is preferable
12 given the volume, than a shared computer.  Now, if the shared
13 computer can be dedicated to Mr. Ulbricht, which seems, I don't
14 know if it's possible or not, but then that's obviously not
15 necessary.  But I'm concerned about the volume, that it sounds
16 like it's four terabytes.
17           MR. TURNER:  It is, your Honor, although, you know, a
18 lot of that is just because you're talking about an entire
19 server that was copied bit to bit.  That doesn't mean that it's
20 really four terabytes of data.  There could be three terabytes
21 that are empty.  It's just because it's a forensic copy, they
22 copy the entire space --
23           THE COURT:  Right.
24           MR. TURNER:  -- on the server, so.
25           THE COURT:  Well --

1           MR. TURNER:  Nonetheless, it is a very significant

2    volume of discovery and I will talk with BOP.  And ultimately

3    they're the ones who have to make the accommodation under their

4    regulations, but I will stress the need to make sure this

5    defendant has as much time as possible.

6           THE COURT:  All right, so let's do this.

7           Mr. Dratel, what's your understanding as to what the

8    various computer alternatives are at the MDC?  So if he were to

9    use a computer at the MDC, is it in the library, like it would

10   be at the MCC, on the floor like they have at the MCC -- I've

11   been to the MCC, I've not been to the MDC.

12          MR. DRATEL:  My understanding -- well, Ms. Lewis may

13   know actually more rather than be so ventriloquistic about

14   this.

15          There is one other unit that's shared by everybody on

16   the unit.

17          THE COURT:  So it is only one.  It's not like three at

18   the MCC?

19          MS. LEWIS:  My understanding is there is one computer

20   that has to be shared by one other unit.  So even if Mr.

21   Ulbricht is able to use that computer, as much maybe five or

22   six hours a day, which would be the absolute max, that's

23   assuming, you know, intermittent because other people are

24   entitled to use it.  It's only when he is not required to leave

25   his cell, so it can't be during lock down.  So obviously just

1    thinking of logistics, you know, that's why we want to have a
2    dedicated computer for him.
3              THE COURT:  All right.  And are there library days set
4    up like they are at -- I assume there is also a computer in the
5    library.  Are they set up so there are only certain times for
6    the library access?
7              MS. LEWIS:  Mr. Ulbricht tells me it's two hours a
8    week, so clearly that's not going to --
9              THE COURT:  So similar to the MCC.
10             So, Mr. Turner, let's see whether or not you folks can
11   get a computer with a Lieutenant or whomever.  I don't know who
12   this person is, whoever is at the end of the hall, a computer
13   laptop so that Mr. Ulbricht can have that computer during his
14   time where he's able to access a computer so he's not having to
15   share time with people who want to send e-mails to their
16   friends and family.
17             MR. TURNER:  That's fine, your Honor.  We'll make sure
18   there is a dedicated computer of some sort.
19             THE COURT:  Terrific.  All right, so that's that.  So
20   that way we can make sure that the discovery is effectively in
21   the hands of the defendant himself, as well as counsel, and
22   that folks have the best access that we're able to give under
23   the circumstances.  Terrific.
24             Now the next issue, since that's the discovery, is
25   whether or not there are any additional motions apart from the

1    motion, Mr. Dratel, which is now fully briefed.  Do you folks
2    believe you have additional motions?
3             MR. DRATEL:  Yes, your Honor.
4             THE COURT:  All right.  And so how many and what kind
5    of briefing schedule do you need?
6             Let me pause and give you a suggested briefing
7    schedule, having contemplated the possibility that there are
8    other motions, to fit within the schedule that we've got.  And
9    I'll run through some additional dates.  Something in
10   mid-to-late June opening, and then two to three weeks later
11   opposition, and then sort of ten days later reply, week to ten
12   days.  So, for instance, June 13th, June 27th, July 3rd.  But
13   we can move those around.  The point is that we're going to be
14   aiming towards, you know, final pretrial stuff going in late
15   October.  So we really want to have these resolved by September
16   for sure.
17            MR. DRATEL:  There are definitely motions that we're
18   going to be making and they have to do -- I think there are
19   certain Fourth Amendment motions that we'll be making, and
20   perhaps other motions in that context and related to the
21   discovery.  One of the problems obviously is getting through
22   that material.  I think June 13th is too soon.  I really need
23   another -- I think mid July would be really more viable, your
24   Honor, just so we could -- we don't have to do this in too many
25   series and that we can get it done comprehensively.

1            THE COURT:  All right.  So mid July.
2            Mr. Turner, when would you folks -- how long would you
3    need to reply, given that you've heard the description?
4            MR. TURNER:  I'd ask for at least three weeks, your
5    Honor, 30 days if the Court would permit.
6            THE COURT:  All right.  So long as people try not to
7    ask for extensions of other than a couple of days.  I mean, if
8    you need a couple of days, obviously that's different.  If we
9    don't extend things too much, that's fine with me.  So
10   July 15th, August 15th.
11           And then, Mr. Dratel, how about August 27th?
12           MR. DRATEL:  Yes, your Honor.
13           THE COURT:  All right.  Then we're fully briefed
14   before September.  I'll decide that shortly after that.
15           All right.  So I have some additional dates.  But what
16   else before I get there do you folks want to raise, if
17   anything?
18           MR. TURNER:  Nothing from the government, your Honor.
19           MR. DRATEL:  No, your Honor.
20           THE COURT:  All right.  So here are some additional
21   dates.  Do you think there's going to be any 404(b) stuff, Mr.
22   Turner?  Is there going to be a notice?
23           MR. TURNER:  I don't want to commit, your Honor, but I
24   can't think of any off the top of my head.
25           THE COURT:  All right.  So if there is -- let's put it

```
E62zulbc                         Conference
```

1  this way -- if there is, why don't we say October 3rd so it's
2  30 days in advance.
3        We had set aside over a month for the trial, and so I
4  don't -- I'm not going ask you folks to talk about the timing
5  yet, but I'm going to assume for the moment that nobody's
6  asking for an adjournment of the trial date.
7        Because of the amount of time we've set aside, it's
8  important to me that we try to hold that time because it's hard
9  to move it once we get that big a block.  But here the other
10 dates.  Pretrial materials by October 24th; motions in limine
11 would be October 17th for any openings; October 24th for any
12 oppositions.  Again, I don't really have replies on motions in
13 limine, but I don't mind receiving one if someone feels a, you
14 know, a need to file a reply.  But typically I have them fully
15 briefed the Friday before the final pretrial so that I can try
16 to resolve them by the final pretrial.  The final pretrial I
17 have for October 29, and I've set aside three hours right now,
18 from 2:00 to 5:00 p.m.  We'll see if we need more, and if we
19 don't even use all that time, if we need less, so be it.  But I
20 set aside the afternoon.
21        Does the October 29th date work for folks?
22        MR. TURNER:  Yes, your Honor.
23        MR. DRATEL:  Yes, your Honor.
24        THE COURT:  All right.  3500 material I had as the
25 Friday before, but if you folks -- I don't know if you folks

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:14-cr-00068-LGS   Document 38   Filed 07/02/14   Page 13 of 18      13
E62zulbc                        Conference

1  know there are going to be a lot of people and there is a lot
2  of stuff.  Stuff is a term of art for, you know, the kind of
3  materials that are 3500 materials.
4          MR. TURNER:  As of now, I don't expect 3500 material
5  to be that voluminous.
6          THE COURT:  All right.  So why don't you folks confer.
7  Mr. Dratel, if you folks need to, if you believe that it's more
8  than the Friday before can handle, then maybe work it out with
9  Mr. Turner.  If you can't, you can make an application.
10         For the final pretrial materials, just so that you
11 folks are thinking about it, that would be the typical thing at
12 least I require, the jury instructions, joint proposed here.  I
13 think, and this is without resolving -- and by no means am I
14 resolving right now the motion to dismiss the indictment by
15 saying this -- but let's assume for the moment that all the
16 counts are in the case, the jury instructions are going to be
17 very important I think in terms of the normal kinds of
18 conspiracy charges.  Because there may be some particularities
19 about them, so it may take a little more conferring on the word
20 smithing.  Not dramatically.  The elements are what the
21 elements are, but there may be some word smithing.  So joint
22 proposed jury instructions; the objections to the exhibits, if
23 any; a witness list and a list of stips.  So those are the
24 materials that would come in on October 24.  I say all this
25 now, and while it's just the beginning of summer, I say it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   because these dates will really sneak up on us.  The summer's

2   going to come and go, we're going to be in September and

3   suddenly September, it's mighty close to the end of October.

4   So that's the reason to get these all in our radar screen right

5   now.

6            MR. DRATEL:  Just a couple of things, your Honor.  One

7   is everything I've said also depends on -- well, it could be

8   changed if they supersede and add different types of things.

9   So I know, you know, they submitted -- government submitted a

10  letter in that regard.

11           Second thing is government exhibits.  We'd have the

12  objections on that date.  We should have a date prior to that

13  for receiving the exhibits to give us ample time.  Because what

14  I'm gathering from the government is not a lot of 3500, a lot

15  of exhibits.

16           THE COURT:  Right.  And let me just in terms of

17  exhibits, and I don't know how they're going to come in, I

18  don't know if they're going to be electronic exhibits where

19  you're going want to give a drive to the Court and you're going

20  to be displaying them to the jury, however that's going to

21  work, you folks will figure that out.  But work out a date in

22  advance based upon the volume and the complexity both, right.

23  There is a lot of complexity.  So while you may not have a huge

24  volume, one document might in fact be a path through 75 little

25  pieces, so to trace something through.  So you'll figure it out

1    a date in advance.  I won't give you a date right now.  But if
2    at the September conference you don't have a date, then I'll
3    set a date, all right.  So I'll put that down as something to
4    revisit if you haven't worked that out.
5             MR. DRATEL:  Okay.  And one other is in terms of voir
6    dire, we had great success with the jury questionnaire in a
7    high profile case and I think that this may be another case
8    that would merit that.  And, quite frankly, I think it actually
9    saved time picking a jury.
10            THE COURT:  It actually did save time.  I would be --
11   you folks can talk about it.  I mean, I don't know if the
12   government shares that view.  I don't know if the government
13   has thought about it yet.  I don't know whether or not people
14   believe that, for instance, they're going to want to ferret out
15   views on Bitcoin and knowledge of Bitcoin or whether that's not
16   going to be something that people feel they need to get into
17   just for this case, which only has a relationship to that.  You
18   talk about that.  But we should definitely deal with that
19   before -- start that process before September if you're going
20   to go with a questionnaire so we can then set some dates.  So
21   why don't you folks confer and sometime, why don't we say by
22   August 1, you let me know?
23            MR. DRATEL:  Okay.
24            MR. TURNER:  Your Honor, you mentioned a September
25   pretrial conference and I --

1      THE COURT:  We're going to set one.  I haven't set one
2 yet.  So why don't we say August 1 letter on the
3 questionnaires.  And so if you are both in agreement, then
4 terrific, give me a schedule, but that changes things.  And
5 I'll then give you folks the schedule back as to when they'll
6 have to go to the jury.  And we'll probably then have a session
7 on just the questionnaires.  If one of you doesn't agree with
8 the questionnaires, if the government doesn't agree, I may or
9 may not do it.  I'll evaluate it then as to whether or not it
10 makes sense to do it.  But if you're both in agreement, then I
11 probably wouldn't stand in the way, although I would strongly
12 influence the type of questions; you know, I would allow some
13 and probably not allow others.
14      All right, so a September pretrial, another status
15 conference.  Joe, something in the mid, early to mid.
16      THE DEPUTY CLERK:  Friday, September 5th at 12:00 p.m.
17      THE COURT:  Does that work?
18      MR. DRATEL:  Yes, your Honor.
19      THE COURT:  That's the end of the Labor Day week.  At
20 12:00 p.m?
21      THE DEPUTY CLERK:  Yes.
22      THE COURT:  All right, Mr. Turner?
23      MR. TURNER:  That's fine, your Honor.
24      THE COURT:  All right.
25      One other thing, and I say this just so that, again,

1    this is far in advance, but so you're planning.  When you're
2    putting in objections to documents, give me more than just a
3    rule.  Give me a rule and some language so that I can know
4    where folks are going, and then join issue with some language
5    on the other side as well so I don't just get a hearsay and
6    then get another -- so I get two rules and I have to think of
7    every possible argument under the two rules.  So you'll do
8    that.  All right.
9              What else should we do?  If you run into problems with
10   the computer issue, if Mr. Turner or Mr. Dratel whoever -- I
11   guess Mr. Dratel, the ball would be in your court.
12             MR. DRATEL:  Yes.
13             THE COURT:  You folks should let me know if an order
14   would assist the process in terms of getting it into the
15   facility and getting it accessed during the appropriate hours,
16   you know.
17             MR. DRATEL:  Yes.  And, your Honor that's the only
18   thing I was going to say was that you'll hear from us sooner
19   rather than later if we don't make progress very quickly.
20             THE COURT:  Yes.  It sounds like you folks may make
21   hopefully progress pretty quickly.  It will be conferring with
22   the BOP.
23             MR. DRATEL:  I hope.
24             THE COURT:  Whatever you need me to address, have me
25   do that sooner rather than later so that we don't have a

1    problem with the discovery --
2             MR. DRATEL:  Yes.
3             THE COURT:  -- being reviewed.
4             All right.  Anything else?
5             MR. DRATEL:  No, your Honor.
6             MR. TURNER:  Not from the government, your Honor.
7             MR. DRATEL:  No, your Honor.
8             THE COURT:  All right.  Well, thanks.  We're
9    adjourned.
10            THE DEPUTY CLERK:  All rise.
11            (Adjourned to September 5, 2014 at 12:00 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25