LAW OFFICES OF
# JOSHUA L. DRATEL, P.C.
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK  10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL                                                                       STEVEN WRIGHT
—                                                                                                           *Office Manager*
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

August 22, 2014

**BY ECF**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Ross Ulbricht*
            14 Cr. 68 (KBF)

Dear Judge Forrest:

      This letter is submitted on behalf of defendant Ross Ulbricht, whom I represent in the above-entitled case, and constitutes his application, pursuant to Rule 24(a), Fed.R.Crim.P., and the Fifth and Sixth Amendments to the United States Constitution, for use of a jury questionnaire in this case.  As set forth below, there are several tangible benefits of a jury questionnaire in this case, which has been the subject of an inordinate amount of media coverage and other publicity.  A copy of Mr. Ulbricht's proposed jury questionnaire is attached hereto as Exhibit 1.  As previously stated in my August 1, 2014, letter, the government opposes use of a jury questionnaire in this case, thus necessitating this application.

A.    *The Court Should Utilize a Case-Specific Juror Questionnaire*

      The right to be tried by a fair and impartial jury is protected by the Fifth and Sixth Amendments to the United States Constitution.  *Duncan v. Louisiana*, 391 U.S. 145 (1968).  For this reason, the right to exercise peremptory and cause challenges, which play a critical role in guaranteeing an impartial jury, has long been seen as "one of the most important of the rights secured to the accused," such that "[a]ny system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right must be condemned." *Pointer v. United States*, 151 U.S. 396, 408 (1894).

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
August 22, 2014
Page 2 of 5

Indeed, courts have likewise held that in cases, such as Mr. Ulbricht's, that involve sensitive and controversial issues and have received extensive pretrial publicity, the right to exclude biased jurors is meaningless absent a reasonable system for identifying such jurors, and that employment of procedures to determine whether a juror can be fair and impartial "should be liberal." *United States v. Napoleone*, 349 F.2d 350, 353 (3d Cir. 1965) (prejudice against liars), *quoting United States v. Daily*, 139 F.2d 7, 9 (7th Cir. 1944).  *See also, e.g., United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979) (bias in favor of law enforcement officers); *United States v. Washington*, 819 F.2d 221 (9th Cir, 1987) (knowledge of government witness).

Accordingly, as explained by the Honorable James G. Carr, United States District Judge, Northern District of Ohio, "[a] well-crafted case-and defendant-specific questionnaire is indispensable, along with attorney involvement in the voir dire process to accomplish that most basic of objectives – an unbiased and open-minded jury."  *See* Linda Moreno, *The Truth and Nothing But*, 33 JUL *Champion* 20, 21 (2009).

Here, in light of the extraordinary and continuing publicity this case has generated, a jury questionnaire would substantially assist achievement of that requisite objective. As detailed post, at 2-6, a jury questionnaire would conserve judicial resources, as well as the parties', in manifold ways.  Indeed, most recently, in *United States v. Mostafa*, 04 Cr. 356 (KBF), the Court's highly efficient use of a jury questionnaire resulted in significant time savings through the *voir dire* process.

Accordingly, it is respectfully submitted that use of a juror questionnaire in this case would both ferret out potential jurors biased against Mr. Ulbricht as a result of pretrial publicity, and effectively conserve important judicial resources.

    1.    *Mr. Ulbricht's Case Has Attracted Widespread Media Attention and a Juror Questionnaire Is Necessary to Identify Prejudice Generated By Adverse Publicity*

It is well-settled that "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences[.]" *Nebraska Press Ass'n v. Stewart*, 427 U.S. 539, 553 (1976), *quoting Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966).  Consequently, as the Court instructed in *Nebraska Press Ass'n*, "[g]iven the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the juror, the trial courts must take strong measures to ensure that the balance is never weighed against the accused."  *Id.*

In this age, and in Mr. Ulbricht's case in particular – which has generated countless articles from print and wire services, extensive television coverage both in the form of news stories and fictionalized accounts of the case, is slated to be the subject of two major motion pictures, and for which an August 18, 2014, Google search of Mr. Ulbricht's name brings up

<b>LAW OFFICES OF</b><br>
<b>JOSHUA L. DRATEL, P.C.</b>

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
August 22, 2014
Page 3 of 5

approximately 272,000 results – pretrial publicity is the sole external influence most likely to taint the venire and jeopardize Mr. Ulbricht's ability to receive a fair trial by an impartial jury. A juror questionnaire is therefore necessary to target underlying juror prejudice, and to aid in the removal of prejudiced jurors from the venire pool.[1]

---

[1] *See, e.g.,* "Schumer Pushes to Shutdown Online Drug Marketplace," NBC New York, June 5, 2011, available at http://www.nbcnewyork.com/news/local/Schumer-Calls-on-Feds-to-Shut-Down-Online-Drug-Marketplace-123187958.html; Joseph Goldstein, "Arrest in U.S. Shuts Down a Black Market for Narcotics," *New York Times*, October 2, 2013, available at http://www.nytimes.com/ 2013/10/03/nyregion/operator-of-online-market-for-illegal-drugs-is-charged-fbi-says.html?pagewanted=all; Daniel Beekman, "Feds Bust 'Dread Pirate Roberts,' Digital Buccaneer for 'Silk Road' Drug Website," *New York Daily News*, October 2, 2013, available at http://www.nydailynews.com/new-york/feds-bust-dead-pirate-roberts-operator-silk-road-drug-website-article-1.1473918; Tim Hume, "How FBI Caught Ross Ulbricht, Alleged Creator of Criminal Marketplace Silk Road," CNN, October 5, 2013, available at http://www.cnn.com/2013/10/04/world/americas/silk-road-ross-ulbricht/; Mike Fleming Jr., "Fox, Chernin Set Dennis Lehane to Adapt Silk Road," *Deadline Hollywood*, October 16, 2013, available at http://deadline.com/2013/10/fox-sets-dennis-lehane-to-adapt-silk-road-613293/; Lev Grossman and Jay Newton-Small, "The Deep Web," *Time*, November 11, 2013, related content available at http://time.com/630/the-secret-web-where-drugs-porn-and-murder-live-online/; Andy Greenberg, "Alleged Silk Road Boss Ross Ulbricht Now Accused of Six Murders-for-Hire, Denied Bail," *Forbes*, November 21, 2014, available at http://www.forbes.com/sites/andygreenberg/2013/11/21/alleged-silk-road-ross-ulbricht-creator-now-accused-of-six-murder-for-hires-denied-bail/; David Segal, "Eagle Scout. Idealist. Drug Trafficker?," *New York Times*, January 18, 2014, available at http://www.nytimes.com/2014/01/19/business/eagle- scout-idealist-drug-trafficker.html?_r=0; David Kushner, "Dead End on Silk Road: Internet Crime Kingpin Ross Ulbricht's Big Fail," *Rolling Stone*, February 4, 2014, available at http://www.rollingstone.com/culture/news/dead-end-on-silk-road-internet-crime-kingpin-ross-ulbrichts-big-fall-20140204; Danny Yadron, "Alleged Silk Road Head Indicted on Drug, Hacking Charges," *Wall Street Journal*, February 4, 2014, available at http://online.wsj.com/news/articles/ SB100014240527023034442704579363131250664094; Kim Zetter, "Alleged Silk Road Founer Indicted Again, This Time in New York," *Wired*, February 4, 2014, available at http://www.wired.com/2014/02/ross-ulbricht-indictment-ny/; Rich Calder, "Silk Road 'Operator' Denies Brokering $1B Drug, Hacking Deals," *New York Post*, February 7, 2014, available at http://nypost.com/2014/02/07/silk-road-operator-denies-brokering-1b- drug-hacking-deals/; Matthew Goldstein, "Silk Road Case Began With a Hunt for a John Doe," *New York Times*, March 21, 2014, available at http://dealbook.nytimes.com/2014/03/21/ silk-road-case-began-with-hunt-for-a-john-doe/; Fran Berkman, "Silk Road Lands a Starring

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
August 22, 2014
Page 4 of 5

Indeed, *Nebraska Press Ass'n*, the Court suggested that a "searching questioning of prospective jurors" to locate prejudice generated by adverse publicity was warranted. 427 U.S. at 563. *See also id.*, at 602 ("[p]articluarly in cases of extensive publicity, defense counsel should be accorded more latitude in personally asking or tendering searching questions that might root out indications of bias, both to facilitate intelligent exercise of peremptory challenges and to help uncover factors that would dictate disqualification for cause") ( concurring opinion of Brennan, J., joined by Stewart & Marshall, JJ.). *See also United States v. Dellinger*, 472 F.2d 340, 374-75 (7th Cir. 1972), *quoting Silverthorne v. United States*, 400 F. 2d 627, 637-38 (9th Cir. 1968) ("when pretrial publicity is great the trial judge must exercise correspondingly great care in all aspects of the case relating to publicity which might tend to defeat or impair the rights of an accused" and must "insure that the voir dire examination of the jurors affords an fair determination that no prejudice has been fostered").

Reviewing courts have also repeatedly found reversible error when trial courts relied solely upon the assessment by a venire person of his or her own preconceptions and biases in cases involving extensive pretrial publicity. *See, e.g., Sheppard,* 384 U.S. at 348, 351, *quoting United States v. Marshall*, 360 U.S. 310, 312-313 (setting aside conviction when jurors were exposed through news stories to information not admitted at trial, and refusing to consider dispositive the statement of each juror "that he would not be influenced by the news articles, that he could decide the case only on the evidence of record, and that he felt no prejudice against petitioner as a result of the articles"); *Jordan v. Lippman*, 763 F.2d 1265, 1274-82 (11th Cir. 1985); *United States v. Davis*, 583 F.2d 190, 197-98 (5th Cir. 1978).

Thus, here, as in many previous cases, the "searching questioning of prospective jurors" begins with a thorough questionnaire, designed to elicit those personal and candid opinions that reveal what jurors *genuinely* think, not what they imagine they *should* say in the artificial environment of a courtroom, and to concentrate on identifying any prejudices developed as a result of pretrial publicity.

  **2.** *A Juror Questionnaire Should Be Permitted In
    the Interests of Judicial Efficiency and Economy*

While as set forth **ante**, a juror questionnaire is necessary in this case to identify juror prejudice and ensure a fair and impartial jury, a juror questionnaire should also be permitted in

---

Role on CBS's 'The Good Wife," *The Daily Dot*, May 5, 2014, available at http://www.dailydot.com/entertainment/silk-road-the-good-wife/;  Donna Leinwand Leger, "How FBI Brought Down Cyber-Underworld Site Silk Road," *USA Today*, May 15, 2014, available at http://www.usatoday.com/story/news/nation/2013/10/21/fbi-cracks-silk-road/2984921/.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
August, 22, 2014
Page 5 of 5

the interests of conserving judicial time and resources, and those of the parties.

Confirming the value of a questionnaire, the Honorable Barbara M.G. Lynn, United States District Judge, Northern District of Texas, remarked in *From the Bench: A Case for Jury Questionnaires*, that in her experience the responses to questionnaires provided "more information in a faster and more organized way than could be gathered in a reasonable amount of time by questioning in court, and mitigate the very real problem of jurors mimicing one another's answers, which often occurs in voir dire."  33 LITIGATION MAGAZINE No. 4 (Summer 2007).  *See also* Judge E. Mize, *On Better Jury Selection: Spotting UFO Jurors Before They Enter the Jury Room*, 1999 COURT REVIEW 10 (Spring 1999).

Indeed, this Court employed a juror questionnaire recently in *United Stated v. Mostafa*, 04 Cr. 356 (KBF), a case that, like Mr. Ulbricht's, generated a great deal of pretrial publicity and involved sensitive issues.  The Court's effective use of a jury questionnaire in that case enabled the parties to empanel a jury in less than a day.

In that context, the efficiencies realized through use of a jury questionnaire were demonstrated at the Mostafa trial, and would most likely be repeated here:

(1) identifying and eliminating clearly those jurors whose answers render them plainly unqualified for service, thereby saving time and financial resources otherwise spent disqualifying them in court;  and

(2) identifying and categorizing jurors to streamline the in-court *voir dire* process by interviewing first those jurors whose questionnaires presented the least prospect of bias, thereby more likely avoiding (a) wasting time with more marginal jurors for whom challenges for cause would be more viable; and (b) in-court, public answers that could contaminate an entire jury panel.

Accordingly, for the reasons set forth herein, it is respectfully requested that the Court grant Mr. Ulbricht's application for use of a juror questionnaire in this case.

Respectfully submitted,

*[signature]*

Joshua L. Dratel

JLD/lal
Encl.