LAW OFFICES OF
## JOSHUA L. DRATEL, P.C.
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL                                                    STEVEN WRIGHT
—                                                                   *Office Manager*
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

January 19, 2015

**BY ECF**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

          Re:    *United States v. Ross Ulbricht*,
                    14 Cr. 68 (KBF)

Dear Judge Forrest:

      This letter is submitted in response to the government's January 19, 2015, letter seeking preclusion of certain questioning of Homeland Security Investigations Special Agent Jared Der-Yeghiayan. For the reasons set forth below, as well as those already stated in court, the government's application should be denied in its entirety.

      The government's factual arguments only support Mr. Ulbricht's right to ask SA Der-Yeghiayan further questions about alternative perpetrators, including Mark Karpeles, and the cases cited by the government, to the extent they support the broad principles asserted by the government, apply to a very different set of circumstances: those in which it was the *defendant*, and not an alternative perpetrator, who was protected by constitutional as well as evidentiary rules, and in which – unlike herein – there was not any nexus between the alternative perpetrator and the specific offenses alleged here.

      In this case, though, *the government itself*, in the person of SA Der-Yeghiayan and others, provided that nexus via an analysis of documentary and other materials, and the defense, via cross-examination, is simply cataloguing the bases for that nexus. Ultimately, the government's argument is about the *weight* of the evidence, which of course is for the jury to determine. As a result, the government's arguments opposing the further questioning of SA Der-Yeghiayan are without merit, and simply an attempt at circumventing Mr. Ulbricht's proffered

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Katherine B. Forrest<br>United States District Judge<br>Southern District of New York<br>January 19, 2015<br>Page 2 of 8 |

defense.

In addition, the government's objections are untimely.  The government provided 5,000 pages of material pursuant to 18 U.S.C. §3500 for SA Der-Yeghiayan, a substantial portion of which was devoted to government's investigation of Mr. Karpeles.  It is inconceivable that the government did not anticipate this line of cross-examination.  Yet it did not make a motion *in limine*, did not object to defense counsel's opening, and did not object during a significant portion of the cross-examination of SA Der-Yeghiayan.

Pointing to an alternative perpetrator is a defense that has been endorsed by the Supreme Court and other courts time and again, and Mr. Ulbricht's defense is utilizing evidence to that effect consistent with the rules of evidence and Mr. Ulbricht's constitutional right to present a defense (which sometimes supersedes the technical limits of those evidentiary rules).  *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 449 n. 19, 453;  *Boyette v. LeFevre*, 246 F.3d 76, 91 (2d Cir. 2001).

Indeed, as set forth in *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003) "the [Supreme] Court has observed on more than one occasion, ''at a minimum, ... criminal defendants have the right . . . to put before a jury evidence that might influence the determination of guilt.''  *Id., quoting Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (*quoting Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)).  To this end, "[t]he Constitution protects a criminal defendant from the arbitrary exclusion of material evidence, and evidence establishing third-party culpability is material." *Wade*, 333 F. 3d at 58.  In addition, the questioning of SA Der-Yeghiayan is relevant to another proper defense Mr. Ulbricht is presenting – that of the conduct of the government's investigation.[1]

---

[1] In that context, due to government's precipitous seizure of one of Mr. Karpeles's accounts in May 2013, Mr. Karpeles had notice since that event that he was under investigation in some respect, thereby giving him ample time to cover his own tracks – a danger SA Der-Yeghiayan himself warned of in protesting not only the seizure, but also any further negotiations with Mr. Karpeles.  There are also other elements of the conduct of the government's investigation that are relevant to the defense, and which will be developed through SA Der-Yeghiayan and other witnesses.  Again, such a defense is recognized as valid and appropriate. *See Kyles v. Whitley*, 514 U.S. at 442 n. 13 (if defense had possessed the undisclosed material, "the defense could have attacked the investigation as shoddy");  *id*., at 445-46;  *Bowen v. Maynard*, 799 F.3d 593, 613 (10th Cir. 1986) ("[a] common trial tactic of defense lawyers is to discredit the caliber of the investigation . . .");  *Cotto v. Herbert*, 331 F.3d 217, 229 (2d Cir. 2003).

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Katherine B. Forrest<br>United States District Judge<br>Southern District of New York<br>January 19, 2015<br>Page 3 of 8 |

Moreover, to deny Mr. Ulbricht the right to present either defense at this stage, after the defense staked out its defense territory – of which this issue inhabits, as the Court described it, the "heartland" of the defense – would be to deny Mr. Ulbricht his Fifth Amendment right to Due Process, and to a fair trial. Accordingly, as detailed below, for all these reasons the government's application should be denied.

**I.**     *The Offer By Mr. Karpeles's Attorneys to the U.S.*
           *Government Is Admissible Under Rule 807, Fed.R.Evid.*

As a threshold matter, the government's letter, at 5, verifies precisely what defense counsel asked SA Der-Yeghiayan about regarding the offer conveyed in July 2013 by Mr. Karpeles's lawyer to the government: that in return for immunity from prosecution by the U.S., Mr. Karpeles offered to provide a name of someone he suspected was operating Silk Road. Nowhere in its letter does the government challenge the accuracy of that account. In fact, the government *confirms* it.[2]

Thus, the analysis for purposes of Rule 807 has been satisfied. The government has now been afforded notice, and has yet to provide any basis for not crediting the version presented in SA Der-Yeghiayan's memorandum. In fact, the absence of any such challenge should be conclusive. Also, the statement is not "quadruple" hearsay. As the Court noted, the initial offer from Mr. Karpeles's attorney was not hearsay, as it was not being offered for the truth of the matter. The exchanges between Assistant United States Attorneys and SA Der-Yeghiayan, while hearsay, qualify for admission under Rule 807, particularly in light of the government's failure to challenge their accuracy.

Also, the "exceptional circumstances" that warrant application of Rule 807 apply here. Mr. Karpeles is a French citizen living in Japan. His lawyers have not been identified; nor have the Assistant United States Attorneys who relayed the statement to SA Der-Yeghiayan. *See, e.g., Muncie Aviation Corporation v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1182-83 (5th Cir. 1975) (difficulty in finding witnesses justified admission). *Cf. Parsons v. Honeywell Incorporated*, 929 F.2d 901, 907-08 (2d Cir. 1991) (statement not admissible because declarant

---

[2] Regarding another statement the defense seeks to elicit (and previewed at sidebar last Thursday), pertaining to SA Der-Yeghiayan's reaction to the August 2013 interview of Dread Pirate Roberts ("DPR") published in *Forbes*, that it "sounds very much like MK," the defense already agreed during Thursday's colloquy that it would not ask SA Der-Yeghiayan about the substance of the interview (because that would at least infer it was being offered for the truth).

available as a witness).³

      The circumstances also easily match, if not exceed, the indicia of reliability and trustworthiness found to satisfy the Rule [and/or its predecessors, Rule 803(24) and Rule 804(b)(5)]. For example, in *Steinberg v. Obstetrics-Gynecological & Fertility Group, P.C.*, 260 F. Supp.2d 492 (D.Conn. 2003), the Court concluded that the description of the status of a case by one attorney to another (assuming control of the case) possessed sufficient indicia of reliability and lack of motive to misrepresent. *Id.*, at 496. *See also United States v. Dumeisi*, 424 F.3d 566, 576-77 (7th Cir. 2005) (relying on the declarants' "duty to accurately record their own activities"); *United States v. Bailey*, 581 F.2d 341, 349 (3d Cir. 1978) ("consideration should be given to factors bearing on the reliability of the reporting of the hearsay by the witness"); *Muncie Aviation Corporation v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1182-83 (5th Cir. 1975) (trustworthiness established because published by government without any motive not to tell the truth or be inaccurate); *United States v. Iaconetti*, 406 F. Supp. 554, 559 (E.D.N.Y. 1976) (admitting statement because it was testified to by a person with whom it was "appropriate and even necessary [for the declarant] to communicate").

      Moreover, the rules of evidence were not designed to curtail a defendant's constitutional rights, and the Fifth Amendment Due Process and Sixth Amendment Confrontation rights are implicated herein with respect to this issue. In that context, as the Supreme Court declared in *Chambers v. Mississippi*, 410 U.S. 284 (1973), "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.*, at 302.

      Thus, the offer by Mr. Karpeles's lawyer is admissible pursuant to Rule 807. The government's strained arguments regarding "context" and meaning are unpersuasive, and address merely the weight that should be accorded the statement – contentions appropriately directed to the jury. *See Stifel*, 594 F.Supp. 1525, 1541 (N.D.Ohio 1984) ("[t]he identity of the bomb sender was a question for the jury, and defendant should have been apprised of evidence showing that someone other than himself had equal motive, access to materials, and other surrounding circumstances implicating him as the guilty party"). *See also Kyles v. Whitley*, 514 U.S. at 451 (prosecution's factual arguments about the implications of exculpatory evidence "confuses the weight of the evidence with its favorable tendency, . . .").

---

    ³ In addition, the timing and manner of the government's production, as part of 5,000 pages of material produced (pursuant to 18 U.S.C. §3500) for a single witness (the first witness) within two weeks of trial precludes, for all practical purposes, identifying, locating, and summoning witnesses with respect to the statement.

| | |
|---|---|
| **LAW OFFICES OF**<br>**JOSHUA L. DRATEL, P.C.** | Hon. Katherine B. Forrest<br>United States District Judge<br>Southern District of New York<br>January 19, 2015<br>Page 5 of 8 |

## II.  *The Cross-Examination of SA Der-Yeghiayan Is Not Seeking Inadmissible Testimony*

All of the cases the government cites, at 6-7, in its effort to preclude questioning of SA Der-Yeghiayan with respect to his investigation relate to a very different set of circumstances, in which a law enforcement agent was asked by *the prosecution* about his beliefs and conclusions regarding *the defendant's* guilt.  Thus, the government presents apples when the issue is oranges.

Thus, the government cannot convert a doctrine designed to protect defendants from improper testimony into a shield that denies a defendant the right to pursue cross-examination (and, ultimately, a defense) regarding an alternative perpetrator.  Also, the government distorts the nature of the cross-examination.  SA Der-Yeghiayan was never asked about his opinion regarding Mr. Karpeles's guilt with respect to the Silk Road website, or for legal conclusions.  Rather, he was, and would be, asked about certain aspects of his investigation, including sources (as parsed by the Court during Thursday afternoon's sidebar) and what he *did* as a result – including swearing under oath that there was probable cause to believe that a warrant for Mr. Karpeles's e-mails would reveal evidence of criminal conduct.[4]

Here, the government's rationale is so broad it would preclude evidence of another person being *charged* with the same crime, as long as at some point prior to the defendant's trial

---

[4] All of the cases the government cites with respect to a witness's "legal conclusions" are outside the criminal context entirely and involve *experts*. *See United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined Number of Cans of Rainbow Foam Paint* ("*Articles of Banned Substances")*, 34 F.3d 91, 96 (2d Cir. 1994) (in the context of review of a summary judgement, in a civil forfeiture case in which claimant's contention that "the test for flammability in the regulations should only be applied to sprays, and not to foam" came solely from "opinion of their expert," the Court held "[i]t is a well-established rule in this Circuit that *experts* are not permitted to present testimony in the form of legal conclusions")(emphasis added); *Densberger v. United Technologies Corporation*, 297 F.3d 66, 74 (2d Cir. 2002) (in context of civil suit, quoting *Articles in Banned Substances* for the "well-established rule in this Circuit that *experts* are not permitted to present testimony in the form of legal conclusions" in case in which *expert* witness offered legal opinion, but nonetheless finding admission of the testimony harmless because "the trial judge properly advised the jury to follow the law, rather than the testimony of any witness") (emphasis added); *Rizzo v. Edison Inc.,* 419 F.Supp. 2d 338, 348 (W.D.N.Y. 2005) (holding "the issue of whether or not probable cause to arrest exists is a legal determination that is not properly the subject of *expert* opinion testimony," in context of summary judgment motion, in case in which plaintiff attempted to submit two expert opinions in support of her argument that her arrest lacked probable cause) (emphasis added).

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Katherine B. Forrest<br>United States District Judge<br>Southern District of New York<br>January 19, 2015<br>Page 6 of 8 |

the government dropped that prosecution against the other person. In that respect, the government would foreclose an alternative perpetrator defense altogether.

Clearly, though, the defense is recognized as valid. *See Kyles v. Whitley*, 514 U.S. at 449 n. 19, 453. *See also Mendez v. Artuz*, 303 F.3d 411, 413 (2d Cir. 2002) (noting materiality of evidence of an "alternative culprit"); *United States v. Manning*, 56 F.3d 1188, 1198 (9th Cir.1995) (same); *Bowen v. Maynard*, 799 F.2d 593, 600–601, 610–613 (10th Cir.) (same); *United States v. Stifel*, 594 F.Supp. at 1541 (same).

Also, the government, in its letter at 2-4, in dictating a priority with respect to the factors linking Mr. Karpeles to Silk Road, would usurp the jury's role. By attempting to minimize certain factors that remain and suggesting that the silkroad.org issue somehow was SA Der-Yeghiayan's only viable basis for connecting Mr. Karpeles to Silk Road, is simply one view of the evidence. The defense, and the jury, are entitled to view that evidence differently. Again, the question of weight is for the jury.

### III.      *The Cross-Examination Is Admissible Pursuant to Rule 403, Fed.R.Evid.*

The cases cited by the government for the proposition that evidence of an alternative perpetrator can be precluded all involve accusations about motive and opportunity *un*related to the offense for which the defendant was being tried, and are sufficiently attenuated from the charged conduct.[5] Here, the requisite "nexus" is manifest, as Mr. Karpeles's alleged connection – as corroborated by the government itself through SA Der-Yeghiayan's investigation – is indisputably *to this case*, and the offenses charged herein.

Indeed, each of the cases the government cites fails to establish the necessary nexus between the alleged third-party perpetrator and the crime charged. *See Wade v. Mantello*, 333 F. 3d at 61 (testimony in a murder case that third-party had been involved in a shoot-out with the victim *weeks earlier*, but without any connection to the charged crime, to have been properly excluded at trial as "[w]eighed against the limited probative value of the proffered testimony were dangers that the jury could have been misled or confused by the testimony") (emphasis added); *DiBenedetto v. Hall*, 272 F.3d 1, 7-8 (1st Cir. 2001) (affirming trial court's exclusion of evidence in a murder trial as to *another* murder, for the purpose of establishing that "third party culprits, not [the defendant] and his co-defendant, were guilty" of the charged murder absent "evidence that there is a connection between the other perpetrators and the crime, not mere speculation on the part of the defendant"); *People of Territory of Guam v. Ignacio*, 10 F. 3d 608, 615 (9th Cir. 1993) (trial court did not abuse its discretion by excluding evidence that third-party

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
January 19, 2015
Page 7 of 8

had committed suicide as evidence of third party culpability where defendant had not provided "substantial evidence connecting [third-party] to the crime charged") (internal quotation omitted); *Andrews v. Stegall*, 11 Fed.Appx. 394, 396 (6th Cir. 2001) (distinguishing defendant's claim of third party culpability in a murder case involving "a vague threat [by the third party] that was allegedly made some unknown time before the murder, to the victim's stepson," that "[the third-party] was not shown to have been anywhere near the scene of the crime, and was not available to testify" from *Chambers* [,410 U.S. at 300-301,] in which there was substantial evidence directly connecting the third-party with the offense"); *United States v. Diaz*, 176 F.3d 52, 82 (2d Cir. 1999) (trial court properly excluded evidence of *another* crime – prison records showing that the murder victim had assaulted a third-party while in prison more than a year prior – in order to suggest motive on the part of a third party in the charged crime, because, standing alone, it would be "creative conjecturing" and the evidence "speculative"); *United States v. Wade*, 512 Fed.Appx. 11, 14 (2d Cir. 2013) ("the district court reasonably excluded . . . testimony about [a third party's] arrest because . . . [the third party's] December 3, 2009 sale of drugs from a mailbox was not temporally or physically linked to the May 11, 2009 drug and firearm seizures from [the defendant's girlfriend's] apartment that were contemporaneous with [the defendant's] arrest  and . . . [the] testimony [therefore] presented a risk of juror confusion and extended litigation of a collateral matter").

      Here, certain parts of the defense herein mirrors to a significant extent that endorsed in *Kyles v. Whitley*, in which the defense alleged that the defendant had been framed by an informant "for the purposes of shifting suspicion away from himself" for the offense with which the defendant had been charged.  514 U.S. at 429.

      Also, in addition to Mr. Karpeles, SA Der-Yeghiayan's 3500 material includes detailed information about another suspect he investigated in 2012-2013 – a suspect whose name was provided to DPR in April 2013 via the Silk Road "marketplace"'s private message system, and therefore also had abundant opportunity to evade detection by late September 2013.  That suspect's technical expertise and background are relevant, as are certain aspects of that part of SA Der-Yeghiayan's investigation that are directly relevant to the government's investigation of and/or evidence against Mr. Ulbricht, *i.e.*, language analysis, political orientation.  Counsel intends to explore that in cross-examination of SA Der-Yeghiayan as well.

      Thus, here the evidence regarding an alternative perpetrator is neither collateral nor speculative.  It is instead directly related to the offenses alleged against Mr. Ulbricht.  Again, the weight of such evidence, which ultimately is the government's primary concern throughout its letter, is a matter for the jury to determine.  *Stifel*, 594 F.Supp. at 1541.

      For the Court to act as a "gatekeeper" under the circumstances of this case would be contrary to the case law as well as the Fifth Amendment's guarantee of Due Process, as

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Katherine B. Forrest<br>United States District Judge<br>Southern District of New York<br>January 19, 2015<br>Page 8 of 8 |

preclusion would deny Mr. Ulbricht the right to present a defense, and in turn a fair trial. *See Alvarez v. Ercole*, 763 F.3d 223 (2d Cir. 2014) (conviction reversed because defense counsel not permitted to cross-examine detective about police report containing information about the alternative suspect); *Cotto v. Herbert*, 331 F.3d 217, 229 (2d Cir. 2003) ("[b]y prohibiting [defense counsel] from questioning Detective Alfred about the [police report], the trial court allowed the jury to get the impression that the defense had nothing other than rhetoric to contradict the prosecutor's statement in summation that the NYPD's investigation into [the charged] murder was 'thorough'"), *citing Davis v. Washington*, 415 U.S. 308, 318 (1974) .

## Conclusion

Accordingly, for all these reasons, it is respectfully submitted that the government's application to preclude and/or circumscribe the cross-examination of SA Der-Yeghiayan should be denied in its entirety.

Respectfully submitted,

Joshua L. Dratel

JLD/
cc: Serrin Turner
Timothy T. Howard
Assistant United States Attorneys