

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

January 28, 2015

By ECF

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re:   *United States v. Ross William Ulbricht*, S1 14 Cr. 68 (KBF)

Dear Judge Forrest:

The Government submits this letter in response to the proposed jury charges circulated by the Court on Monday and respectfully requests that the Court consider and adopt the modifications proposed below.

**A.    A "Multiple Conspiracies" Charge Is Not Warranted in This Single-Defendant Case and Poses a Serious Risk of Confusing the Jury**

The proposed jury charges include a lengthy instruction on the issue of single versus multiple conspiracies.  Specifically, the instruction states that "the defendant contends that the Government's proof fails to show the existence of only one overall conspiracy" and instructs the jury that "[w]hether there existed a single unlawful agreement, or many such agreements" is a question of fact for the jury to decide in this case.  The Government respectfully requests that the Court omit this instruction in its entirety.  In this single-defendant case, in which the defendant is alleged to have been at the center of all the alleged conspiratorial activity, a "multiple conspiracies" instruction is inappropriate and can only have the effect of confusing the jury.

This issue is governed by *United States* v. *Sir Kue Chin*, 534 F.2d 1032 (2d Cir. 1976), and its progeny.  The defendant in *Sir Kue Chin* proceeded to trial alone on one count of conspiring to distribute and to possess with intent to distribute heroin, in violation of Title 21, United States Code, Section 846, and one count of distributing and possessing with intent to distribute heroin, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  534 F.2d at 1033. Prior to deliberations, the defendant moved to dismiss the conspiracy count on the ground that the proof, which had established the defendant's agreement with two different suppliers to purchase heroin for distribution, showed the existence of two conspiracies and not one.  *Id.* at

1034.  The trial judge agreed with the defendant, but allowed the Government to "choose" one of the two conspiracies the judge believed had been established by the evidence and argue that conspiracy to the jury.  *Id.*

On appeal, the Second Circuit began by disapproving of the district court's determination that the proof established two separate conspiracies:  "The essence of the crime is an agreement, and there is no more reason to say that a supplier of narcotics necessarily engaged in two conspiracies because he has two sources of supply than there would be because he had two purchasers."  *Id.* at 1035.  The Court went on to reject the defendant's claim that the district court should have "instructed the jury to acquit if they should find more than one conspiracy." *Id.* & n.3.  It noted that it was aware of "no case which involves only one defendant and where a claim of multiple conspiracies has been sustained."  *Id.* at 1035.

In *United States* v. *Corey*, 566 F.2d 429 (2d Cir. 1977), decided a year later, the Court applied the reasoning of *Sir Kue Chin* to reject an argument that a "multiple conspiracies" instruction could be warranted in a single-defendant case.  The defendant in *Corey* was charged with wire fraud, mail fraud, and conspiracy, in violation of 18 U.S.C. §§ 1343, 1341, and 371, and proceeded to trial alone on those charges.  566 F.2d at 430.  He was convicted, and argued on appeal that the trial judge should have given a "multiple conspiracies" instruction because the proof showed that he had defrauded two suppliers in separate, unconnected transactions.  *Id.* at 431.  The Second Circuit rejected this argument, reasoning as follows:

> Even if there were two conspiracies, . . . the fact that only a single conspiracy was charged did not and could not have prejudiced the defendant by spillover or otherwise. *United States* v. *Sir Kue Chin*, 534 F.2d 1032 (2d Cir. 1976), is sufficiently similar to be dispositive of this claim.  It points out, *id.* at 1035, that single/multiple conspiracy analysis does not apply to the trial of a single defendant.

 *United States* v. *Corey*, 566 F.2d at 431 n.3.

These cases make clear that the simple fact that a conspiracy may involve multiple agreements between the defendant and others does not warrant a "multiple conspiracies" instruction to the jury.  Indeed, in the more than 30 years since these cases were decided, the law of this Circuit has consistently held that a "multiple conspiracies" charge is inappropriate in a single-defendant trial.  *See, e.g.*, *United States* v. *Ling*, 172 Fed. Appx. 365, 366 (2d Cir. 2006) (quoting *Corey*); *United States* v. *Atkins*, No. 10 Cr. 391 (CM), 2012 WL 1415625, at *2 (S.D.N.Y. April 19, 2012) ("[M]ultiple conspiracy analysis is inapplicable to a trial of a single defendant."); *United States* v. *Magassouba*, No. 03 Cr. 985 (RPP), 2010 WL 624284, at *9 (S.D.N.Y. Feb. 22, 2010) ("The weight of Second Circuit authority instructs that a multiple conspiracy charge is not appropriate in a single-defendant case such as this."); *Lewis* v. *United States*, No. 09 Cr. 6090 (CJS), 2009 WL 656339, at *7 (W.D.N.Y. Mar. 11, 2009) ("[S]ince Petitioner was the sole defendant at trial, he was not entitled to a multiple-conspiracies charge."); *United States* v. *Choullam*, No. 05 Cr. 523 (LTS), 2008 WL 3861356, at *4 (S.D.N.Y. Aug. 19, 2008) ("Defendant stood trial alone, and therefore there was no danger that the jury would confuse the possible involvement of other co-defendants with conspiracies not alleged in the indictment with the conspiracy for which Defendant was charged."), *aff'd* 346 F.3d 619, 620 (2d

Cir. 2009); *United States* v. *Galtieri*, No. 88 Cr. 891 (KTD), 1992 WL 245499, at \*3 (S.D.N.Y. 1992) ("A defendant who stands trial alone is not entitled to a charge on multiple conspiracies.").

Other circuits have adopted the same rule. *See, e.g.*, *United States* v. *Martin*, 618 F.3d 705, 736 n.30 (7th Cir. 2010) ("[A]s long as the district court instructs the jury on the nature of the conspiracy charge, emphasizing that the Government must prove that the defendant intentionally agreed to advance the aim of the conspiracy, there is usually no need for a multiple conspiracies instruction when a defendant is tried alone."); *United States* v. *Richardson*, 532 F.3d 1279, 1291 (11th Cir. 2008) (agreeing with Second Circuit that "multiple conspiracies instruction was neither necessary nor appropriate" where defendant stood trial alone); *United States* v. *Anguiano*, 873 F.2d 1314, 131 (9th Cir. 1989) ("However, there is no problem of spillover when, as in this case, the defendant stands trial alone."); *United States* v. *Jackson*, 627 F.2d 1198, 1213 (D.C. Cir. 1980); *see also* Sand's *Modern Federal Jury Instructions*, Instr. 19-01, cmt. ("Case law suggests that the recommended charge [on multiple conspiracies] is not appropriate in the trial of a single defendant.").

There is no basis in this case to depart from this well-established law. Count Three of the Indictment simply charges the defendant with conspiring with others to violate the narcotics laws. It does not allege that he engaged in "only one overall conspiracy," and there would be no prejudicial variance of any kind if the jury were to conclude that he in fact entered into multiple agreements with others as part of his conspiratorial conduct. Again, the foregoing law makes clear that a defendant may be found guilty on a conspiracy charge regardless of whether his conduct involved a single agreement or multiple agreements with others. Yet, the proposed charge suggests a stark dichotomy between a "single" conspiracy supposedly charged in the Indictment and a theory of "multiple" conspiracies advanced by the defendant. The suggestion seems to be that, if the jury finds that the defendant engaged in "multiple" conspiracies as opposed to a "single" conspiracy, they should find the defendant not guilty on Count Three. That is not an accurate view of the law. As long as the Government can prove that the defendant conspired with others to pursue any of the illegal objects alleged in Count Three, during the time frame alleged, the jury may properly find the defendant guilty on Count Three. The jury should not be led to believe that, as an additional requirement, the defendant's conspiratorial conduct must consist of a "single" agreement as opposed to encompassing multiple ones.

Indeed, the proposed charge threatens to deprive the Government of the ability to argue alternative theories of conspiratorial liability to the jury, as it is entitled to do. *See United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5410049, at \*4 (S.D.N.Y. Oct. 24, 2014) ("[T]he Government not only may *charge* a defendant based on alternative theories of liability, it may present those alternative theories to a jury" (emphasis in original)). For example, the Government could argue that the defendant conspired with others to violate the narcotics laws insofar as he had an agreement with the *drug dealers* on Silk Road to provide them an outlet for their product in exchange for a cut of their proceeds. At the same time, the Government could also argue that the defendant conspired with others to violate the narcotics laws insofar as he had an agreement with the *support staff* who helped him run Silk Road to aid and abet the distribution of drugs by keeping Silk Road up and running. The Government is entitled to argue that the defendant could be found guilty on Count Three based on either theory, or both. Yet the proposed "multiple conspiracies" instruction would seem to imply (or could be interpreted by

3

jurors to imply) that the Government has alleged only one "single" conspiracy, and that if multiple agreements are shown the defendant should (for some reason) be acquitted.  Again, such an outcome would be grossly unjust and not in accord with the law.

The Court's proposed instructions already properly instruct the jury on the elements of a conspiracy without the "multiple conspiracies" instruction.  The instructions clearly set forth that the Government must prove, beyond a reasonable doubt, that the defendant came to a meeting of the minds with other persons, during the time period alleged in the Indictment, to pursue the illegal objects described in the Indictment, and that he participated in this joint venture knowingly and intentionally.  There is simply no need for any further instruction as to whether the defendant's conduct encompassed a single agreement or multiple agreements.

A "multiple conspiracies" instruction is properly reserved instead for a case involving multiple defendants, all charged in a single conspiracy – a circumstance that, unlike here, properly lends itself to the label of a "single, overall conspiracy."  A defendant in such a case may seek to argue that he did not conspire with one or more of the other defendants on trial, such that the evidence of the conduct of those defendants should not be held against him.  In those circumstances, it can be appropriate to instruct the jury about the need to distinguish between potential multiple conspiracies to ensure that evidence concerning one defendant's conspiratorial conduct does not have an unfair spillover affect on another defendant.  *See* Sand et al., Modern Federal Jury Instructions: Criminal, Instruction 19-5 Commentary (2013) ("[T]he rationale for requiring a multiple conspiracy charge to be submitted to the jury is that proof of multiple conspiracies constitutes a material variance because of the potentially prejudicial 'spillover' that evidence will have on an accused.").

However, this is not a case in which one defendant—a minor participant, for example— risks being prejudiced by admission of evidence against another defendant charged in the same conspiracy count. The defendant here stands alone, and all the proof admitted at this trial has been admitted against him alone.   There can be no risk of prejudicial spillover where only one defendant is on trial.  *See United States* v. *Anguiano*, 873 F.2d at 1318 ("A multiple conspiracies instruction is generally designed for trials involving multiple defendants engaged in multiple conspiracies, not for trials of lone defendants who are worried that the jury may not agree upon the same set of facts."); *United States v. Harris*, 8 F.3d 943, 947 (2d Cir. 1993) (trial of single defendant "seriously undermines any possible claim of substantial prejudice" from proof of multiple conspiracies).

For all of these reasons, the Government respectfully requests that the Court omit the "multiple conspiracies" charge included in the proposed jury instructions.  If the Court concludes, however, that some additional charge is needed on this issue, the Government respectfully urges the Court to adopt the following alternative language, in order to minimize the risk of juror confusion on this issue:

Proof that the defendant was involved in agreements involving certain persons or certain transactions is not necessarily proof that he was involved in a larger overall conspiracy. However, a single conspiracy can include multiple agreements with other people if those agreements are part of the same overall collective venture.  You may find that there was

such a single conspiracy even if all the members did not know each other, or never met together, or did not know what roles all the other members played. A single conspiracy may exist even if different members joined at different times, or the membership of the group changed, or some members competed with one another. Finally, a single conspiracy can include many different criminal acts were committed over a long period of time, or different phases or spheres of operation. In short, a single conspiracy can include any form of collective venture in which people combine their efforts in pursuit of a common illicit goal.

*See, e.g., United States v. Geibel*, 369 F.3d 682, 688 (2d Cir. 2004) (holding that, to prove a conspiracy, the Government need show only that the defendant "agreed to participate in what he knew to be a collective venture directed toward a common goal"); *United States v. Sureff*, 15 F.3d 225, 230 (2d Cir.1994) (a single conspiracy "may encompass members who neither know one another's identities, nor specifically know of one another's involvement"); *United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000) ("[A] 'single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations.'" (quoting *United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir. 1979))); *United States v. Aracri*, 968 F.2d 1512, 1522-23 (2d Cir. 1992) ("'The jury need not have concluded that the same people were involved throughout the entire period of the conspiracy in order to find one conspiracy.'") (quoting *United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir. 1987)).

## B.      The Charges Should Include an Instruction on Withdrawal from a Conspiracy

In both their opening statement and lines of questioning on cross-examination, the defense  has repeatedly suggested to the jury that the defendant terminated his involvement in operating Silk Road within several months of starting the website. Whether the defense will seek to frame this claim in closing as an argument that the defendant withdrew from the narcotics conspiracy charged in Count Three, the claim could clearly be interpreted by the jury in this manner. Accordingly, the jury should specifically be instructed on a withdrawal defense, to ensure that the jury does not labor under any false impression concerning the elements and implications of this defense.

"It is well established that where the government has shown that a conspiracy existed and that a given defendant was a member of it, his membership is presumed to continue until the last overt act by any of the coconspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw." *United States v. Flaharty*, 295 F.3d 182, 192 (2d Cir. 2002).  The burden of proof on the issue of withdrawal lies squarely with the defendant.  *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir.2008).

"Mere cessation of the conspiratorial activity" by the defendant "is not sufficient to prove withdrawal."  *United States v. Leslie*, 658 F.3d 140, 143 (2d Cir. 2011); *see also United States* v. *James*, 712 F.3d 79, 106 (2d Cir. 2013) ("That members of a conspiracy have had a disagreement or a falling out is not . . . sufficient to establish withdrawal from the conspiracy."). *A fortiori*, a defendant cannot "'take any subsequent acts to promote the conspiracy'" or "'receive any additional benefits from the conspiracy'" and still claim that he withdrew. *Eppolito*, 543 F.3d at

49 (2d Cir. 2008) (quoting *United States* v. *Berger*, 224 F.3d 107, 118 (2d Cir. 2000).  Rather, in order to withdraw from a conspiracy, a defendant must "show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators."  *United States* v. *Leslie*, 658 F.3d 140, 143 (2d Cir. 2011) (internal quotation marks omitted); s*ee also Geibel*, 369 F.3d at 695; *United States* v. *Dallas*, 229 F.3d 105, 110 (2d Cir. 2000); *United States* v. *Borelli*, 336 F.2d 376, 388 (2d Cir. 1964) (Friendly, J.).

Even if a defendant can prove that he withdrew from the conspiracy at some point, such proof is by no means a complete defense.  Indeed, contrary to relieving a defendant from liability for his participation in a conspiracy, "a defendant's withdrawal from a conspiracy tends to confirm, rather than deny, his prior membership in it.  *United States v. Hamilton*, 538 F.3d 162, 178 (2d Cir. 2008).  While "[w]ithdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, . . . he remains guilty of conspiracy."  *Smith* v. *United States*, 133 S. Ct. 714, 719 (2013).

The Government respectfully requests that the Court include in its instructions a charge on withdrawal that reflects the foregoing legal authority.  In the absence of such a charge, the jury might deliberate under the misimpression that (1) any type of action disavowing the conspiracy or cessation of conspiratorial activity is sufficient to establish withdrawal; (2) the defendant could withdraw from the conspiracy and still receive benefits from the conspiracy or commit subsequent acts in furtherance of the conspiracy; and (3) withdrawal from the conspiracy absolves the defendant of responsibility for pre-withdrawal conduct.

The Government has proposed the following language in the joint markup submitted by the parties:

> Once a person joins a conspiracy, that person remains a member unless and until he withdraws from it completely.  In order to withdraw from the conspiracy, a conspirator must show that he took some affirmative act to disavow or defeat the purpose of the conspiracy.  He can do so either by informing law enforcement of the criminal activities of the conspiracy or by communicating his abandonment of the conspiracy in a manner reasonably calculated to reach co-conspirators.  Merely ceasing to play a part in the conspiracy is not sufficient by itself to establish withdrawal from the conspiracy.  Moreover, if, after initially attempting to withdraw, a conspirator takes any subsequent acts to promote the conspiracy or receives any additional benefits from the conspiracy, he cannot be considered to have withdrawn from the conspiracy.  The defendant has the burden of proving that he withdrew from the conspiracy by a preponderance of the evidence.  To prove something by a preponderance of the evidence means to prove that it is more likely true than not true.

> If you find that the defendant at some point withdrew from the conspiracy, he is not responsible for the acts of his co-conspirators following his withdrawal.  However, the defendant still would have been part of the conspiracy until the point of withdrawal.  In other words, even if you conclude that the defendant withdrew from the conspiracy at a

particular time, he would remain responsible for the actions of the conspiracy up until that time.

**C.    The Venue Charge Should Not Suggest a Heightened Venue Requirement for the Substantive Crimes Charged in the Indictment**

The venue charge in the Court's proposed instructions treats the issue of venue for the conspiracy charges in the Indictment separately from the issue of venue for the substantive charges.  In discussing the latter, but not the former, the instruction states that the Government must prove that an "essential conduct element" of the offense occurred in the Southern District of New York.  The Government respectfully requests that the Court omit this language, as it is unnecessary and threatens to confuse the jury.

The term "essential conduct element," which is not included in the standard jury instructions on venue,[1] is not relevant to venue in this case and the jury need not be instructed on it.  The Second Circuit has used the term to distinguish between the conduct elements of an offense versus the *mens rea* elements in holding that only the former provide a basis for venue.  Thus, in *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005), the Second Circuit held that the fact that a defendant *conceived* of a mail fraud scheme in the district of conviction was insufficient for venue.  *Id.* at 145.  The Second Circuit reasoned that venue turns on the locus of conduct committed in furtherance of the offense rather than the locus of a defendant's mental state.  *Id.* ("For these reasons, we conclude that 'having devised or intending to devise a scheme or artifice to defraud,' while an essential element, is not an essential *conduct* element for purposes of establishing venue.")

This distinction is irrelevant to this case, however, and thus there is no need to refer to the concept of an "essential conduct element" in the instructions to the jury.  To introduce this term without any explanation of its legal context or meaning would only serve to confuse the jury by leading them to believe that a fundamentally different venue standard applies to the substantive charges in the Indictment as opposed to the conspiracy charges.  It does not.

As the proposed venue instruction correctly notes with respect to the conspiracy counts, "[t]he Government need not prove that any crime was completed in this District or that the defendant or any of his co-conspirators was physically present here," but, rather, it is sufficient if the defendant or any of his co-conspirators "caused any event to occur in this District in furtherance of the offense."  This same basic principle – that conduct *in furtherance of* an offense provides a basis for venue, such that the defendant's presence in this district is not necessary – applies to substantive offenses as well.  As the Second Circuit has held with respect to substantive offenses generally: "[V]enue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur . . . or (2) it is foreseeable that such an act would occur in the district of venue [and it does]."  *United States v. Royer*, 549 F.3d 886, 894 (2d Cir. 2008) (quoting *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) (internal quotation marks omitted); *see also* Sand's Modern Federal Jury Instructions, Instr. 3-11 ("[T]he government need not prove that the crime itself was committed

---

[1] *See* Sand's Modern Federal Jury Instructions, Instr. 3-11.

in this district or that the defendant himself was present here.  It is sufficient to satisfy this element if any act in furtherance of the crime occurred within this district.").[2]  While this standard adds an element of reasonable foreseeability that is not included in the standard applicable to conspiracy charges, the standard is otherwise the same.

Moreover, where , as here, liability for a substantive offense is premised in part on an aiding and abetting theory – a theory that is "[m]uch like a conspiracy charge" – venue "is proper where the defendant's accessorial acts were committed *or* where the underlying crime occurred." *United States v. Smith*, 198 F.3d 377, 383 (2d Cir. 1999) (emphasis in original).  Hence, if a defendant aids and abets a principal acting in the Southern District of New York, then even if the defendant "commit[s] all of his accessorial acts in the Eastern District of New York, [he] nevertheless would be triable in the Southern District [of New York] because 18 U.S.C. § 2 alters the common law rule to provide for an additional venue where . . . the principal[] acted." *Id.* (emphasis in original).  In such aiding and abetting cases, as in conspiracy cases, "the foreseeability of [the principal's] conduct has no bearing on venue."  *United States v. Martin*, 411 F. Supp. 2d 370, 376 (S.D.N.Y. 2006) (Cedarbaum, J.).

Accordingly, the Government respectfully requests that the Court adopt the revisions proposed by the Government in the markup of the Court's proposed jury charges submitted by the parties, which reflect the foregoing law.

---

[2] In line with this holding, the Second Circuit has specifically noted that, "[w]hen the case involves publication on the internet, venue is proper in any district where it is reasonably foreseeable that the material will be accessed."  *United States v. Levis*, 488 Fed. Appx. 481, 485 (2d Cir. 2012); *see also United States v. Rowe*, 414 F.3d 271, 279 (2d Cir.2005) (venue proper for substantive charge of advertising to receive, exchange, or distribute child pornography where advertisement posted on Internet could be viewed and was viewed by undercover officer in the Southern District of New York); *United States v. Rogers*, 165 Fed Appx. 873 (2d Cir. Dec. 19, 2005) (same); *United States v. Allamon*, No. 04 Cr. 1231 (JSR), 2005 WL 2542905, at *2 (S.D.N.Y. Oct. 11, 2005) (venue proper for substantive wire fraud and money laundering charges where defendants' website, which offered the services that were the subject of the fraud scheme, was viewable in the Southern District of New York).

**D.    A Special Verdict Form Is Not Necessary for the Continuing Criminal Enterprise Charge**

The Court has previously asked the parties for their views on whether a special verdict form is required for the continuing criminal enterprise ("CCE") charge alleged in Count Four of the Indictment, in light of the Supreme Court's holding in *Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013).  The Court has also asked the parties for their views on whether the jury charges should specify the predicate violations that were part of the "continuing series" of violations that were constituent of the offense.  The Government believes the answer to both questions is "no."

In *Alleyne*, the Supreme Court held that any facts that increase the mandatory minimum sentence faced by a defendant must be submitted to and found true by a jury rather than a sentencing judge.  However, *Alleyne* is not apposite with respect to Count Four, as the Government has not alleged any facts that would raise the mandatory minimum applicable to Count Four beyond the 20-year mandatory minimum applicable to violations of the CCE statute generally.  Under the statute, "[a]ny person who engages in a continuing criminal enterprise" is subject to a 20-year mandatory minimum.  Although the statute provides for a higher mandatory minimum (life) if the Government alleges certain other facts (including that the defendant was the "principal administrator, organizer, or leader" of the enterprise), these facts have not been alleged in the Indictment and thus this higher mandatory minimum is not in play here.

Accordingly, the jury need only determine whether the standard elements of the continuing criminal enterprise offense are met.  If it finds that they have been, then the 20-year mandatory minimum required by the statute will apply.  There are no additional elements that the jury need find in order to trigger any higher mandatory minimum sentence.  This is in contrast to the charges in Counts One, Two, and Three, which do not carry mandatory minimum sentences unless the jury makes specific findings of the drug weights involved in the violations.  For this reason, it is appropriate to use a special verdict form with respect to those counts – to ensure that the jury attends to this separate finding beyond simply making a finding of guilt on these counts – whereas a special verdict form is unnecessary on Count Four.

Because no special finding beyond the basic elements of the statute is required with respect to Count Four, the Government does not believe a special verdict form is necessary as to that count.  *See United States v. Raysor*, No. 99-1503(L), 2001 WL 36037731, at *5 (2d Cir. Apr. 29, 2002 (finding "no basis" to "require[] that a jury be supplied with a special verdict form in order for it to arrive at a unanimous verdict" with respect to a CCE charge); *accord United States v. Ogando*, 968 F.2d 146, 149 (2d Cir. 1992); *United States v. Burrell*, 43 Fed. Appx. 403, 407 (2d Cir. 2002) (same); *cf. U.S. v. Rosemond,* __ Fed. Appx. __, 2014 WL 6997481, at *3 (2d Cir. Dec. 12, 2014) (noting in *dicta* that jury must specifically find that defendant was "principal" administrator, organizer, or leader in order for mandatory *life* sentence to be imposed).

As to whether the jury charges should specify particular crimes – *i.e.*, particular criminal acts – that the jury must find in determining whether the defendant committed a "continuing series" of narcotics violations, the answer is clearly "no."  The Indictment already specifies the

*types* of offenses that are alleged to have been part of the "continuing series" – violations of Title 21, United States Code, Sections 841, 843, and 846.  The Court has already held, in line with clear circuit precedent, that the Indictment is sufficient in this regard.  *See United States v. Ulbricht*, 14 Cr. 68 (KBF), 2014 WL 3362059, at *19 (S.D.N.Y. Jul. 9, 2014).  The Indictment contains the charges to be submitted to the jury.  There is no basis to suddenly narrow those charges in the course of providing the jury with legal instructions.  The Government is free to argue, and the jury is free to conclude, that *any* of the violations of the narcotics laws reflected in the Government's evidence could be selected as the predicate acts forming the "continuing series" of violations of Sections 841, 843, or 846 needed to convict on Count Four.  While the jury charges correctly instruct that the jury must be unanimous as to at least three such violations, *see Richardson v. United States*, 526 U.S. 813 (1999), there is no basis to restrict the jury to any particular violations in advance.  *See United States v. Flaharty*, 295 F.3d 182 (2d Cir.2002) ("Although Richardson requires that the jury be unanimous on each of the constituent felonies, we have held that an indictment that does not identify which of many alleged felonies constituted the series is not thereby defective."); *see also United States v. Pike*, 2006 WL 146061 *2 (W.D.N.Y. Jan. 19, 2006) (Arcara, J.) ("It is sufficient that the indictment alleges that the continuing series of felonies were violations of § 841(a)(1) and § 846."); *Jones v. United States*, 306 F.Supp.2d 142, 149 (D. Conn. 2003) (CCE indictment gave defendant sufficient notice "by identifying alleged felonies which *could* constitute the series . . . .") (emphasis added).

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court (1) omit any "multiple conspiracies" instruction from the jury charges; (2) include a withdrawal instruction; (3) modify the venue instruction as requested above; and (4) not provide the jury with a special verdict form with respect to Count Four of the Indictment or restrict the potential predicate acts that the jury may select from in deliberating upon Count Four.

Respectfully,

PREET BHARARA
United States Attorney

By:_____
SERRIN TURNER
TIMOTHY T. HOWARD
Assistant United States Attorneys
Southern District of New York

cc:     Joshua Dratel, Esq.