USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 2, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA                         :
                                                 :
             -v-                                 :
                                                 :      14-cr-68 (KBF)
                                                 :
ROSS WILLIAM ULBRICHT,                           :      OPINION & ORDER
    a/k/a "Dread Pirate Roberts,"                :
    a/k/a "DPR,"                                 :
    a/k/a "Silk Road,"                           :
                                                 :
             Defendant.                          :
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

Pending before the Court are several applications by the parties to modify the proposed jury instructions circulated by the Court on January 23, 2015. (ECF No. 162.) This Opinion & Order sets forth the Court's determinations as to several proposed modifications.[1]

### A.  "Multiple Conspiracies" Instruction

The parties disagree as to whether a "multiple conspiracies" instruction is necessary in this case. Such an instruction is unnecessary.

The main purpose of a "multiple conspiracies" instruction is to avoid any "'spill over effect' of permitting testimony regarding one conspiracy to prejudice the mind of the jury against the defendant who is not part of that conspiracy but another." United States v. Restrepo, 547 F. App'x 34, 40 (2d Cir. 2013) (summary order) (quoting United States v. Harris, 8 F.3d 943, 947 (2d Cir. 1993)) (internal

---

[1] The Court does not address each determination as to the parties' competing views on the jury instructions, but focuses on those which have received the most attention from the parties.

quotation marks omitted). This instruction is thus appropriate in a multiple-defendant case where "there is a legitimate concern that a defendant who operated on the periphery of a large, overarching conspiracy will be unfairly grouped in with a larger conspiracy than he intended to join." United States v. Richardson, 532 F.3d 1279, 1291 (11th Cir. 2008); see also Harris, 8 F.3d at 947 ("The spill over effect is most pronounced when there is a lengthy trial of numerous defendants." (citation omitted)).

By contrast, a "multiple conspiracies" instruction is unnecessary "where the indictment charges only one defendant who is at the hub of the conspiracy." Richardson, 532 F.3d at 1291. In such a case, there is no danger of any "spill over effect," since the defendant is alleged to have participated in all conspiratorial conduct. See United States v. Corey, 566 F.2d 429, 431 n.3 (2d Cir. 1977) ("Even if there were two conspiracies, . . . the fact that only a single conspiracy was charged did not and could not have prejudiced the defendant by spillover or otherwise."). Even if multiple conspiracies are ultimately proved at trial, the defendant will suffer no prejudice because those multiple conspiracies "could properly have been joined in the same indictment, since there was only one defendant." United States v. Sir Kue Chin, 534 F.2d 1032, 1035 (2d Cir. 1976).

Courts in the Second Circuit have consistently found that a "multiple conspiracies" charge is unnecessary in the trial of a single defendant. See, e.g., Corey, 566 F.2d at 431 n.3 ("[S]ingle/multiple conspiracy analysis does not apply to the trial of a single defendant." (citing Sir Kue Chin, 534 F.2d at 1035)); United

2

States v. Ling, 172 F. App'x 365, 366 (2d Cir. 2006) (summary order) (same); United States v. Atkins, No. 10 CR 391-04 CM, 2012 WL 1415625, at *2 (S.D.N.Y. Apr. 19, 2012) (same); United States v. Magassouba, No. 03 CR 985 (RPP), 2010 WL 624284, at *9 (S.D.N.Y. Feb. 22, 2010) ("The weight of Second Circuit authority instructs that a multiple conspiracy charge is not appropriate in a single-defendant case such as this." (citations omitted)), aff'd, 433 F. App'x 10 (2d Cir. 2011) (summary order).

Other circuits agree. See, e.g., United States v. Martin, 618 F.3d 705, 735 n.30 (7th Cir. 2010) ("[A]s long as the district court instructs the jury on the nature of the conspiracy charge, emphasizing that the Government must prove that the defendant intentionally agreed to advance the aim of the conspiracy, there is usually no need for a multiple conspiracies instruction when a defendant is tried alone."); Richardson, 532 F.3d at 1291 (agreeing with Second Circuit that "multiple conspiracies instruction was neither necessary nor appropriate" where defendant was tried alone); United States v. Anguiano, 873 F.2d 1314, 131 (9th Cir. 1989) ("[T]here is no problem of spillover when . . . the defendant stands trial alone." (citations omitted)). The Court is unaware of any case in which a Court of Appeals set aside a conviction as a result of the district's court's failure to administer a "multiple conspiracies" instruction in a single-defendant case.

There is no basis to administer a "multiple conspiracies" instruction in this case. There is no risk of any prejudicial spillover because defendant—alleged to be in the center of all the alleged conspiratorial activity—is tried alone.[2] Count Three

---

[2] Defendant recites three "possibilities" for prejudice: (1) the "deprivation of the right to be tried only on charges presented in an indictment returned by a grand jury"; (2) "the possibility that evidence

3

charges defendant with conspiring with others to violate the narcotics laws, and the jury will be instructed on the elements of that offense. It will be up to the jury to determine whether or not those elements have been established beyond a reasonable doubt. Any further instruction as to the conspiracy charge is unnecessary and will only confuse the jury.

Defendant cites United States v. Serrano, No. 13-CR-58 KBF, 2015 WL 81974 (S.D.N.Y. Jan. 6, 2015), but Serrano is consistent with the case law cited above. In Serrano, a defendant was charged, inter alia, with participating in a conspiracy to distribute both heroin and cocaine. See 2015 WL 81974 at *1. The jury convicted the defendant of participating in the conspiracy, but found that the Government did not prove that the conspiracy involved the requisite amount of heroin. See id. The defendant moved for a judgment of acquittal or a new trial arguing, inter alia, that the "jury's rejection of the heroin conspiracy evidence amount[ed] to a finding that the cocaine conspiracy was a separate independent conspiracy from the heroin conspiracy." Id. at *5 (internal quotation marks omitted). The Court rejected this multiple-conspiracies defense, explaining that even if the evidence established two separate conspiracies, the defendant was not prejudiced because he was tried as a

---

admitted under the umbrella of a single overarching conspiracy may have otherwise been inadmissible"; and (3) the possibility that the case involved "separate criminal networks operating independently of one another." (Def.'s Ltr. at 2, ECF No. 168.) None of these "possibilities" is relevant here: defendant is tried on the charges returned by a grand jury; all evidence in the record is independently admissible to prove the remaining counts and/or defendant's identity; and, as explained above, the possibility of multiple "networks" or conspiracies does not pose any risk of prejudice in this case.

    Defendant's attempts to factually distinguish the cases cited above are likewise unavailing. The facts of this case are unique, but the broader principles espoused by the previous cases still apply. The principal danger that the "multiple conspiracies" instruction was designed to alleviate—the spillover effect—is not present here.

single defendant and, therefore, the two conspiracies were properly joined in the indictment. See id. (citing Sir Kue Chin, 534 F.2d at 1035).[3] This holding is consistent with the case law cited above.

**B.     Withdrawal Instruction**

The Government argues that the jury should be instructed on withdrawal from a conspiracy. The Government has proposed the following instruction on withdrawal:

> Once a person joins a conspiracy, that person remains a member unless and until he withdraws from it completely. In order to withdraw from the conspiracy, a conspirator must show that he took some affirmative act to disavow or defeat the purpose of the conspiracy. He can do so either by informing law enforcement of the criminal activities of the conspiracy or by communicating his abandonment of the conspiracy in a manner reasonably calculated to reach co-conspirators. Merely ceasing to play a part in the conspiracy is not sufficient by itself to establish withdrawal from the conspiracy. Moreover, if, after initially attempting to withdraw, a conspirator takes any subsequent acts to promote the conspiracy or receives any additional benefits from the conspiracy, he cannot be considered to have withdrawn from the conspiracy. The defendant has the burden of proving that he withdrew from the conspiracy by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove that it is more likely true than not true.
>
> If you find that the defendant at some point withdrew from the conspiracy, he is not responsible for the acts of his co-conspirators following his withdrawal. However, the defendant still would have been part of the conspiracy until the point of withdrawal. In other words, even if you conclude that the defendant withdrew from the conspiracy at a particular time, he would remain responsible for the actions of the conspiracy up until that time.

---

[3] Defendant suggests, citing Serrano, that multiple conspiracies can be joined in the indictment only if there is "sufficient proof of mutual dependence and assistance." (See Def.'s Ltr. at 2.) This is inaccurate and misconstrues Serrano. Rule 8 of the Federal Rules of Criminal Procedure provides that joinder is appropriate "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). This test is clearly satisfied here (as it was in Serrano).

The Court agrees that an instruction on withdrawal is necessary in this case. In its opening statement and during cross-examination of government witnesses, the defense has made clear that one of its theories is that Ulbricht created Silk Road but then "handed it off" to others within several months of starting the site. The defense has represented that it does not intend to frame this theory in terms of withdrawal. Nonetheless, there is a serious risk that the jury would interpret the defense's "hand off" argument as an argument about withdrawal. It is thus important that the jury be instructed on the elements and legal ramifications of the withdrawal defense. To the extent the defense does not intend to rely on this defense, it can make that clear to the jury in its closing argument.

The Government's proposed charge on withdrawal accurately states the law. See United States v. Flaharty, 295 F.3d 182, 192 (2d Cir. 2002) ("It is well established that where the government has shown that a conspiracy existed and that a given defendant was a member of it, his membership is presumed to continue until the last overt act by any of the coconspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw." (citations omitted)); United States v. Leslie, 658 F.3d 140, 143 (2d Cir. 2011) ("Mere cessation of the conspiratorial activity by the defendant is not sufficient to prove withdrawal. The defendant must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators."

(citations and internal quotation marks omitted)); United States v. Eppolito, 543 F.3d 25, 49 (2d Cir. 2008) ("[T]he defendant must not take any subsequent acts to promote the conspiracy" or "receive any additional benefits from the conspiracy." (quoting United States v. Berger, 224 F.3d 107, 118 (2d Cir. 2000)) (internal quotation marks omitted)); United States v. Hamilton, 538 F.3d 162, 173 (2d Cir. 2008) (affirming that "withdrawal from a conspiracy is an affirmative defense which the defendant must prove by a preponderance of the evidence" (citation omitted)); Smith v. United States, 133 S. Ct. 714, 719 (2013) ("Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law 'through every moment of [the conspiracy's] existence,' and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot. Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy." (citations omitted)).

The defense has proposed the following addition to the withdrawal charge, citing United States v. Steele, 685 F.2d 793 (3d Cir. 1982): "Silence by the defendant about the conspiracy after his resignation cannot be considered by the jury as evidence of his continuing participation." In Steele, the Third Circuit affirmed that "[m]ere cessation of activity in furtherance of an illegal conspiracy does not necessarily constitute withdrawal," and "[t]he defendant must present evidence of some affirmative act of withdrawal on his part." 695 F.2d at 803. Once the defendant meets this burden, he has established withdrawal, and the Government

cannot argue that the defendant's post-withdrawal silence is evidence of his continuing participation in the conspiracy.  See id.

Defendant's proposed addition is unnecessary and poses a risk of confusing the jury by suggesting (incorrectly) that mere silence is sufficient for withdrawal. The proposed instruction already makes clear that once defendant meets his burden of showing withdrawal, he is not liable for further crimes of his co-conspirators. There is no danger that the jury will conclude that silence after withdrawal somehow is sufficient to rejoin the conspiracy.

**C.     Enumerating the Predicate Offenses for Continuing Criminal Enterprise ("CCE") Charge**

The parties disagree as to whether the Government must enumerate the predicate offenses for the CCE charge—in Indictment, in the jury instructions (or closing argument), or both.  There is no such requirement.

To convict defendant of engaging in a CCE, the Government must prove, inter alia, that defendant committed a narcotics felony as part of a "continuing series" of three or more narcotics violations.  See United States v. Aiello, 864 F.2d 257, 264 (2d Cir. 1988).  The law is clear that an indictment need not specifically identify the predicate offenses for a CCE charge.  See Flaharty, 295 F.3d at 197 ("Although Richardson requires that the jury be unanimous on each of the constituent felonies, we have held that an indictment that does not identify which of many alleged felonies constituted the series is not thereby defective."); United States v. Simmons, 923 F.2d 934, 952 (2d Cir. 1991) ("[T]he indictment need not specify each violation that constitutes the series." (citations omitted)); Aiello, 864

8

F.2d at 265 ("[A]n indictment charging a violation of § 848 need not 'specify each violation constituting the continuing series of violations.'" (quoting United States v. Young, 745 F.2d 733, 747 (2d Cir. 1984)) (internal quotation marks omitted)).  Here, Count Four specifies the <u>types</u> of offenses that are alleged to have been part of the "continuing series"—violations of 21 U.S.C. §§ 841, 843, and 846.  That is sufficient, as the Court has already held.  See United States v. Ulbricht, No. 14-CR-68 KBF, 2014 WL 3362059, at *15 (S.D.N.Y. July 9, 2014).[4]

There is also no basis to require the Government to commit to a particular set of predicate offenses in the jury instructions or in closing argument.  The Indictment is legally sufficient, and the Government is entitled to offer any admissible evidence to prove the charges therein.

Defendant does not cite any authority to the contrary.  The cases cited in defendant's submission stand for the well-established proposition that the jury must be unanimous as to which narcotics violations constitute the "continuing

---

[4] The Court is aware that there is language in United States v. Joyner, 313 F.3d 40, 48 (2d Cir. 2002), and Monsanto v. United States, 348 F.3d 345 (2d Cir. 2003) suggesting that some specificity as to the predicate offenses is required in the indictment.  See Joyner, 313 F.3d at 47-48 ("Here, [the defendants] were charged with only a CCE and a conspiracy, and there was nothing in the indictment identifying which three violations served as the predicate for the CCE charge.  It thus appears that the indictment was deficient under Richardson."); Monsanto, 348 F.3d at 349 n.4 ("The district court was well advised to limit its consideration to those acts alleged in the indictment because, had it failed to do so, it would have left open the question of whether it had 'constructively amended' the indictment.").  Richardson did not hold that specific violations must be identified in the indictment.  See Flaharty, 295 F.3d at 197 ("Although Richardson requires that the jury be unanimous on each of the constituent felonies, we have held that an indictment that does not identify which of many alleged felonies constituted the series is not thereby defective.").  The Court interprets the language in Joyner and Monsanto to require (at most) that the indictment specify the <u>types</u> of violations—e.g., violations of § 841 or § 846—that are alleged to serve as predicate offenses.  No more granularity is required in the indictment, and neither Joyner nor Monsanto suggest that any more is required in the jury instructions.  See Joyner, 313 F.3d at 48 ("The district court [instructed the jury on] the elements of the six predicate offenses, which further focused the jury on the <u>types of drug violations</u> it was to consider. (emphasis added)).

9

series." This unanimity requirement—which the jury instructions already make clear—does not suggest that the universe of possible predicate offenses must be circumscribed.

At the second charging conference, defendant argued that "[i]f the government doesn't have to specify the series of violations that constitute the crime, then the jury is not tethered to anything legally in the context of what the elements of the offense are and what the charge is." (Tr. at 1573:14-17.)  Not so.  There is a difference between specifying the elements of the offense—which the Court is required to do—and limiting the evidence that could be used to prove those elements.  The jury will be instructed on the elements of the CCE offense, including the "continuing series" requirement.  The jury then is entitled to consider all the evidence presented at trial in determining whether this element has been proved beyond a reasonable doubt.[5]

**D.     The "Variance in Dates" Instruction**

The Government has requested a modification in the "Variance in Dates" instruction to reflect that the Government need only prove that the charged conspiracies occurred within the date range set forth in the Indictment. Specifically, the Government has proposed the following substitution:

> Current:     As long as there is a substantial similarity between the dates alleged and the dates established by the evidence, that is sufficient.

---

[5] The Government's analogy to overt acts is apt in this respect.  (See Tr. at 1575:4-10.)  Certain conspiracy offenses require proof of an overt act in furtherance of the alleged conspiracy.  The law is clear, however, that "[a] conspiracy conviction may be sustained upon a showing of overt acts in furtherance of the conspiracy even if the overt acts are not alleged in the indictment."  United States v. Fassoulis, 445 F.2d 13, 19 (2d Cir. 1971) (citations omitted).

    Proposed:    As long as the conduct occurred around any dates or within any time periods the Indictment alleges it occurred, that is sufficient.

Defendant does not address this proposal in his written submission.

The Court has read the cases cited by the Government and agrees that there is no fatal variance as long as the conspiracy proved at trial falls within the period charged in the Indictment.  See, e.g., United States v. Heimann, 705 F.2d 662, 666 (2d Cir. 1983).  The Government's proposed change is therefore accepted.

### E.  References to Potential Liability for Aiding and Abetting a Conspiracy or Conspiring to Aid and Abet

Defendant has requested that all references to "aiding and abetting a conspiracy" or "conspiracy to aid and abet" be deleted from the jury instructions.[6]

Defendant is correct that "aiding and abetting a conspiracy" is not a valid theory of liability.  See United States v. Perry, 643 F.2d 38, 46-47 (2d Cir. 1981).  This is irrelevant, however, because neither the Indictment nor the jury instructions reference "aiding and abetting a conspiracy."

By contrast, "conspiracy to aid and abet" is a valid theory of liability.  Indeed, the Perry case, which defendant cites, explicitly draws a distinction between "aiding and abetting a conspiracy" and "conspiracy to aid and abet":

> [There is] a difference between punishing an agreement to commit an act intended to aid another crime (a "conspiracy to aid and abet") and imposing conspiratorial liability on one who, without agreement, merely assists conspirators in achieving their object (an "aiding and

---

[6] Count Five explicitly charges defendant with a conspiracy to commit and aid and abet computer hacking.

> abetting of a conspiracy"). While the first is appropriate, . . . the second is not.

Perry, 643 F.2d at 46-47; see also United States v. Orozco-Prada, 732 F.2d 1076, 1080 (2d Cir. 1984) ("[A]n agreement to engage in actions that are integral to the success of a drug venture prohibited by 21 U.S.C. § 841—such as laundering proceeds, or supplying cash or raw materials—violates 21 U.S.C. § 846 as a conspiracy to aid and abet the distribution of controlled substances." (emphasis in original)); United States v. Clark, 765 F.2d 297, 299 (2d Cir. 1985) (affirming a conviction for, inter alia, conspiracy to aid and abet a bank officer's misapplication of federally insured bank funds). Accordingly, the Court will not strike the references a "conspiracy to aid and abet" from the jury instructions.

**F.   Spoliation Instruction**

Defendant has requested an instruction regarding spoliation of evidence based on Special Agent ("SA") Beeson's failure to fully recover the data stored in the random access memory ("RAM") of the laptop that was seized from defendant. Defendant's proposed "spoliation" instruction is as follows:

> You have heard testimony about evidence which has not been produced, specifically the random access memory running on the laptop computer seized from Mr. Ulbricht at the time of his arrest. Counsel for defendant has argued that this evidence was in the prosecutor's control and would have proven facts material to the matter in controversy.
>
> If you find that the prosecutor could have produced this evidence, and that the evidence was within his or her control, and that this evidence would have been material in deciding among the facts in dispute in this case, then you are permitted, but not required, to infer that the evidence would have been unfavorable to the government.

> In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether the government had a reason for not producing this evidence that was explained to your satisfaction. Again, any inference you decide to draw should be based on all of the facts and circumstances in this case.

This instruction is unwarranted in this case. "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted). To establish the second element, the party requesting the instruction must show that the evidence is unavailable due to negligence or a higher degree of culpability, such as intentional behavior. See id. at 108. To establish the third element, the party "must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" Id. at 109 (quoting Kronisch v. United States, 150 F.3d 112, 127 (2d Cir. 1998)). Here, the second and third elements have not been established.

Defendant has not pointed to any evidence in the record that the RAM on the seized laptop was destroyed negligently or intentionally. To the contrary, the record shows that SA Beeson acted carefully in preserving and imaging the laptop. He testified that "[t]he RAM capture was nontrivial" and that he solicited assistance

13

from an associate.  (See Tr. 1244:8-20; 1246:6-9.)  He also testified that the order of imaging the laptop—first securing the contents of the hard drive and only then attempting to capture the data in RAM—was "carefully selected."  (See id. at 1216:24.)  This testimony indicates that the imaging process was well thought out and carefully executed.  That the RAM was ultimately only partially recovered does not, in and of itself, indicate that SA Beeson was negligent or otherwise engaged in any wrongful conduct.

Further, defendant has not put forward any evidence that any unrecovered data from the laptop's RAM would have supported a defense theory.  In cross-examining SA Beeson, defense counsel suggested that the data may have included "malware and viruses" (id. at 1250:11-12), but defendant did not mention this theory, or any other theory, in his letter-motion.  In any event, speculation that the unrecovered data was somehow relevant is insufficient to support a spoliation instruction.  See Kullman v. New York, No. 8:07-CV-716 GLS/RFT, 2012 WL 1142899, at *2 (N.D.N.Y. Apr. 4, 2012) ("[U]nsupported conjecture and speculation do not justify the issuance of an adverse inference instruction." (citing Residential, 306 F.3d at 109)).

The Clerk of Court is directed to terminate the motion at ECF No. 164.

SO ORDERED.

Dated:     New York, New York
           February 2, 2015

_____
KATHERINE B. FORREST
United States District Judge