F24dulb1                        Trial

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                         14 Cr. 68 (KBF)

5   ROSS WILLIAM ULBRICHT,

6              Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         February 4, 2015
9                                        10:06 a.m.

10

    Before:
11
                      HON. KATHERINE B. FORREST,
12
                                         District Judge
13

14                       APPEARANCES

15

    PREET BHARARA,
16        United States Attorney for the
          Southern District of New York
17   BY:  SERRIN A. TURNER
          TIMOTHY HOWARD
18             Assistant United States Attorneys

19   JOSHUA LEWIS DRATEL
     LINDSAY LEWIS
20   JOSHUA HOROWITZ
          Attorneys for Defendant
21
              – also present –
22
     Special Agent Vincent D'Agostino
23   Molly Rosen, Government Paralegal
     Nicholas Evert, Government Paralegal
24

25

F24dulb1                    Trial

1          (Trial resumed; jury not present)

2          THE COURT:  Good morning, everyone.  Let's all be

3     seated and get appearances and then we'll get the jury out.

4          THE CLERK:  Continuation of the matter now on trial,

5     United States of America versus Ross William Ulbricht, 14 Cr.

6     68.

7          Counsel, please state your names for the record.

8          MR. TURNER:  Good morning, your Honor.  This is Serrin

9     Turner for the government.  With me at counsel's table is

10    Timothy Howard, Nicholas Evert and Molly Rosen.

11         THE COURT:  Good morning to all of you.

12         MR. DRATEL:  Good morning, your Honor.  Joshua Dratel

13    for Ross Ulbricht, who is standing beside me, Lindsay Lewis

14    from my office, and Joshua Horowitz.

15         THE COURT:  Good morning to all of you.

16         We're going to get the jury out here in just a moment.

17    I want to confirm that there are no issues that you folks would

18    like to raise with me before we begin the process of

19    instructing the jury.

20         MR. TURNER:  Not from the government.

21         MR. DRATEL:  No, your Honor.  Thank you.

22         THE COURT:  All right.  Let's go ahead, then, and

23    bring out the jury.

24         (Continued on next page)

25

F24dulb1                      Trial

1              THE CLERK:  All rise as the jury enters.

2              (Jury present)

3              THE COURT:  All right.  Ladies and gentlemen, let's

4    all be seated.

5              You all have had left on your chairs two documents,

6    and don't let the size of the thicker of the two scare you.

7    Many pages only have a little bit of text.  Some pages are

8    entirely full.  But these are the jury instructions that I will

9    be going over with you this morning, and it's sometimes helpful

10   for people to have a copy and to follow along.

11             As I mentioned yesterday, however, what I say is in

12   fact the instructions to you.  So I want you to listen to what

13   I'm saying.  So don't skip ahead.  Follow along with me.

14             You also have there a copy of the verdict form -- Joe

15   is going to give it to you right now -- of the verdict form.

16   There will be one for each of you.  There will be an extra

17   blank verdict form -- they will all be blank -- in the jury

18   room.  The reason that I give all of you a verdict form now and

19   also have an extra one is sometimes people mark on it or

20   something else and then they find that they need a clean one at

21   the very end of the process.  So that I found it's just as easy

22   to go ahead and put an extra one in the room for you.  But the

23   verdict form gives you a sense as to the information that you

24   will be needing to make decisions about, and we'll go through

25   it also.

F24dulb1                          Trial

1           Let me tell you first what you're going to have in the

2    jury room with you.  You're going to have these two documents.

3    You will be able to take your copy of the instructions back

4    into the jury room with you.  You'll have your copy of the

5    verdict form.  There will be the extra verdict form.  You'll

6    have all of the documents that were admitted into evidence.

7    They will be rolled into the jury room in a cart and they will

8    be there for you.  So if you want to look at some of the

9    exhibits, for instance, that were shown on the screen at

10   various times, those are also in hardcopy form and you will be

11   able to then look at them, should you choose to do so.  They

12   will be available for you.

13          You will also have a copy, just one, of the Indictment

14   in this matter, which we have been referring to from time to

15   time.  It's called a "Superseding Indictment" but it's the

16   charging instrument in this matter.  And you're going to have

17   some forms for questions if you want to write questions.

18          The foreperson, whoever you folks decide -- and that

19   will be up to you however you want to decide it, who your

20   foreperson is -- the foreperson will sign the questions on

21   these pieces of paper, but anybody can write the question.  In

22   fact, I've gotten questions sometimes that look like they have

23   been passed around.  One person writes a question, somebody

24   else writes a question, and then the foreperson signs it.  And

25   we'll talk about that process at the very end.

1           And then you'll have some manila envelopes that you'll

2      put the questions into, because nothing will come out of that

3      room unless it's in a sealed envelope, which then I will get

4      directly.  It will remain sealed until it reaches the Court.

5           Now, I want to remind you, as I started to say

6      yesterday, that you can't deliberate unless all of you are in

7      the room at the same time.  All right?  So if you folks have

8      somebody who goes out for a cigarette break, you've got to wait

9      until they come back.  In the morning, if you're deliberating

10     tomorrow morning, then you've got to wait until everybody

11     arrives.  You can't deliberate without everybody because

12     everybody needs to make decisions unanimously.

13          We're going to have lunch for you.  We're going to

14     have snacks this afternoon.  So you will be able to work right

15     on through.  And you will effectively organize yourselves.  I

16     will give you your start and end hours, but when you choose to

17     take a break will be something that you folks decide.  You will

18     be able to decide that yourself.

19          All right.  And I said I would talk about the

20     alternates at the end.  The alternates, I have had instances --

21     I've actually had several instances where after the panel of 12

22     is sent into the room -- the alternates are not dismissed from

23     the case but you don't go into the room.  But I have had

24     instances where by the next morning I have needed to call one

25     or more alternates.  So we'll talk about that.  But by no means

1    does the fact that the 12 start deliberations necessarily mean

2    at all that the alternates won't be called on to come join, for

3    any number of reasons.  Somebody can get a stomach virus that

4    puts them out of pocket.  Things happen.  All right?  And we'll

5    talk about that more.

6            Now, I'm starting on page 3.  You will see that there

7    is a handy table of contents there in the front that will, if

8    you are looking later on about where to go for things, you can

9    see that.  The reason that the instructions are written like

10   this is because, as you can imagine, the law is very precise in

11   terms of what courts should instruct juries with respect to

12   when you are dealing with particular causes of action.  So

13   these are highly and carefully scripted instructions.  So

14   that's why it's written out and I don't just wing it.  All

15   right?

16           All right.  So, the role of the Court.

17           You have now heard all of the evidence in the case, as

18   well as the final arguments from the lawyers for the parties.

19   My duty at this point is to instruct you as to the law.  It is

20   your duty to accept those instructions of law and to apply them

21   to the facts as you, ladies and gentlemen of the jury,

22   determine them.

23           On these legal matters, you must take the law as I

24   give it to you.  Regardless of any opinion that you may have as

25   to what the law may be -- or ought to be -- it would violate

F24dulb1                        Charge

1    your sworn duty to base a verdict upon any other view of the

2    law than that which I give to you.  If an attorney or anyone

3    else at trial has stated a legal principle different from any

4    that I state to you in my instructions, it is my instructions

5    that you must follow.

6          You should not single out any instruction alone

7    stating the law, but you should consider my instructions as a

8    whole when you retire to deliberate in the jury room.  And you

9    may take a copy of these instructions into the jury room with

10   you.

11         Your role is to pass upon and decide the fact issues

12   that are in this case.  You, ladies and gentlemen of the jury,

13   are the sole and the exclusive judges of the facts.  You pass

14   upon the weight of the evidence or lack of evidence; you

15   determine the credibility of the witnesses; you resolve such

16   conflicts as there may be in the testimony; and you draw

17   whatever reasonable inferences you decide to draw from the

18   facts as you have determined them.

19         The evidence before you consists of the answers given

20   by witnesses and the exhibits and stipulations which were

21   received into evidence.  In determining the facts, you must

22   rely upon your own recollection of the evidence.  I will

23   instruct you at the end of these charges about your ability to

24   request to have testimony read back and your access to other

25   evidence admitted during the trial, like I have already told

1      you about the cart that will have all of the exhibits in it.

2              Now, what the lawyers have said in their opening

3      statements, in their objections, in their questions, and what

4      they have said in their closing arguments is not evidence.  You

5      should bear in mind particularly that a question put to a

6      witness is never evidence.  Only the answer is evidence.  If a

7      witness affirms a particular fact in a question by answering

8      "yes," you may consider that fact as agreed on by the witness.

9      The weight that you give that fact is up to you.

10             Nor are you to substitute anything that I may have

11     said during the trial or during these instructions with respect

12     to facts for your own independent recollection.  It's your

13     recollection which governs.  What I say is not evidence.  If I

14     have sustained an objection to a question or stricken

15     testimony, any stricken answers given by a witness are no

16     longer part of the evidence in this case, and you may not

17     consider them.

18             You should draw no inference or conclusion for or

19     against any party because of a lawyer's objections.  Counsel

20     not only have the right but the duty to make legal objections

21     when they think that those objections are appropriate.

22             Also, do not draw any inferences from any of my

23     rulings.  The rulings I have made during the trial are not any

24     indication of my views of what your decision should be as to

25     whether or not the government has proven the defendant guilty

F24dulb1                         Charge

1    of any of the crimes charged beyond a reasonable doubt.  You

2    should draw no inference or conclusion of any kind, favorable

3    or unfavorable, with respect to any witness or any party in the

4    case, because of any comment, question, or instruction of mine.

5        Now, your verdict must be based solely upon the

6    evidence or lack of evidence.  It would be improper for you to

7    consider any personal feelings that you may have about the

8    defendant's race, ethnicity, or national origin.  It would be

9    equally improper for you to allow any feelings that you might

10   have about the nature of the crimes charged to interfere with

11   your decision-making process.

12       I also want to remind you that before each of you was

13   accepted and sworn to act as a juror, you were asked questions

14   concerning competency, qualifications, fairness, and freedom

15   from prejudice and bias.  On the faith of those answers, you

16   were accepted as jurors by the parties.  Therefore, those

17   answers are as binding on each of you now as they were then,

18   and should remain so, until the jury is discharged from

19   consideration of this case.

20       The fact that the prosecution is brought in the name

21   of the United States of America entitles the government to no

22   greater consideration than that given to any party to a

23   litigation.  By the same token, the government is entitled to

24   no less consideration.

25       As you know, the defendant has pled not guilty to the

F24dulb1                     Charge

1    charges in the Indictment.  As a result, the burden is on the

2    government to prove the defendant's guilt beyond a reasonable

3    doubt.  This burden never shifts to the defendant for the

4    simple reason that the law never imposes upon a defendant in a

5    criminal case the burden or duty of testifying, or calling any

6    witness, or locating or producing any evidence.

7           The law presumes a defendant to be innocent of the

8    charges.  This presumption was with the defendant when the

9    trial began and remains with the defendant unless and until you

10   are convinced that the government has proved the defendant's

11   guilt beyond a reasonable doubt.

12          Even though the defendant has called witnesses in this

13   case, the presumption of innocence remains with him, and the

14   government still has the burden of proof beyond a reasonable

15   doubt.

16          The question, therefore, naturally arises:  "What is a

17   reasonable doubt?"  What does that phrase mean?  The words

18   almost define themselves.  A reasonable doubt is a doubt based

19   in reason and arising out of the evidence in the case, or the

20   lack of evidence.  It is a doubt that a reasonable person has

21   after carefully weighing all of the evidence in the case.

22   Reasonable doubt is a doubt that appeals to your reason, your

23   judgment, your experience, and your common sense.  Proof beyond

24   a reasonable doubt must, therefore, be proof of such a

25   convincing character that a reasonable person would not

1     hesitate to rely and act upon it in his or her own important

2     affairs.  In other words, if you have such a doubt as would

3     reasonably cause a prudent person to hesitate in acting in

4     important matters in his or her own affairs, then you have a

5     reasonable doubt, and in that circumstance it is your duty to

6     find the defendant not guilty.

7           Reasonable doubt is not whim and it's not speculation.

8     It is not an excuse to avoid the performance of an unpleasant

9     duty.  Nor is it sympathy for the defendant that you are

10    considering.  "Beyond a reasonable doubt" does not mean a

11    positive certainty, or beyond all possible doubt.  After all,

12    it is virtually impossible for a person to be absolutely and

13    completely convinced of any contested fact that by its nature

14    is not subject to mathematical proof and certainty.  As a

15    result, the law in a criminal case is that it is sufficient if

16    the guilt of the defendant is established beyond a reasonable

17    doubt, not beyond all possible doubt.

18          The defendant, Ross Ulbricht, has been formally

19    charged in what is called an "Indictment."

20          As you instructed you at the outset the of the trial,

21    the Indictment is simply an accusation.  It is no more than the

22    means by which a criminal case is started.

23          It is not evidence.  It is not proof of the

24    defendant's guilt.  It creates no presumption, and it permits

25    no inference that the defendant is guilty of the crimes

1    charged.

2          You are to give no weight to the fact that an

3    Indictment has been returned against the defendant.

4          I'm not going to read the entire Indictment to you.

5    You are going to have a copy of it in the jury room with you,

6    and you can read it, if you choose to do so, in its entirety.

7    Rather, in a moment I will summarize the charges in the

8    Indictment and then explain in detail the elements of each

9    crime that is charged.

10         Now, before I get to that, I want to talk to you about

11   direct and circumstantial evidence.

12         There are two types of evidence that you can use in

13   reaching your verdict.  One type of evidence is "direct

14   evidence."  One kind of direct evidence is a witness' testimony

15   about something that he or she knows by virtue of his or her

16   own senses -- something that the witness has smelled, touched,

17   seen or heard.  Direct evidence may also be in the form of an

18   exhibit.

19         The other type of evidence is "circumstantial

20   evidence."  Circumstantial evidence is evidence that tends to

21   prove one fact by proof of other facts.

22         By way of example, if you wake up in the morning and

23   see that the sidewalk is wet, you may find from that fact that

24   it rained during the night.  However, other evidence, such as a

25   turned-on garden hose, may explain the water on the sidewalk.

1    Therefore, before you decide that a fact has been proven by

2    circumstantial evidence, you must consider all of the evidence

3    in light of reason, experience, and common sense.

4            That is all there is to circumstantial evidence.  You

5    infer based on reason, experience and common sense from an

6    established fact the existence or the nonexistence of some

7    other fact.

8            Many facts, such as a person's state of mind, can

9    rarely be proven by direct evidence.  Circumstantial evidence

10   is of no less value than direct evidence.  It is a general rule

11   that the law makes no distinction between direct and

12   circumstantial evidence, but simply requires that, before

13   convicting a defendant, you, the jury, must be satisfied of the

14   defendant's guilt beyond a reasonable doubt from all of the

15   evidence in the case.

16           Now, you have heard reputation evidence about the

17   defendant's character trait for peacefulness and nonviolence.

18   This testimony is not to be taken by you as the witness'

19   opinion as to whether or not the defendant is guilty or not

20   guilty of the crimes charged.  That question is for you alone

21   to determine.  You should consider character evidence together

22   with and in the same way as all the other evidence in the case.

23           Now, during the trial, and as I give you these

24   instructions, you have heard and will hear the term

25   "inference."  For instance, in their closing arguments, the

1     attorneys have asked you to infer, based on your reason, your

2     experience, your common sense, from one or more established

3     facts, the existence of some other facts.  I have instructed

4     you on circumstantial evidence just a moment ago and that it

5     involves inferring a fact based on other facts, your reason,

6     and your common sense.

7                So what is an "inference"?  What does it mean to

8     "infer" something?  An inference is not a suspicion.  It is not

9     a guess.  It is a reasoned, logical decision to conclude that a

10    disputed fact exists based on another fact that you know

11    exists.

12               There are times when different inferences may be drawn

13    from facts, whether proven by direct or circumstantial

14    evidence.  The government asks you to draw one set of

15    inferences, while the defense asks you to draw another.  It is

16    for you, and you alone, to decide what inferences you will

17    draw.

18               The process of drawing inferences from facts in

19    evidence is not a matter of the guesswork or speculation.  An

20    inference is a deduction or conclusion that you, the jury, are

21    permitted but not required to draw from the facts that have

22    been established by either direct or circumstantial evidence.

23    In drawing inferences, you should use your common sense.

24               Therefore, while you are considering the evidence

25    presented to you, you may draw, from the facts that you have

F24dulb1                      Charge

1    found to be proven, such reasonable inferences as would be

2    justified in light of your experiences.

3            Some inferences, however, are impermissible.  You may

4    not infer that the defendant is guilty of participating in

5    criminal conduct merely from the fact that he was present at

6    the time the crime was being committed and had knowledge that

7    it was being committed.  Nor may you use evidence that I have

8    instructed you was admitted for a limited purpose for any

9    inference beyond that limited purpose.

10           In addition, you may not infer that the defendant is

11   guilty of participating in criminal conduct merely from the

12   fact that he associated with people who were guilty of

13   wrongdoing or merely because he has or had knowledge of the

14   wrongdoing of others.

15           Here again, let me remind you that, whether based upon

16   direct or circumstantial evidence, or upon the logical,

17   reasonable inferences drawn from such evidence, you must be

18   satisfied of the guilt of the defendant beyond a reasonable

19   doubt before you may convict the defendant on any of the crimes

20   charged.

21           Now for the important subject of evaluating testimony.

22           How do you evaluate the credibility or the

23   believability of witnesses?  The answer is that you use your

24   plain common sense.  Common sense is your greatest asset as a

25   juror.  You should ask yourselves, did the witness impress you

F24dulb1                         Charge

1   as honest, open, and candid?  Or did the witness appear

2   evasive, or as though the witness were trying to hide

3   something?  How responsive was the witness to the questions

4   asked on direct examination and on cross-examination?

5          If you find that a witness is intentionally telling a

6   falsehood, that is always a matter of importance that you

7   should weigh carefully.  If you find that any witness has lied

8   under oath at this trial, you should view the testimony of such

9   a witness cautiously and weigh it with great care.  It is,

10  however, for you to decide how much of a witness' testimony, if

11  any, you wish to believe.  Few people recall every detail of

12  every event precisely the same way.  A witness may be

13  inaccurate, contradictory, or even untruthful in some respects

14  and yet entirely believable and truthful in other respects.  It

15  is for you to determine whether such inconsistencies are

16  significant or inconsequential, and whether to accept or reject

17  all or to accept some and reject the balance of the testimony

18  of that witness.

19         On some occasions during this trial, witnesses were

20  asked to explain an apparent inconsistency between testimony

21  offered at this trial and previous statements made by the

22  witness.  It is for you to determine whether a prior statement

23  was inconsistent, and, if so, how much, if any, weight to give

24  to an inconsistent statement in assessing the witness'

25  credibility at trial.  You may consider evidence of a witness'

F24dulb1                    Charge

1    prior inconsistent statement only insofar as it relates to the

2    witness' credibility.

3         In evaluating credibility of the witnesses, you should

4    take into account any evidence that the witness who testified

5    may benefit in some way from the outcome of the case.  Such an

6    interest in the outcome of the case -- Joe, sorry.  We are

7    pausing because they are drilling again.  I don't want you to

8    feel like you are at the dentist.

9         You will take care of it?

10        THE CLERK:  Yes.

11        THE COURT:  We got them to take care of it the other

12   day.  I'm sure that we will get them to just stand down for a

13   little while.

14        Let my start that paragraph over again.  We are on

15   page 17, if you are following along.

16        In evaluating the credibility of the witnesses, you

17   should take into account any evidence that the witness who

18   testified may benefit in some way from the outcome of this

19   case.  Such an interest in the outcome creates a motive to

20   testify falsely, and may sway the witness to testify in a way

21   that advances his own interests.  Therefore, if you find that

22   any witness whose testimony you are considering may have an

23   interest in the outcome of this trial, then you should bear

24   that factor in mind when evaluating the credibility of his or

25   her testimony and accept it with great care.  This is not to

F24dulb1                        Charge

1   suggest that any witness who has an interest in the outcome of

2   this case would testify falsely.  It is for you to decide to

3   what extent, if at all, the witness' interest has affected or

4   colored his or her testimony.

5        You are not required to accept testimony even though

6   the testimony is uncontradicted and the witness' testimony is

7   not challenged.  You may decide because of the witness' bearing

8   or demeanor, or because of the inherent improbability of the

9   testimony, or for other reasons sufficient to yourselves that

10  the testimony is not worthy of belief.  On the other hand, you

11  may find, because of a witness' bearing and demeanor and based

12  upon your consideration of all the other evidence in the case,

13  that the witness is truthful.

14       Thus, there is no magic formula by which you can

15  evaluate testimony.  You bring to this courtroom all your

16  experience.  You determine for yourselves in many circumstances

17  in your everyday life the reliability of statements that are

18  made to you by others to you and upon which you are asked to

19  rely.  You may use the same tests here that you use in your

20  everyday lives.  You may consider the interest of any witness

21  in the outcome of this case and any bias or prejudice of any

22  such witness, and this is true regardless of who called or

23  questioned the witness.

24       Now, a defendant in a criminal case does not have a

25  duty to testify or to come forward with any evidence.  Under

1    our Constitution, a defendant has no obligation to testify or

2    to present any evidence, because it is the government's burden

3    to prove a defendant guilty beyond a reasonable doubt.  That

4    burden remains with the government throughout the entire trial

5    and never shifts to the defendant.  The defendant is never

6    required to prove that he is innocent.

7            In this case, the defendant, Ross Ulbricht, chose not

8    to testify.  You must not attach any significance to the fact

9    that the defendant did not testify.  I instruct you that no

10   adverse inference against the defendant may be drawn by you

11   because he did not take the witness stand, and you may not

12   consider it in any way in your deliberations in the jury room.

13           You have heard the testimony of various members of law

14   enforcement.  The fact that a witness may be employed as a law

15   enforcement official or employee by the United States of

16   America or the United States government or by a foreign

17   government does not mean that his testimony deserves more or

18   less consideration or greater or lesser weight than that of an

19   ordinary witness.

20           At the same time, it is legitimate for defense counsel

21   to try to attack the credibility of law enforcement witnesses

22   because his testimony may be colored by a personal or

23   professional interest in the outcome of the case.

24           It is your decision, after reviewing all of the

25   evidence, whether to accept the testimony of law enforcement or

government employee witnesses, as it is with every other type

of witness, and to give that testimony the weight that you find

that it deserves.

I note that some of the testimony that you heard from

law enforcement agents included testimony concerning what they

personally suspected or believed about particular individuals

at particular points during their investigations.  As I have

instructed you previously, such beliefs or suspicions of a law

enforcement agent, or any other witness, are not evidence and

should be disregarded.

You have heard from witnesses who testified that they

committed crimes.  Let me say a few things that you want to

consider during your deliberations on the subject of what we

call cooperating witnesses.

Cooperating witness testimony should be given such

weight as it deserves in light of the facts and circumstances

before you, taking into account the witness' demeanor, candor,

the strength and accuracy of the witness' recollection, the

witness' background, and the extent to which the witness is or

is not corroborated by other evidence in the case.

Because of the possible interest that a cooperator may

have in testifying for the government, you should scrutinize

his testimony with special care and caution.  You may consider

the fact that a witness is a cooperator as bearing upon his

credibility.  You may consider whether a witness, like any

other witness in this case, has an interest in the outcome of

the case and, if so, whether it has affected his testimony.  It

does not follow, however, that simply because a person has

admitted to participating in one or more crimes, he is

incapable of giving a truthful version of what happened.

You also heard testimony about cooperation or

nonprosecution agreements between the government and

cooperating witnesses.  The existence of such an agreement

itself and its effect on the witness may be considered by you

in determining credibility.  Your sole concern is whether a

witness has given truthful and accurate testimony here in this

courtroom before you.

In evaluating the testimony of a cooperating witness,

you should ask yourselves whether the witness would benefit

more by lying, or by telling the truth.  Was his testimony

fabricated in any way because he believed or hoped that he

would somehow receive favorable treatment by testifying

falsely?  Or did he believe that his interests would be best

served by testifying truthfully?  If you believe that the

witness was motivated by hopes of personal gain, was the

motivation one that would cause him to lie, or was it one which

would cause him to tell the truth?  Did this motivation color

his testimony?

If you find that the testimony was false, you should

reject it.  However, if, after a cautious and careful

F24dulb1                         Charge

1    examination of the cooperating witness' testimony and demeanor

2    upon the witness stand, you are satisfied that the witness told

3    the truth, you should accept it as credible and act upon it

4    accordingly.  As with any witness, let me emphasize that the

5    issue of credibility need not be decided in an all-or-nothing

6    fashion.  Even if you find that a witness testified falsely in

7    one part, you still may accept his or her testimony in other

8    parts, or may disregard all of it.  That is a determination

9    entirely for you, the jury.

10        You have also heard testimony that one of the

11   cooperating witnesses pled guilty to charges arising from drug

12   dealing on Silk Road.  You are instructed that you are to draw

13   no conclusions or inferences of any kind about the guilt of the

14   defendant on trial from the fact that a government witness pled

15   guilty to similar charges.  The decision of that witness to

16   plead guilty was a personal decision that that witness made

17   about his own guilt.  It may not be used by you in any way as

18   evidence against or unfavorable to the defendant on trial here.

19        You may not draw any inference, favorable or

20   unfavorable, towards the government or the defendant on trial,

21   from the fact that certain persons were not named as a

22   defendant in the Indictment.  The fact that these persons are

23   not on trial here must play no part in your deliberations.

24        Whether a person should be named as a co-conspirator

25   or indicted as a defendant is a matter within the sole

F24dulb1                          Charge

1    discretion of the United States Attorney and the Grand Jury.

2    Therefore, you may not consider it in any way in reaching your

3    verdict as to the defendant on trial.

4          You have heard evidence during the trial that

5    witnesses have discussed the facts of the case and their

6    testimony with government lawyers, the defense lawyers, or

7    their own lawyers before the witness appeared in court.

8          Although you may consider that fact when you are

9    evaluating a witness' credibility, I instruct you that there is

10   nothing either unusual or inherently improper about a witness

11   meeting with the government lawyers, the defense lawyers, or

12   his or her own lawyers before testifying so that the witness

13   can be aware of the subjects he or she will be questioned

14   about, focus on those subjects, and have the opportunity to

15   review relevant exhibits before being questioned about them.

16   Such consultation helps conserve your time and the Court's

17   time.  In fact, it would be unusual for a lawyer to call a

18   witness without such consultations.

19         The weight you give to the fact or the nature of the

20   witness' preparation for his or her testimony and what

21   inferences you draw from such preparation are matters

22   completely within your discretion.

23         You have heard reference throughout the questioning to

24   the fact that certain investigative techniques were used by the

25   government.  There is no legal requirement, however, that the

1    government prove its case through any particular means.

2            Your concern is whether or not, on the evidence or

3    lack of evidence, the government has proved the defendant's

4    guilt beyond a reasonable doubt.

5            Some of the evidence in this case has consisted of

6    electronic communications seized from computers or electronic

7    accounts.  There is nothing illegal about the government's use

8    of such electronic communications in this case and you may

9    not -- let me start that sentence over again.

10           There is nothing illegal about the government's use of

11   such electronic communications in this case, and you may

12   consider them along with all the other evidence in this case.

13   Whether you approve or disapprove of the seizure of these

14   communications may not enter into your deliberations.

15           You must, therefore, regardless of any personal

16   opinions, consider this evidence along with all the other

17   evidence in the case in determining whether the government has

18   proved beyond a reasonable doubt the guilt of the defendant.

19   However, as with other evidence, it is for you to determine

20   what weight, if any, to give to such evidence.

21           You have also heard some evidence in the form of what

22   are called "stipulations."  A stipulation of fact is an

23   agreement among the parties that a certain fact is true.  You

24   should regard such agreed facts as true.

25           A stipulation of testimony is an agreement among the

1   parties that, if called to testified, a witness would give

2   certain testimony.  You must accept as true the fact that the

3   witness would have given the testimony.  However, it is for you

4   to determine the effect or weight to give that testimony.

5        Now, some of the exhibits were charts, tables, or

6   other forms of summary exhibits.  These exhibits are not direct

7   evidence.  They are graphic representations or other ways of

8   summarizing more voluminous information that was either

9   described in the testimony of a witness or reflected in

10  documents admitted into evidence.  It is often easier and more

11  convenient to utilize charts, tables, and summaries as opposed

12  to placing all of the underlying documents or data in front of

13  you.  But it is for you to decide whether the summary exhibits

14  fairly and correctly reflect the underlying testimony and

15  documents and data that they purport to summarize.

16       To the extent that the summary exhibits conform with

17  your understanding of the underlying evidence, you may accept

18  them.  To the extent they do not, you should set them aside and

19  rely on the underlying evidence instead.  But one way or the

20  other, realize that the summary exhibits are not in and of

21  themselves direct evidence.  They are merely intended to serve

22  as aids in a party's presentation of the evidence, and they are

23  nothing more.

24       Some of the exhibits admitted into evidence consist of

25  excerpts of longer documents that were not admitted into

F24dulb1                        Charge

1    evidence in their entirety.  These excerpts are simply the

2    portions of the underlying documents considered to be most

3    relevant to the case by the party introducing them.  There is

4    nothing unusual or improper about the use of such excerpts, and

5    you are not to infer from the use of such excerpts that any

6    relevant portion of a document has been omitted.

7         Similarly, some of the exhibits admitted into evidence

8    include redactions of certain information.  Again, there is

9    nothing unusual or improper about such redactions, and you are

10   not to infer from the use of such redactions that any relevant

11   portion of a document has been removed.

12        You have heard the names of several people during the

13   course of the trial who did not appear here to testify, and one

14   or more of the attorneys may have referred to their absence.  I

15   instruct you that each party had an equal opportunity or lack

16   of opportunity to call any of these witnesses.  However, the

17   government bears the burden of proof; the defendant does not

18   bear the burden of proof.  Therefore, you should not draw any

19   inference or reach any conclusions as to what those persons

20   would have testified to had they been called.  Their absence

21   should not affect your judgment in any way.

22        You should, however, remember my instruction that the

23   law does not impose on a defendant in a criminal case the

24   burden or duty of calling any witnesses or producing any

25   evidence.

F24dulb1                          Charge

1          Now, I want to get into the specific charges in the

2    Indictment and go through the elements.

3          Are you all doing OK?

4          (Pause)

5          We are on page 32.  It is entitled "Charge."

6          The defendant, Ross Ulbricht, has been formally

7    charged in a document called an Indictment.  As I instructed

8    you at the outset of this case, an indictment is a charge or an

9    accusation.  It is not evidence.  Here, the Indictment contains

10   seven counts.  And your verdict form, by the way, lists each of

11   those counts individually, and you will reach a separate

12   verdict as to each count one by one.

13         You will have a copy of the Indictment in the jury

14   room with you, and you can read each count in its entirety.  I

15   am going to provide you just a brief summary now:

16         Count One charges the defendant with distributing

17   narcotics or aiding and abetting the distribution of narcotics.

18         Count Two charges the defendant with distributing

19   narcotics or aiding and abetting the distribution of narcotics

20   by means of the Internet, specifically.

21         Count Three charges the defendant with conspiring with

22   others to violate the narcotics laws of the United States.

23         Count Four charges the defendant with engaging in a

24   "continuing criminal enterprise."  Sometimes that's referred to

25   as a "CCE," a continuing criminal enterprise, a term that I'm

F24dulb1                        Charge

1     going to define for you more in a moment.

2              Count Five charges the defendant with conspiring with

3     others to commit or aid and abet computer hacking.

4              Count Six charges the defendant with conspiring with

5     others to traffic in fraudulent identification documents or to

6     aid and abet such activity.

7              Count Seven charges the defendant with conspiring with

8     others to commit money laundering.

9              Now, as I just indicated, the Indictment contains a

10    total of seven counts.  Each count constitutes a separate

11    offense, or separate crime.  And you must consider each count

12    of the Indictment separately, and you have to return a verdict

13    on each one separately, so you will go through them one by one.

14             Now, let's talk about Count One.

15             As I said, Count One charges the defendant with

16    distributing or aiding and abetting the distribution of

17    narcotics.

18             In order to find the defendant guilty of this count,

19    you must find that the government has proven beyond a

20    reasonable doubt the following two elements:

21             First, that the defendant distributed or aided and

22    abetted the distribution of controlled substances.  I will use

23    the terms "controlled substances," "narcotics" and "drugs"

24    interchangeably; and, second, that he did so knowingly and

25    intentionally.

1           So let's talk about some of that.

2           The term "distribute" refers to selling, delivering,

3    or otherwise transferring narcotics from one person to another.

4           One can also be said to "distribute" narcotics by

5    committing an act in furtherance of a sale, delivery, or

6    transfer, such as brokering a sales transaction, receiving

7    purchase money, or arranging for the delivery of narcotics.  It

8    is not necessary for you to find that the defendant himself

9    personally possessed any narcotics in order for you to find

10   that he participated in distributing narcotics.  However,

11   distribution requires a concrete involvement in the transfer of

12   the drugs.

13          The second element the government must prove as to

14   Count One is that the defendant acted knowingly or

15   intentionally in distributing or aiding and abetting the

16   distribution of narcotics.  To satisfy this element, you must

17   find that the defendant had knowledge that what he was

18   distributing consisted of narcotics or that he intended to

19   distribute narcotics.

20          Knowledge is a matter of inference from facts proved.

21   A person acts "intentionally" and "knowingly" if he acts

22   purposefully and deliberately and not because of mistake or

23   accident, mere negligence, or other innocent reason.  That is,

24   the acts must be the product of the defendant's conscious

25   objective.

1          So now you've heard me use the word, the phrase,

2     "aiding and abetting," and I want to describe that to you now.

3          In addition to charging the defendant under the

4     federal law that makes it illegal to distribute narcotics,

5     Count One also charges the defendant under a federal law that

6     makes it a crime for anyone to aid and abet a federal offense,

7     including narcotics trafficking.

8          Under this aiding and abetting statute, it is not

9     necessary for the government to show that the defendant himself

10    physically committed the crime with which he is charged in

11    order for you to find him guilty of committing that crime.

12    Thus, even if you do not find beyond a reasonable doubt that

13    the defendant himself committed the substantive crime charged,

14    you may, under certain circumstances that I will describe,

15    still find the defendant guilty of the crime as an aider or

16    abettor.  Aiding and abetting means knowingly and intentionally

17    helping or assisting in the commission of a crime.

18         A person who aids or abets another to commit an

19    offense is just as guilty of that offense as if he committed it

20    himself.  Therefore, you may find the defendant guilty of a

21    substantive crime if you find that the government has proven

22    beyond a reasonable doubt that another person actually

23    committed the crime, and that the defendant aided and abetted

24    that person in the commission of the crime.

25         As you can see, the first requirement is that another

1    person has committed the crime charged.  Obviously, no one can

2    be convicted of aiding and abetting the criminal act of another

3    if no one has committed a crime.  If you do find that the

4    government has proven beyond a reasonable doubt that the crime

5    was committed, however, then you must consider whether the

6    defendant aided or abetted the commission of the crime.

7            In order to aid or abet another to commit a crime, it

8    is necessary that the government prove beyond a reasonable

9    doubt that the defendant knowingly and intentionally associated

10   himself in some way with the crime, and that he knowingly and

11   intentionally sought, by some act, to help make the crime

12   succeed.

13           The mere presence of the defendant where a crime is

14   being committed, even coupled with knowledge by the defendant

15   that a crime is being committed, or the mere acquiescence by

16   the defendant in the criminal conduct of others, even with

17   guilty knowledge, is not sufficient to establish aiding and

18   abetting.  An aider and abettor must have some interest in the

19   criminal venture.

20           To determine whether the defendant aided or abetted

21   the commission of the crime with which he is charged in Count

22   Four or Count Eight, ask yourself whether the government has

23   proven beyond a reasonable doubt:

24           (Pause)

25           I think there is a typo there.  I think.  Hold on one

F24dulb1                          Charge

1    second.

2              (Pause)

3              Strike the words "Four" or "Eight."

4              In any crime as to which the defendant is charged as

5    an aider or abettor, ask yourself the following questions:

6              Did he participate in the crime charged as something

7    he wished to bring about?  Did he associate himself with the

8    criminal venture knowingly and intentionally?

9              Did he seek by his actions to make the criminal

10   venture succeed?

11             If the answer to these questions is "yes," then the

12   defendant is an aider and abettor, and therefore guilty of the

13   offense.  If the answer to these questions is "no," then the

14   defendant is not an aider and abettor and is not guilty of the

15   offense as such.

16             So you understand that that reference to Count Four

17   and Eight, just take that out.  It shouldn't be there.

18             Anywhere that the defendant is charged as an aider and

19   abettor, you ask those questions.  You got that?  All right.

20             Let's go on to drug quantity for Count One.  And I

21   want to point out for you, as you're doing that, that if you

22   look at Count One on the verdict form, only if you find the

23   defendant guilty of Count One do you go to Question 1A, which

24   asks for you to determine quantity.  All right?

25             And it's quantity at a certain threshold.  You don't

1    have to calculate an exact amount, but it's got to either meet

2    that threshold or exceed that threshold.  All right?  But

3    beyond that threshold, if the defendant were found to have met

4    that threshold, where beyond that threshold it may be at the

5    end is not the question.  It's whether or not that threshold

6    has been met.  All right?  So let's go into this.

7         If, and only if, you find that the government has

8    proven beyond a reasonable doubt that the defendant is guilty

9    of the offense charged in Count One, then you are required to

10   determine whether or not the government has proven beyond a

11   reasonable doubt that the offense involved the quantity of the

12   particular narcotics alleged in Count One.

13        Specifically, you must determine whether the

14   government has proven beyond a reasonable doubt that the

15   defendant distributed or aided and abetted the distribution of

16   any of the following narcotics in the quantities specified:

17             Heroin in the amount totaling one kilogram or more.

18             Cocaine in amounts totaling five kilograms or more.

19             LSD in amounts totaling 10 grams or more.

20             Methamphetamine in amounts totaling 500 grams or more.

21        The government need not prove that the defendant was

22   specifically aware of, or could foresee, the types and

23   quantities of drugs he was distributing or helping others

24   distribute.  As long as the defendant knowingly or

25   intentionally distributed or aided and abetted the distribution

 1   of some amount of controlled substance, he is responsible for

 2   all the types and quantities of controlled substances

 3   distributed regardless of whether he knew or could foresee the

 4   types or quantities involved.

 5          The government also need not prove the purity of any

 6   of the drugs that were distributed.  Any mixture or substances

 7   containing a detectable amount of the drug is sufficient.

 8          Now, as I said, you are going to be provided with a

 9   verdict form that will have spaces on it for you to indicate

10   your determinations regarding these questions.  As will be

11   reflected on the form, you do not need to determine the precise

12   quantities of drugs involved in the offense in Count One.

13   Rather, you only need to decide whether the drugs included any

14   of the types of drugs I just described in the amounts that, in

15   total, exceed the threshold that I've just described.  You need

16   not find the alleged quantities are met in order to convict on

17   Count One, but your determination regarding drug type and

18   quantity, like your determination regarding the defendant's

19   guilt, must be unanimous and must be reached beyond a

20   reasonable doubt.

21          Now let's go into Count Two.

22          Count Two charges the defendant under a federal law

23   that specifically makes it a crime to distribute controlled

24   substances by means of the Internet, or to aid and abet such

25   activity.

1           In order to find the defendant guilty on this count,

2   you have to find that the government has proven beyond a

3   reasonable doubt the following elements:

4           First, that the defendant delivered or distributed a

5   controlled substance, or aided and abetted others in doing so;

6   two, that the delivery or distribution of controlled substances

7   in question was accomplished by means of the Internet; and,

8   three, that the defendant acted knowingly or intentionally.

9           The first element of Count Two requires that you find

10  that the defendant delivered or distributed a controlled

11  substance, or that he aided and abetted others in doing so.

12  Any of these alternatives is sufficient to satisfy this

13  element.

14          I have already defined what it means to "distribute"

15  or "deliver" controlled substances in explaining Count One.

16  Essentially, these terms refer to transferring or dealing out

17  controlled substances to others.

18          I have also defined the concept of aiding and abetting

19  in Count One, and you should apply those same definitions here.

20          Let's talk about use of the Internet.

21          The second element of Count Two requires that you find

22  that the controlled substances at issue were delivered or

23  distributed by means of the Internet.  This element is

24  satisfied if you find that the government has proven beyond a

25  reasonable doubt that the defendant served as a intermediary or

F24dulb1                    Charge

1    middleman who caused the Internet to be used to bring together

2    buyers and sellers engaged in distributing controlled

3    substances in a manner not authorized by law.

4           However, it is not sufficient to merely place on the

5    Internet material advocating the use of a controlled substance,

6    or even which includes pricing information, if unaccompanied by

7    an attempt to propose or facilitate an actual transaction

8    involving a controlled substance.

9           Lastly, in order to find the defendant guilty on Count

10   Two, you must find that he acted "knowingly" or

11   "intentionally."  I have already defined those terms for you,

12   and you should apply those definitions here.

13          As with Count One, if you find the defendant guilty on

14   Count Two, you have to go on to determine the quantities and

15   types of drugs, and I described that for you in connection with

16   Count One and you should do the same thing with respect to

17   Count Two.

18          Let's go on to page 47, which is Count Three.

19          This charges the defendant with conspiring with others

20   to violate the narcotics laws.

21          In order to find the defendant guilty of this count,

22   you must find that the government has proven the following

23   elements beyond a reasonable doubt:

24          First, the government must prove beyond a reasonable

25   doubt that a conspiracy to violate the narcotics laws

1    existed -- that is, that two or more persons had an agreement

2    or understanding to achieve certain unlawful goals, called the

3    "objects" of the conspiracy, which I will describe for you in a

4    moment.  Every conspiracy must have one or more objects or

5    goals.  In other words, a conspiracy must be aimed at doing

6    something -- at accomplishing something.

7          Therefore, the question is -- the first question is,

8    Did the conspiracy alleged in Count Three exist?  Was there an

9    agreement?

10          Second, the government must prove beyond a reasonable

11    doubt that the defendant intentionally and knowingly was a

12    member of this conspiracy -- that is, that he knowingly

13    participated in the conspiracy to violate the narcotics laws,

14    with knowledge of its objects and an intent to further those

15    objects.

16          Let me now discuss the elements of the conspiracy in

17    greater detail.

18          I also want to note that Count Three -- apart from

19    Count Three, which is a conspiracy count, Counts Five, Six, and

20    Seven, relating to the false identification documents, computer

21    hacking and money laundering, are also conspiracy counts, so

22    some of the same instructions are going to apply there as well.

23    And you'll hear me refer back to some of these instructions as

24    a result.

25          All right.  So let's talk about existence of a

1    conspiracy.

2            How do you determine whether a conspiracy "existed"?

3    Simply defined, a conspiracy is an agreement by two or more

4    people to violate the law.  A conspiracy has sometimes been

5    called a partnership for criminal purposes in which each

6    partner becomes the agent of every other partner.

7            To establish the existence of a conspiracy, however,

8    the government is not required to show that two or more people

9    sat around a table and entered into a formal contract.  From

10   its very nature, a conspiracy is almost always characterized by

11   secrecy and concealment.  It is sufficient if two or more

12   persons, in any manner, whether they say so directly or not,

13   come to a common understanding to violate the law.  Express

14   language or specific words are not required to indicate

15   agreement or membership in a conspiracy.

16           It is not necessary that a conspiracy actually succeed

17   in its purpose for you to conclude that it existed.  If a

18   conspiracy exists, even if it should fail in its purpose, it is

19   still a crime, because it is the agreement itself -- the

20   agreement with others to commit a crime -- that the law forbids

21   and defines as a crime.

22           In determining whether there has been an unlawful

23   agreement, you may judge the acts and conduct of the alleged

24   members of the conspiracy that are done to carry out an

25   apparent criminal purpose.  The phrase "Actions speak louder

1    than words" is applicable here.

2            If, upon consideration of all the evidence, direct and

3    circumstantial, you find beyond a reasonable doubt that the

4    minds of two or more of the conspirators met -- we sometimes

5    call this a "meeting of the minds" -- that is, that they

6    agreed, as I have explained a conspiratorial agreement to you,

7    to work together in furtherance of the unlawful scheme alleged

8    in the Indictment, then proof of the existence of the

9    conspiracy has been established.

10           Let's talk about the "objects" of the conspiracy.  As

11   I said, in order to find the defendant guilty of the conspiracy

12   charged in Count Three, which is a narcotics conspiracy, you

13   must find that the government has proven beyond a reasonable

14   doubt that the conspiracy had certain "objects," or goals that

15   the conspirators were seeking to achieve.

16           There are three objects alleged as part of the

17   conspiracy charged in Count Three -- three violations of the

18   narcotics laws that the conspirators allegedly agreed to

19   commit.  You need not find that the defendant agreed to

20   accomplish each and every one of the objects.  An agreement to

21   accomplish any one of these three objects is sufficient.

22   However, you must all agree beyond a reasonable doubt on at

23   least one specific object that the defendant agreed with others

24   to try to accomplish.  In other words, you must be unanimous as

25   to the particular object of the conspiracy before you find that

F24dulb1                        Charge

1    the element has been satisfied.

2            As to the first object, Count Three alleges that the

3    defendant agreed with others to distribute controlled

4    substances.  I have already explained the elements of this

5    crime in discussing Count One.  What is being charged here in

6    Count Three is that the defendant agreed with others to commit

7    this crime.

8            As to the second object, Count Three alleges that the

9    defendant agreed with others to deliver or distribute

10   controlled substances by means of the Internet in a manner not

11   authorized by law, or to aid and abet such activity.  I have

12   already explained the elements of this crime in discussing

13   Count Two.  Again, what is being charged here in Count Three is

14   that the defendant agreed with others to commit the crime.

15           As to the third object, Count Three alleges that the

16   defendant agreed with others to use a communication facility in

17   committing, causing, or facilitating the commission of acts in

18   violation of the narcotics laws.  That crime is not separately

19   charged elsewhere in the Indictment, so let me go over its

20   elements now.

21           To show that the conspiracy alleged in Count Three had

22   this crime as an object, the government must prove the

23   following beyond a reasonable doubt:

24           First, the government must prove beyond a reasonable

25   doubt that the defendant agreed with others to use a

F24dulb1                          Charge

1    communication facility.  A communication facility is simply any

2    device or system that can be used to transmit communications,

3    and includes the Internet.

4          The government must prove beyond a reasonable doubt

5    also that the defendant agreed with others to use the

6    communication facility in the process of committing, causing,

7    or facilitating the commission of a narcotics felony, including

8    the distribution of controlled substances or the importation of

9    controlled substances into the United States.

10         Third, the government must prove beyond a reasonable

11   doubt that the defendant acted knowingly or intentionally, and

12   I've already defined those terms for you.

13         If you find the government has proven beyond a

14   reasonable doubt that a conspiracy to commit one or more of the

15   objects alleged in Count Three of the Indictment existed, you

16   must then determine whether the defendant intentionally and

17   knowingly was a member of that conspiracy.  That is, did he

18   participate in the conspiracy with knowledge of its unlawful

19   purpose and with the specific intention of furthering the

20   objective of that conspiracy?

21         As I explained earlier, an act is done intentionally

22   and knowingly if it is done purposefully and deliberately and

23   not because of mistake or accident, mere negligence, or other

24   innocent reason.  That is, the acts must be the product of the

25   defendant's conscious objective.

1           If you find that the government has proven beyond a

2      reasonable doubt that a conspiracy existed (that is, the

3      element we discussed a few moment ago), and that the defendant

4      participated intentionally and knowingly in it, the extent of

5      the defendant's participation has no bearing on whether or not

6      he is guilty.  It does not matter whether a defendant's role in

7      the conspiracy may have been more limited than or different in

8      nature from the roles of other co-conspirators.  All that

9      matters is that he intentionally and knowingly participated in

10     the conspiracy, aware of its illegal objectives, and desiring

11     to further those objectives.

12          Also, the defendant's membership in the charged

13     conspiracy can be established only by evidence of his own

14     actions and words and not by others who might be members of the

15     charged conspiracy.

16          Once a person joins a conspiracy, that person remains

17     a member unless and until he withdraws from it completely.  In

18     order to withdraw from the conspiracy, a conspirator must show

19     that he took some affirmative act to disavow or defeat the

20     purpose of the conspiracy.  He can do so either by informing

21     law enforcement of the criminal activities of the conspiracy or

22     by communicating his abandonment of the conspiracy in a manner

23     reasonably calculated to reach his co-conspirators.  Merely

24     ceasing to play a part in the conspiracy is not sufficient by

25     itself to establish withdrawal from the conspiracy.  Moreover,

F24dulb1                          Charge

1    if, after initially attempting to withdraw, a conspirator takes

2    any subsequent acts to promote the conspiracy or receives any

3    additional benefits from the conspiracy, he cannot be

4    considered to have withdrawn from the conspiracy.  The

5    defendant has the burden of proving that he withdrew from the

6    conspiracy by a preponderance of the evidence.  To prove

7    something by a preponderance of the evidence means to prove

8    that it is more likely true than not true.

9           If you find that the defendant has at some point

10   withdrawn from the conspiracy, he is not responsible for the

11   acts of his co-conspirators following his withdrawal.  However,

12   the defendant still would have been part of the conspiracy

13   until the point of withdrawal.  In other words, even if you

14   conclude that the defendant withdrew from the conspiracy at a

15   particular time, he would remain responsible for the actions of

16   the conspiracy up until that time.

17          Now, as I just said, the extent of the defendant's

18   participation in the conspiracy charged in the Indictment has

19   no bearing on the issue of the defendant's guilt.  He need not

20   have joined the conspiracy at the outset.  He need not have

21   been a part of the conspiracy when it ended.  But he must, at

22   some point during its progress, have participated in the

23   conspiracy with knowledge as to its general scope and purpose.

24          If he did participate with such knowledge at any time

25   while it was in progress, he may still be held responsible for

F24dulb1                          Charge

1    all that was done before or after he participated in addition

2    to all that was done during the conspiracy's existence while he

3    was a member, to the extent the conspiratorial activity of

4    others was reasonably foreseeable to him.  Indeed, each member

5    of a conspiracy may perform separate and distinct acts and may

6    perform them at different times.  Some conspirators play major

7    roles, while others play minor roles in the scheme.  An equal

8    role is not what the law requires.  In fact, even a single act

9    may be sufficient to draw the defendant within the ambit of the

10   conspiracy.

11                (Continued on next page)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

F24gulb2                    Charge

1            THE COURT:  I want to caution you, however, that the

2     defendant's mere presence at the scene of an alleged crime does

3     not, by itself, make him a member of a conspiracy.  Similarly,

4     mere association with one or more members of the conspiracy,

5     even when coupled with knowledge that such other person is

6     acting unlawfully, does not automatically make the defendant a

7     member.  A person may know, be related to, or be friendly with,

8     or communicate with, a conspirator, without being a conspirator

9     himself.  Mere similarity of conduct or the fact that the

10    defendant may have assembled together with others, communicated

11    with others, and discussed common aims and interests does not

12    necessarily establish proof of the existence of a conspiracy.

13            I also want to caution you that mere knowledge or

14    acquiescence, without participation, in the unlawful plan is

15    not sufficient.  Moreover, merely taking acts that happen to

16    further the purposes or objectives of the conspiracy, without

17    knowledge or intent, is not sufficient to make someone a member

18    of a conspiracy.  More is required under the law.  What is

19    necessary is that the defendant participated with knowledge of

20    at least some of the purposes or objectives of the conspiracy

21    and with the intention of aiding in the accomplishment of those

22    unusual ends.

23            In sum, you must decide whether the government has

24    proven beyond a reasonable doubt that the defendant knew the

25    unlawful character of the conspiracy and intentionally engaged,

F24gulb2                          Charge

1    advised, or assisted in the conspiracy for the purpose of

2    furthering the illegal undertaking.  If so, the defendant

3    became a knowing and willing participant in the unlawful

4    agreement – that is to say, a coconspirator.

5         I now want to talk with you about liability for acts

6    and statements of coconspirators.  When people enter into a

7    conspiracy to accomplish an unlawful end, each and every member

8    becomes an agent for the other conspirators in carrying out the

9    conspiracy.  Accordingly, the reasonably foreseeable acts,

10   declarations, statements and omissions of any member of the

11   conspiracy and in furtherance of the common purpose of the

12   conspiracy are deemed under the law to be the acts of all of

13   the members and all of the members are responsible for such

14   acts, declarations, statements and omissions.

15        If you find, beyond a reasonable doubt, that the

16   defendant was a member of the conspiracy charged in the

17   indictment, then any acts done or statements made in

18   furtherance of the conspiracy by persons also found by you to

19   have been members of that conspiracy may be considered against

20   the defendant.  This is so even if such acts were done and

21   statements were made in the defendant's absence and without his

22   knowledge.

23        However, before you may consider the statements or

24   acts of a coconspirator in deciding the issue of the

25   defendant's guilt, you must first determine that the acts and

 1   statements were made during the existence and in furtherance of

 2   the unlawful scheme.  If the acts were done or the statements

 3   made by someone whom you do not find to have been a member of

 4   the charged conspiracy or if they were not done or said in

 5   furtherance of the conspiracy, they may not be considered by

 6   you as evidence against the defendant.

 7            Count Three in the indictment contains a section

 8   captured "Overt Acts."  This section provides several examples

 9   of conduct allegedly undertaken by the defendant to further or

10   promote the illegal objectives of the conspiracy charged in

11   Count Three.  However, these alleged acts are not elements of

12   the offense, and it is not necessary for the government to

13   prove that any of the acts alleged in this section of the

14   indictment took place.

15            The same is true for the other conspiracy charges in

16   the indictment.  None of the conspiracy charges require you to

17   find any specific overt acts were committed in furtherance of

18   the conspiracy.  You need only find that a conspiracy of the

19   nature described existed and that the defendant intentionally

20   and knowingly became a member.

21            As with Counts One and Two, if you find the defendant

22   guilty on Count Three, there are going to be spaces on the

23   verdict form for you to fill in related to drug and quantity,

24   and you should make your findings and fill those in.

25            In the case of a conspiracy, as we have discussed, a

1   defendant is only liable for the acts of his coconspirators

2   that are reasonably foreseeable to him.  So as to Count Three,

3   the defendant is accountable for the types and quantities of

4   controlled substances distributed by his coconspirators only if

5   those types and quantities were known or reasonably foreseeable

6   to the defendant and were within the scope of the criminal

7   activity that the defendant jointly undertook.  Again, you'll

8   be provided with a verdict form that you in fact already have

9   gotten and it will have those blanks.

10          Let's talk about Count Four.  Are you guys doing all

11  right?  Are you okay?  We're getting there.  You can see that

12  we are not too far, right, because the conspiracy counts at the

13  end refer back a lot to the earlier conspiracy pieces.

14          Let me move on to Count Four of the indictment.  Count

15  Four charges the defendant with engaging in a continuing

16  criminal enterprise.  To convict the defendant on this count,

17  the government must prove beyond reasonable doubt that the

18  defendant committed one of the federal narcotics felonies I

19  will describe for you in a moment, as part of a continuing

20  series of federal narcotics offenses -- let me read that

21  sentence over again after I've had a sip of something liquid.

22          To convict the defendant on this count, the government

23  must prove beyond a reasonable doubt that the defendant

24  committed one of the federal narcotics felonies I will describe

25  for you in a moment, as part of a continuing series of federal

1    narcotics offenses undertaken with five or more people whom he

2    organized, supervised, or managed, and from which he received

3    substantial profit.  In essence, Count Four charges that the

4    defendant engaged in a business of drug trafficking on a

5    continuing, serious basis, and that he oversaw others and made

6    substantial money in the process.

7          To meet its burden of proof on this offense, the

8    government must prove beyond a reasonable doubt each of the

9    following elements:

10         First, the government must prove that the defendant

11   committed a federal narcotics felony, specifically, one of the

12   narcotics offenses alleged within Counts One through Three,

13   including distributing or aiding and abetting the distribution

14   of controlled substances, distributing or aiding and abetting

15   the distribution of controlled substances by means of the

16   Internet, conspiring to distribute controlled substances, or

17   using a communication facility in connection with the

18   distribution of controlled substances;

19         Second, the government must prove that this offense

20   was part of a series of three or more violations of the federal

21   narcotics laws committed by the defendant;

22         Third, the government must prove that the defendant

23   committed the offenses in this series of violations in concert

24   with five or more persons;

25         Fourth, the government must prove that the defendant

1    acted as an organizer, supervisor, or manager of these five or

2    more persons; and

3              Fifth, and finally, the government must prove that the

4    defendant obtained substantial income or resources from the

5    series of violations of the narcotics laws.

6              The first element the government must prove as to

7    Count Four is that the defendant committed a felony violation

8    of the federal narcotics laws.  Specifically, you must find the

9    defendant guilty of one of the charges contained within Counts

10   One through Three of the indictment, including any of the

11   crimes alleged as the objects of the conspiracy charged in

12   Count Three.

13             These offenses include:

14             Distributing or aiding and abetting the distribution

15   of controlled substances, which I defined for you in discussing

16   Count One;

17             Distributing or aiding and abetting the distribution

18   of controlled substances by means of the Internet, which I

19   defined for you in discussing Count Two;

20             Conspiring to distribute controlled substances, which

21   I defined for you in discussing Count Three; or

22             Using a communication facility in committing or in

23   causing or facilitating the commission of acts in violation of

24   the narcotics laws, which I defined for you in discussing the

25   objects of Count Three.

1          Unless you find the government has proved beyond a

2   reasonable doubt that the defendant committed at least one of

3   these offenses, you cannot find the defendant guilty under the

4   continuing criminal enterprise law charged in Count Four.

5          The second element that the government must prove as

6   to Count Four, as you heard me say, is that the defendant

7   committed a federal narcotics felony as part of a continuing

8   series of violations of the federal narcotics laws.  A

9   continuing series of violations is three or more violations of

10  the federal narcotics laws committed over a definite period of

11  time and related to each other in some way as distinguished

12  from isolated or disconnected acts.

13         These violations do not have to be alleged as separate

14  counts in the indictment.  The indictment need not specify each

15  violation that constitutes the series.  Rather, any particular

16  occasion when the defendant distributed certain illegal drugs

17  or aided and abetted the distribution of such illegal drugs

18  could qualify as part of a continuing series of narcotics

19  violations committed by the defendant.  Likewise, any

20  particular occasion where the defendant used a communication

21  facility in committing, causing, or facilitating the commission

22  of acts in violation of the narcotics laws could qualify as

23  part of a continuing series of narcotics violations.

24         However, you must unanimously agree on which, if any,

25  three or more felony violations committed by the defendant

constituted a continuing series of narcotics violations in

order to find the defendant guilty on Count Four.

The third element the government must prove as to

Count Four is that the defendant committed a continuing series

of violations in concert with five or more persons.  These

persons do not have to be named in the indictment.  They could

be others who you find, beyond a reasonable doubt, were persons

with whom the defendant committed the violations.

It is not necessary that you identify each of these

persons by their first and last names, but they must be, in

fact, five separate persons.

You do not have to find that five or more persons

acted together at the same time, or that the defendant

personally dealt with them together.  As long as there were at

least five persons who the defendant somehow committed the

continuing series of violations along with, that is sufficient.

The fourth element the government must prove beyond a

reasonable doubt is that the defendant occupied the position of

organizer, supervisor, or manager with respect to the five or

more persons with whom he acted in concert.

In considering whether the defendant occupied such a

position, you should give the words "organizer, supervisor or

manager" their ordinary everyday meaning.

The government need not prove that same type of

superior-subordinate relationship existed between the defendant

F24gulb2                    Charge

1    and each of the people he allegedly organized, supervised or

2    managed.   Nor is any particular type of organizational,

3    supervisory, or managerial role required.  For example, the

4    defendant is not required to have had direct, personal contact

5    with each of the persons he organized, supervised, or managed.

6    Nor are those persons required to have been salaried employees

7    of the defendant, or otherwise akin to paid workers.  It is

8    sufficient, for instance, if the defendant arranged the

9    activities of others into one essentially orderly operation or

10   enterprise, even if the persons were otherwise independent of

11   the defendant.  The government meets its burden on this element

12   if it proves beyond a reasonable doubt that the defendant

13   exercised organizational or supervisory or managerial

14   responsibilities over five or more persons with whom he acted

15   in concert.

16        Merely selling a controlled substance, without more,

17   however, does not make a defendant an organizer, supervisor, or

18   manager of the person or persons who purchased the substance

19   from him.

20        The final element the government must prove as to

21   Count Four is that the defendant derived substantial income or

22   resources from the continuing series of the federal narcotics

23   violations.  The statute does not prescribe the minimum amount

24   of money required to constitute substantial income, but the

25   statute clearly intends to exclude trivial amounts derived from

F24gulb2                    Charge

1    occasional narcotics sales.

2          Let me turn to Count Five, which charges the defendant

3    with conspiring with others to commit or aid and abet computer

4    hacking.

5          In order to find the defendant guilty of this count,

6    you must find that the government has proven the following

7    elements beyond a reasonable doubt:

8          First, that there was an agreement or understanding

9    between two or more persons to commit or aid and abet computer

10   hacking; and

11         Second, that the defendant intentionally and knowingly

12   participated as a member of the conspiracy.

13         The alleged object of the conspiracy in Count Five is

14   to commit or aid and abet computer hacking.  In order to

15   establish that a conspiracy with this object existed, the

16   government must prove the following:

17         First, the government must prove that two or more

18   people had an agreement to intentionally access computers

19   without authorization and thereby obtain information from the

20   computers, or to aid and abet others in doing so.  Accessing

21   computers without organization and thereby obtaining

22   information from the computers refers to what is commonly

23   called "computer hacking."  It means accessing a computer, and

24   viewing or copying data on the computer, without the

25   authorization of the person to whom the computer or data

F24gulb2                        Charge

1    belongs.  I've already instructed you on the meaning of

2    "intentionally."  I've already instructed you on the concept of

3    aiding and abetting, and you should apply those instructions

4    here.

5            Second, the government must prove that the computers

6    the conspirators agreed to access without authorization, or to

7    help others access without authorization, were "protected

8    computers."  The term "protected computer" refers to any

9    computer used in, or affecting interstate or foreign commerce

10   or communication, which would include any computer connected to

11   the Internet.

12           Third, the government must prove that agreeing to

13   access computers without authorization, or to help others to do

14   so, the conspirators were acting for the purpose of commercial

15   advantage or private financial gain, or in furtherance of

16   criminal or tortious acts in violation of the laws of the

17   United States or of any State.  "Commercial advantage" is a

18   profit or gain in money or property obtained through business

19   activity, and "private financial gain" is profit or gain in

20   money or property specifically for a particular person or

21   group.  "Criminal or tortious acts in violation of the laws of

22   the United States or of any State" are any acts that

23   constitutes either crimes or wrongful acts for which private

24   damages can be obtained in a civil lawsuit under federal law or

25   the law of any state.  In short, you must find that the

F24gulb2                     Charge

1    objective of the computer hacking at issue must have been

2    either to obtain some kind of profit or to commit a crime or

3    actionable wrong against another person.

4         If you find beyond a reasonable doubt that a

5    conspiracy to commit or aid and abet computer hacking existed

6    as alleged in Count Five, you must then determine whether the

7    defendant intentionally and knowingly participated as a member

8    of that conspiracy.

9         I have already instructed you as a general matter on

10   what the government is required to show to prove membership in

11   the conspiracy, and you should apply those instructions here.

12        Let's turn to Count Six, which charges the defendant

13   with conspiring with others to traffic in fraudulent

14   identification documents.

15        In order to find the defendant guilty of this count,

16   you must find that the government has proven the following

17   elements beyond a reasonable doubt:

18        First, that there was an agreement between two or more

19   persons to traffic in fraudulent identification documents; and.

20        Second, that the defendant intentionally and knowingly

21   participated as a member in that conspiracy.

22        The alleged object, or goal, of the conspiracy charged

23   in Count Six is to traffic in fraudulent identification

24   documents.  In order to establish that a conspiracy with this

25   object existed, the government must prove the following beyond

1    a reasonable doubt:

2          First, the government must prove that two or more

3    people had an agreement to knowingly transfer false

4    identification documents.  A "false identification document"

5    means a document of a type intended or commonly accepted for

6    purposes of identification, such as a driver's license or a

7    passport, that appears to be issued by the authority of a

8    governmental entity, but was not actually issued by a

9    governmental entity.  A "false identification document" can

10   also include an identification document that was actually

11   issued by a governmental entity but was subsequently altered

12   for the purposes of deceit.

13         To "transfer" a false identification document means

14   simply to turn over possession or control of it to someone

15   else, whether as a result of selling it or otherwise.  I have

16   already instructed you on the meaning of "knowingly," and you

17   should apply that instruction here.

18         Second, the government must prove that the

19   conspirators knew that the identification documents were stolen

20   or produced without lawful authority.  The term "lawful

21   authority" means the authority to manufacture, prepare or issue

22   identification documents by statute or regulation, or by

23   contract with a governmental entity, which has such authority.

24         Third, the government must prove that the transfer of

25   the false identification documents was in or affecting

F24gulb2                    Charge

interstate commerce.  Interstate commerce means the movement of

goods, services, money and individuals between any two states

or between the United States and a foreign country.  The

government may satisfy this element by proving beyond a

reasonable doubt that the transfers affect interstate commerce

in any way, no matter how minimal.  Transfer of the documents

through interstate or international shipments in the mail is

sufficient.

        If you find beyond a reasonable doubt that a

conspiracy to traffic in fraudulent identification documents

existed as alleged in Count Six, you must then determine

whether the government has proven beyond a reasonable doubt

that the defendant intentionally and knowingly participated as

a member of that conspiracy.

        Again, I have already instructed you as a general

matter on what the government is required to show to prove

membership in a conspiracy, and you should apply those same

instructions here.

        Finally, let me move on to the last count, which is

Count Seven, which charges the defendant with conspiring to

commit money laundering.

        In order to find the defendant guilty of this count,

you must find that the government has proven the following

elements beyond a reasonable doubt:

        First, that an agreement between two or more persons

existed with the money laundering objects alleged in Count

Seven, which I will discuss shortly; and.

Second, that the defendant intentionally and knowingly

participated as a member of the conspiracy.

So there are two objects of the money laundering

conspiracy charged in Count Seven.  Count Seven alleges that

one object of the conspiracy was to conduct financial

transactions with intent to promote specified, unlawful

activity, specifically, narcotics trafficking, computer

hacking, and identification document fraud.  Count Seven

alleges that a second object of the conspiracy was to conduct

financial transactions knowing that the transactions were

designed in whole or in part to conceal or disguise the

proceeds of that unlawful activity.

Again, you need not find that the defendant agreed to

accomplish both of these objects.  An agreement to accomplish

either one is sufficient.  However, you must all agree on the

specific object or objects the defendant agreed with others to

try to accomplish.

In order to establish that a money laundering

conspiracy with either of these objects existed, the government

must prove the following beyond a reasonable doubt:

First, the government must prove that two or more

persons entered into an agreement to conduct "financial

transactions," a term that I will define for you in a moment;

F24gulb2                    Charge

1          Second, the government must prove that the financial

2     transactions at issue involved the proceeds of specified

3     unlawful activity, namely narcotics trafficking, computer

4     hacking, or identification document fraud;

5          Third, the government must prove that the conspirators

6     knew that the financial transactions involved the proceeds of

7     some form of unlawful activity; and

8          Fourth, the government must prove that the

9     conspirators agreed to conduct the financial transactions with

10    one or both of the following purposes:  Either they intended to

11    promote the carrying on of specified unlawful activity, namely

12    narcotics trafficking, computer hacking, or identification

13    document fraud; or they knew that the transactions were

14    designed to conceal or disguise the nature, location, source,

15    ownership, or control of the proceeds of these crimes.

16         The first element the government must prove to

17    establish the existence of a money laundering conspiracy is

18    that two or more persons agreed to conduct financial

19    transactions.  The term "financial transaction" includes any

20    transaction which in any way or degree affects interstate or

21    foreign commerce and involves the movement of funds by wire or

22    other means.  The term "funds" includes any currency, money, or

23    other medium of exchange that can be used to pay for goods and

24    services.

25         I have already defined the concept of interstate

1    commerce for you.  Again, in determining whether the

2    transactions at issue affected interstate commerce or foreign

3    commerce, the affect on interstate or foreign commerce can be

4    minimal.  Any movement of funds across state lines or national

5    borders will satisfy this element.

6          The second element the government must prove to

7    establish the existence of a money laundering conspiracy is

8    that the agreed-upon financial transactions involved the

9    proceeds of specified unlawful activity, namely narcotics

10   trafficking, computer hacking, or identification document

11   fraud.

12         The term "proceeds" means any property, or any

13   interest in property, that someone acquires or retains as

14   profits resulting from the commission of the specified unlawful

15   activity.

16         The term "specified unlawful activity" means any one

17   of a variety of offenses defined by the statute.  In this case,

18   the government has alleged that the funds in question were the

19   proceeds of drug trafficking, computer hacking, and

20   identification document fraud.  I instruct you that, as a

21   matter of law, these crimes all fall within the definition of

22   "specified unlawful activity."  However, it is for you to

23   determine whether the funds at issue were the proceeds of any

24   of these crimes.  You must unanimously find at least one of

25   these crimes to have been the source of the funds to satisfy

1    this element.

2         The third element the government must prove beyond a

3    reasonable doubt to establish the existence of a money

4    laundering conspiracy is that the members of the conspiracy

5    knew that the financial transactions at issue involved the

6    proceeds of some form of unlawful activity.  The government

7    does not have to prove that the conspirators specifically knew

8    that the property involved in the transaction represented the

9    proceeds of drug trafficking, for example, as opposed to any

10   other specific offense.  The government only has to prove that

11   the individuals agreeing to conduct the financial transactions

12   knew that the transactions involved the proceeds of some

13   illegal activity that was a felony.

14         Keep in mind that it is not necessary for all

15   conspirators to believe that the proceeds came from the same

16   unlawful activity; it is sufficient that each conspirator

17   believe that the proceeds came from some unlawful activity.

18         Finally, the fourth element that the government must

19   prove beyond a reasonable doubt to establish the existence of a

20   money laundering conspiracy concerns the purpose of the

21   transactions conducted as part of the conspiracy.  It is here

22   that the two objects of the conspiracy charged in Count Seven

23   differ.

24         As to the first object, the government must prove

25   beyond a reasonable doubt that the conspirators agreed to

F24gulb2                          Charge

1   conduct financial transactions with the intent to promote the

2   carrying on of drug trafficking, computer hacking, or

3   identification document fraud.

4          As to the second object, the government must prove

5   beyond a reasonable doubt that the conspirators agreed to

6   conduct financial transactions with knowledge that the

7   transactions were designed to conceal or disguise the nature,

8   location, source, ownership, or control of the proceeds of drug

9   trafficking, computer hacking, or identification document

10  fraud.

11         As I've previously instructed, to act intentionally or

12  knowingly means to act purposefully and deliberately and not

13  because of mistake or accident, mere negligence or other

14  innocent reason.  That is, the acts must be the product of the

15  defendant's conscious objective.

16         The government is not required to prove both alleged

17  objects of the conspiracy; either is sufficient standing alone.

18  So if you find that the government has proven beyond a

19  reasonable doubt defendant agreed to act with the intention of

20  promoting the carrying on of drug trafficking, computer

21  hacking, or identification fraud, or with the knowledge that

22  the financial transactions were designed to conceal or disguise

23  the nature, location, source, ownership, or control of proceeds

24  of these crimes, this element is satisfied.

25         If you find that a conspiracy to commit money

laundering as I've just described to you existed, then you must

determine whether the government has shown – and you have to do

this beyond a reasonable doubt – that the defendant

intentionally and knowingly became a member of that conspiracy.

I have already instructed you as a general matter on

what the government is required to show in this regard, and you

should apply those instructions here.

The indictment alleges that certain conduct occurred

on or about various dates or during various time periods.  It

is not necessary, however, for the government to prove that any

conduct alleged occurred exactly when the indictment alleges.

As long as the conduct occurred around any dates or within any

time periods the indictment alleges it occurred, that is

sufficient.

In addition to all the elements I have described for

you with respect to Counts One through Seven, you must also

decide whether any part of the offense reached within the

Southern District of New York.  The Southern District of New

York includes only the following counties:  Manhattan, the

Bronx, Westchester, Dutchess, Putnam, Rockland, Orange, and

Sullivan.  This is called "venue."  Venue means place or

location.

Venue must be examined separately for each count.

Venue on one count does not establish venue for another count.

The government need not prove that any crime was

F24gulb2                    Charge

1    completed in this district or that the defendant or any of his

2    coconspirators was physically present here.  Rather, venue is

3    proper in this district if the defendant, or anyone whose

4    conduct the defendant aided or abetted, or, for the conspiracy

5    counts, any of the defendant's or his coconspirators, caused

6    any event to occur in this district in furtherance of the

7    offense.

8             The defendant need not have specifically intended to

9    cause something to happen in this district, or known that he

10   was causing something to happen here.  As long as it was

11   reasonably foreseeable to the defendant that his conduct (or

12   the conduct of anyone whom he aided or abetted or conspired

13   with) would cause something to happen here in the Southern

14   District in furtherance of the crime, that is sufficient.

15            Among other things, venue can be established if the

16   defendant or his coconspirators caused any communications to be

17   transmitted to or from this district that were in furtherance

18   of the offense.  Such communications can include the

19   transmission of the contents of a website to the Southern

20   District of New York, where the operation of the website was in

21   furtherance of the offense and where it was reasonably

22   foreseeable to the defendant that the website could be accessed

23   by someone in the Southern District of New York.

24            On this issue of venue – and this issue alone – the

25   government need not prove venue beyond a reasonable doubt, but

F24gulb2                    Charge

1   only has to prove venue by a mere preponderance of the

2   evidence.  A "preponderance of the evidence" means more likely

3   than not.  Thus, the government has satisfied its burden of

4   proof as to venue if you conclude that it is more likely than

5   not that some act or communication in furtherance of each

6   alleged offense occurred in this district.  If, on the other

7   hand, you find that the government has failed to prove the

8   venue requirement as to a particular offense, then you must

9   acquit the defendant of that offense, even if all of the other

10  elements have been met.

11        Your verdict must be based solely on the evidence

12  developed at trial or the lack of evidence.  It would be

13  improper for you to consider, in reaching your decision as to

14  whether the government has sustained its burden of proof, any

15  personal feelings that you may have about the defendant's race,

16  religion, national origin, sex, age, or political views.

17  Similarly, it would be improper for you to consider any

18  personal feelings you may have about the race, religion,

19  national origin, sex, age, or political views of any other

20  witness or anyone else involved in the case.  Both the

21  defendant and the government are entitled to a trial free from

22  prejudice and our judicial cannot work unless you reach a

23  verdict through a fair and impartial consideration of the

24  evidence.

25        Under your oath as jurors you are not to be swayed by

F24gulb2                    Charge

simply.  You are to be guided solely by the evidence in this

case, and the crucial question that you must ask yourselves as

you sift through the evidence is:  Has the government proven

the guilt of the defendant beyond a reasonable doubt with

respect to each of the elements of each of the offenses

charged?

        It is for you to alone to decide whether the

government has proven beyond a reasonable doubt that the

defendant is guilty of the crime for which he is charged solely

on the basis of the evidence or lack of evidence and subject to

the law as I have charged you.  It must be clear to you that

once you let fear, prejudice, bias, or sympathy interfere with

your thinking, there is a risk that you will not arrive at a

true and just verdict.

        If the government has failed to establish the

defendant's guilt beyond a reasonable doubt, you must acquit

him.  But on the other hand, if you should find that the

government has met its burden of proving the defendant's guilt

beyond a reasonable doubt, you should not hesitate because of

sympathy or any other reason to render a verdict of guilty.

        The question of possible punishment of the defendant

is of no concern to you, ladies and gentlemen of the jury, in

any sense, and it should not enter into your deliberation in

any way.  The duty of imposing sentence rests exclusively upon

the Court.

1          Your function is to weigh the evidence in the case and

2     to determine whether or not the government has proven that the

3     defendant is guilty beyond a reasonable doubt solely upon the

4     basis of such evidence.

5          Now, some of you took notes during the course of the

6     trial, and you shouldn't show your notes to anybody else or

7     discuss them with anybody else.  They are not evidence.  They

8     were something which you may have done to assist you yourself

9     in terms of remembering things, but the fact that you may or

10    may not have written something doesn't mean that you can push

11    it across the table and say here, see, it's evidence, because I

12    wrote it down.  Your notes should be retained just for your own

13    use.  The fact that a particular juror has taken notes entitles

14    that juror's views no greater weight than those of any other

15    juror.

16         Finally, your notes should not substitute for your

17    recollection of the evidence in this case.  If you have any

18    doubt as to the testimony, then you can ask to have it read

19    back, and we'll come back to that in just one minute.

20         Ladies and gentlemen, your function in just a moment

21    is to go into the jury room and for the panel of 12 to begin

22    talking to each other about this case.  Your function is to

23    weigh the evidence in this case now and to determine the guilt

24    or the nonguilt of the defendant with respect to each of the

25    counts, and you should consider them one by one.

1           You are about to begin your deliberations, and as I
2    told you earlier, many - but not all - of the exhibits will be
3    sent with you into the jury room.  We're not going to send, for
4    instance, into the jury room the hard drives that you saw
5    during the trial.

6           If you want to see any of the physical evidence for
7    any reason, then you can ask through a note to have that
8    physical evidence shown to you, and we'll decide what the best
9    manner is:  Whether to have you folks come out and we'll show
10   it to you again or something else.  But the other exhibits,
11   you'll actually have in the room, and you'll be able to look at
12   them as much as you folks would like.

13          Now, if you have questions about testimony, testimony
14   can be read back to you.  We have transcripts of the testimony.
15   Please appreciate that we want to get the testimony to you as
16   quickly as possible when you ask for it, if you ask for any of
17   it to be read back.  Sometimes people want to be read back
18   certain pieces; sometimes people don't.  It will be up to you
19   whether or not you have questions.

20          If you ask for testimony to be read back, try to be as
21   specific as possible.  Can you read me the part of so and so's
22   testimony where he talked about X, or can you read me both the
23   direct and cross.  If you want both direct and cross, it's
24   helpful to let us know.  If you're just trying to remember one
25   thing, it's helpful to say we don't need X, we just need Y.

1   Just be as specific as you can, because we sit here and we look

2   at these and we interpret them.  And it becomes like an

3   interpretation of epic proportions sometimes to figure out

4   exactly what the jury is asking for.

5        Let me describe the process of writing notes.  If you

6   have questions, first of all, never ever in your question on a

7   piece of paper say what the vote count is:  We're 7-5, we're

8   11-1.  Okay.  Don't tell us the vote count, all right, at any

9   point in time.  That's going to be for you and you alone to

10  know about because it may or may not change over the course of

11  deliberations as to any particular thing.  It's for you and you

12  alone to know about.

13       When you ask a question, you'll have a piece of paper.

14  You'll write the question down.  The foreperson, whoever you

15  decide is the foreperson, will sign that question and they will

16  place it into an envelope.  Now I want to describe to you the

17  process, not to deter you in any way from asking whatever

18  questions you want to ask, but to explain to you why it

19  sometimes takes a little while to get you answers.

20       You put it in the envelope.  You give the envelope to

21  the marshal, who will be at the door because you're going to be

22  turned over shortly to the marshal and Joe will no longer be

23  your interface.  The marshal will then find Joe, who will be

24  likely right here.  Joe will then find me.  I don't go far, but

25  Joe will find me.  So the envelope is being passed.

1        I open the envelope.  I then read what's in the

2   envelope.  I then call everybody together.  I get the court

3   reporter to come up from downstairs, so either Vince or Sabrina

4   can sit here and take it down.  I then read the note to

5   everybody here without you to make sure that they all have an

6   opportunity to hear the question and then we talk about what

7   the answer should be:  If it's a particular document, what

8   particular testimony you need.

9        We then go and get whatever it is.  We call you out.

10  We have you sit here.  I then, to avoid any questions about a

11  rogue juror having written a note on his or her own, I then

12  will have you all listen and I will say I have a note, I

13  received it at 1:45, it says the following, question.  And then

14  I'll give you what we have decided is the appropriate response,

15  either we're going to send something into the jury room with

16  you or we have agreed on the following response or whatever it

17  is, all right?  That's the process.

18        So it's not like you ask a question and zip in, you

19  get the answer.  But we do have materials that can answer your

20  questions and so if you have a question, please ask.

21        Any communications with the Court from now on are

22  going to have to be in writing, all right, everything in

23  writing through the jury foreperson in this envelope, even

24  things like, you know, post-its, but that will be really quick.

25  We can get you post-its quickly.  I don't have a real problem

1      with that.  Hopefully, we have post-its back there already.

2              The first task is going to be to pick your foreperson.

3      There's no right and there's no wrong way to do that.

4      Sometimes somebody volunteers.  Perfectly fine.  Sometimes

5      juror number one does it because that's the way it's done in

6      the movies, but there's no rule that says juror number one has

7      to be the foreperson.  And sometimes people draw names out of a

8      hat.  It's whatever you decide, okay?  That person does not

9      have any voice that is more important than any other voice;

10     it's just the person who will be signing the documents and

11     giving those things to the Court.

12             Now, the most important part of the case, ladies and

13     gentlemen, is about to begin, and that's part where you're

14     going to go off and deliberate about the issues of fact.  It is

15     for you and you alone to decide whether the government has

16     proven beyond a reasonable doubt the essential elements of the

17     crimes that have been charged.  If the government has failed to

18     do so, your verdict must be not guilty.  If it has succeeded,

19     your verdict must be guilty.  Again, you must consider each

20     count individually.  I know you will try the issues that have

21     been presented to you according to the oath that you took at

22     jurors.  In that oath, you promised that you would well and

23     truly try the issues joined in this case and a true verdict

24     render.  Your function is to weigh the evidence in this case

25     and determine whether or not the defendant is guilty based

F24gulb2                          Charge

1    solely on the evidence.

2         As you deliberate, please listen carefully to the

3    opinions of your fellow jurors and ask for an opportunity to

4    express your own view.  Every juror should be heard.  No juror

5    should hold center stage in the jury room and no one juror

6    should control or monopolize the deliberations.  If, after

7    listening to your fellow jurors, and if, after stating your own

8    view, you become convinced that your view is wrong, do not

9    hesitate because of stubbornness or pride to change your view.

10   On the other hand, do not surrender your honest convictions and

11   belief solely because of the opinions of your fellow jurors or

12   because you're outnumbered.  Your final vote must reflect your

13   conscientious belief as to how the issues should be decided.

14        Your verdict must be unanimous.  If at any time you

15   are not in agreement, you are instructed not to reveal the

16   position or the count of the vote, to anyone, including the

17   Court.  Finally, I say this not because I think it's necessary

18   but because it's the custom of our court to say this, you

19   should treat each other with courtesy and respect during your

20   deliberations.

21        All litigants stand equal in this room.  All litigants

22   stand equal before the bar of justice.  All litigants stand

23   equal before you.  Your duty is to decide the issues before you

24   fairly and impartially, and to see that justice is done.

25        Under your oath as jurors, you are not to be swayed by

F24gulb2                          Charge

1    sympathy.  You should be guided solely by the evidence

2    presented during the trial and the law as I have given it to

3    you, without regard to the consequences of your decision.  You

4    have been chosen to try the issues of fact and reach a verdict

5    on the basis of the evidence or lack of evidence.  If you let

6    sympathy interfere with your clear thinking, there is a risk

7    that you will not arrive at a just verdict.  All parties are

8    entitled to a fair trial.  You must make a fair and impartial

9    decision so that you will arrive at a just verdict.

10           Now, ladies and gentlemen, let me just ask for your

11   patience for one more second.  I just want to see if there is

12   anything that counsel need to raise with me.  Then I'll talk

13   about the alternates and then you're going to go.  It will be

14   just a little bit more.

15                  (Continued on next page)

16

17

18

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F24gulb2                       Charge

```
 1              (At the side bar)
 2              THE COURT:  Does anybody have anything to raise?
 3              MR. DRATEL:  Yes.
 4              MR. TURNER:  No.
 5              MR. DRATEL:  Page nine, reasonable doubt, you left out
 6    "most important."  I don't think you said it.
 7              THE COURT:  Let me see.
 8              MS. LEWIS:  I noticed that as well.
 9              THE COURT:  Fine.  There's a difference between the
10    two.
11              Does the government have a view?
12              MR. TURNER:  There's a difference between --
13              THE COURT:  We have "important matters" here and "most
14    important matters" there.
15              MR. TURNER:  I'm not sure it merits a separate --
16              THE COURT:  What else?  Do we have anything else?
17              MR. DRATEL:  No.  But I think it's the most important
18    instruction in the case.  I read from it directly.  And since
19    the charge that the Court delivers in court is the charge, I
20    think it has to be done accurately.
21              THE COURT:  Are the words "most important" an accurate
22    reflection of the law --
23              MR. DRATEL:  Yes.
24              THE COURT:  -- or is it just a rhetorical add-on?
25              MR. DRATEL:  It's the instruction.
```

F24gulb2                        Charge

1                MR. TURNER:  I don't know that it's required by the

2       law.  I just don't know that it's worth revisiting.

3                THE COURT:  I will.  Anything else?

4                MR. DRATEL:  No.

5                THE COURT:  Okay.

6                (Continued on next page)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (In open court; jury present)

2              THE COURT:  Ladies and gentlemen, each count will be

3    considered by you individually.  And in the verdict form,

4    you're going to fill it out and you'll check the boxes for each

5    count individually, and you'll agree unanimously.  You must

6    agree unanimously on each of the items before they can be

7    filled out.

8              The Court will receive one verdict form and it will be

9    one which is unanimous for each of the jurors.  And there's a

10   place on the back for you to sign, all right?

11             When you're making your determination, which is has

12   the government proved guilt beyond a reasonable doubt, as it

13   says on page nine, you're to ensure that that is proof of such

14   a convincing character that a reasonable person would rely upon

15   it in the most important matters of their own affairs.  So

16   you'll apply the beyond a reasonable doubt standard as we have

17   discussed it throughout the course of this morning.

18             Now, let me talk about the alternates.  I think the

19   alternates is one of the most difficult roles to fill.  I know

20   that you folks have been here every day.  I remember alternate

21   number one's issues with her children, and I certainly

22   appreciate the fact that you have served fully, but I have

23   remembered that.  I understand you folks have done what's

24   necessary to be here as jurors.

25             There have been many instances where alternates get

1    called upon to deliberate.  When that happens, and it happens

2    for a variety of reasons, essentially we'll call you up and say

3    how soon can you get here?  And we go in order.  And we start

4    and we move on down, alternate number one, alternate number

5    two, alternate number three, alternate number four.  And we'll

6    get you here and then the deliberations effectively start over

7    again so that you're included in the deliberations for each and

8    every count and each and every element.

9            As a result of that, I have to say, for the

10   alternates, you can't talk to anybody about this case,

11   including even each other, because you're not yet part of the

12   full panel of deliberations.

13           Joe will call you the minute we have a verdict because

14   at that point, you will be relieved from your oath of silence,

15   okay.  It's very important that you not go home and start

16   talking about the case or talk to each other on the way out

17   about the case because it could be that tomorrow morning we

18   call you up and we get you in here.  And so we don't want you

19   going and doing all the Internet research on all the news

20   articles you might have missed.  Keep yourself just as you have

21   been, and we'll let you know as soon as possible.  As soon as

22   there's a verdict we'll let you know, okay?

23           But I do want to acknowledge that I think your role is

24   one of the hardest because you sat here, you're probably dying

25   to talk about your thoughts, I'm going to have to ask you to be

1    silent still, all right?  So you're not dismissed from this

2    jury.  You're just dismissed for the moment, okay?  And make

3    sure Joe has got your present contact information.

4              The alternates number one, two, three and four can go

5    to the jury room and you can collect your things, and then I'm

6    going have Joe swear in the marshal because we're now going to

7    turn over the jury panel to the marshal.

8              (Marshal sworn)

9              THE COURT:  I'm going to ask the press not to

10   communicate with any of the alternates until the conclusion of

11   the case because they're still active members of the jury panel

12   and may be called upon for deliberations, and they know they

13   shouldn't speak to you.  All right.

14             Thank you.

15             (Alternates excused)

16             THE COURT:  We're now going to have you folks go into

17   the jury room and you're going to begin talking to each other

18   about this case, and you'll communicate through the marshal.

19   You have, I think, all of the supplies that you need.  I just

20   want to remind you if somebody goes out for a smoke break, you

21   need to take a break, too, so you only deliberate when

22   everybody is in the room.  Okay.  All right.

23             Joe, ready?

24             THE DEPUTY CLERK:  All rise as the jury leaves.

25             (At 11:55 a.m., the jury retired to deliberate)

1          THE COURT:  Let's all be seated, ladies and gentlemen.

2          Is there anything anyone would like to raise with the

3    Court?

4          MR. TURNER:  Would you like a list of the exhibits

5    included with the cart?

6          THE COURT:  Typically, I think it's very useful for

7    the jury to have a list of the exhibits if you both agree on

8    how things are named.  If there are going to be disagreements,

9    then hopefully they'll have written things down and they'll

10   know to turn to GX 107 or whatever the number is that they're

11   going to turn to, but if you have an index that people agree

12   on, then yes.

13         MR. TURNER:  We have an index and we'll consult with

14   defense counsel.

15         THE COURT:  Let's roll in the cart.

16         MS. LEWIS:  For now, your Honor, our list needed to be

17   revised, so we wrote on there.  But if they're going to have a

18   physical list for all the jurors, we'd like an opportunity to

19   just get the list in as well.

20         THE COURT:  Sure.  Is there any way you can add your

21   list onto the U.S. Attorney's list?  Can you email over a file?

22         MS. LEWIS:  There's just a couple of page numbers that

23   I wanted to -- I don't think we need them.

24         THE COURT:  We'll put the cart in, and then you folks

25   get the list together however logistically it works best and

1    get the list over.  If there's one list, it ought to include

2    both lists.

3              MS. LEWIS:  Yes.

4              THE COURT:  I agree.  Is there anything else that

5    anybody would like to raise?

6              MR. TURNER:  Not from the government.

7              MR. DRATEL:  No, your Honor.

8              THE COURT:  Let me describe logistics for you again in

9    terms of what we do while we wait for the jury's question and

10   the verdict.

11             You heard me describe the process of questions.  My

12   practice is to get the envelope from Joe.  Each question will

13   be marked as a Court exhibit.  I'll call you all together

14   immediately.  And I will then read out the question, and we'll

15   together talk about whatever is in the question.

16             If it's testimony and we have to isolate it, I have

17   you folks confer first to try to reach agreement on the

18   testimony.  If you can't reach agreement, quickly identify,

19   very quickly identify what you can't reach in terms of your

20   agreement and I will then make a decision, then I'll have a

21   specific ruling.  I'll come out here and I'll make that ruling

22   on the record so people's positions are maintained, and that's

23   the way it goes.

24             We have the cart going?  That was my deputy asking if

25   we needed the list first.  We'll put the exhibits into the

 1    room.  So you need to be around the vicinity in order to be

 2    able to be around for questions, including the defendant,

 3    because each time a question is asked, he'll be brought out and

 4    nothing will happen without the defendant being present.

 5          Then if there's a verdict, it will be just like the

 6    questions coming to me:  I'll receive a note.  Instead of a

 7    question, it will say we have a verdict, but the process will

 8    be exactly the same.  We'll call you out.  I'll tell you

 9    there's a verdict.  I won't know what it is because the

10    foreperson will have the verdict sheet.  We'll call the jury

11    out.

12          My process is to have Joe read out the verdict after

13    the Court has inspected it.  And then I have a normal process

14    of polling the jury, that's my normal process, without waiting

15    for a request.

16          We don't wait for people to show up for the reading of

17    the verdict, except, of course, for the defendant.  If other

18    people happen to want to be around, they should just be close.

19    There will be a little bit of time, but people should certainly

20    be close.

21          Any questions?  Just leave Joe with your information

22    because he will be in the courtroom until a verdict is rendered

23    more or less.  He may go into the robing room to have lunch,

24    but he'll be right here so you can get ahold of Joe, and I'll

25    either be here or in my office.

F24gulb2                    Charge

1              Anything on logistics?

2              MR. TURNER:  No.  Thank you.

3              THE COURT:  Is there anything from you, Mr. Dratel?

4              MR. DRATEL:  No.  Thank you.

5              THE COURT:  I have a final pretrial conference and

6    another jury trial starting on Monday.  I'll have people coming

7    in for that, but it doesn't matter if you're all in the

8    courtroom.  If I get a jury note, the jury note always takes

9    precedence over everything else that I'm doing, so I'll

10   interrupt myself to take care of that.

11             Thank you.  We are adjourned until we receive a note.

12             THE DEPUTY CLERK:  All rise.

13             (Recess pending verdict)

14             (Continued on next page)

15

16

17

18

19

20

21

22

23

24

25

F24dulb3                          Verdict

1              (Time noted at 3:41 p.m., jury not present)

2              THE COURT:  All right, ladies and gentlemen.  I've

3    received a note from the Foreperson at 3:20 -- I received it at

4    3:23.  It will be marked as Court Exhibit 1, and it says, "The

5    jury has reached a verdict."

6              Let's bring out the jury, please.

7              (Time noted at 3:42 p.m., jury present)

8              THE CLERK:  All rise as the jury enters.

9              THE COURT:  All right.  Ladies and gentlemen, let's

10   all be seated.

11             Ladies and gentlemen, I received a note from the

12   Foreperson at -- the time was 3:20 and I received it at 3:23,

13   which indicates that the jury has reached a verdict.

14             Would Madam Foreperson please hand the verdict to

15   Mr. Pecorino.

16             (Pause)

17             All right.  Mr. Pecorino, would you please read the

18   verdict.

19             THE CLERK:  The jury's verdict in the matter of the

20   United States of America versus Ross William Ulbricht, 14 Cr.

21   68:

22                              COUNT ONE

23             (Distribution/Aiding and Abetting the Distribution of
     Narcotics)

24

25             As to Count One, how do you find the defendant?
     Guilty.

F24dulb3                          Verdict

1          Has the government proven beyond a reasonable doubt

2     that the defendant distributed or aided and abetted the

3     distribution of any of the following controlled substances in

4     the quantities indicated?

5          Heroin -- amounts totaling one kilogram or more:  Yes.

6          Cocaine -- amounts totaling five kilograms or more:

7     Yes.

8          LSD -- amounts totaling ten grams or more:  Yes.

9          Methamphetamine -- amounts totaling 500 grams or more:

10    Yes.

11                              COUNT TWO

12          (Distribution/Aiding and Abetting the Distribution of
      Narcotics by Means of the Internet)

13

14          As to Count Two, how do you find the defendant?

15    Guilty.

16          Has the government proven beyond a reasonable doubt

17    that the defendant distributed or aided and abetted the

18    distribution by means of the Internet of any of the following

19    controlled substances in the quantities indicated?

20          Heroin -- amounts totaling one kilogram or more?  Yes.

21          Cocaine -- amounts totaling five kilograms or more?

22    Yes.

23          LSD -- amounts totaling ten kilograms or more?  Yes.

24          Methamphetamine -- amounts totaling 500 grams or more?

25    Yes.

F24dulb3                       Verdict

COUNT THREE

                (Conspiracy to Distribute Narcotics)

                As to Count Three, how do you find the defendant?
Guilty.

                Has the government proven beyond a reasonable doubt
that the defendant conspired to distribute any of the following
controlled substances in the quantities indicated?

                Heroin -- amounts totaling one kilogram or more:  Yes.

                Cocaine -- amounts totaling five kilograms or more:
Yes.

                LSD -- amounts totaling ten grams or more:  Yes.

                Methamphetamine -- amounts totaling 500 grams or more:
Yes.

COUNT FOUR

                (Continuing Criminal Enterprise.

                As to Count Four, how do you find the defendant?
Guilty.

COUNT FIVE

                (Conspiracy to Commit or Aid and Abet Computer
Hacking)

                As to Count Five, how do you find the defendant?
Guilty.

COUNT SIX

                (Conspiracy to Traffic in Fraudulent Identity
Documents)

F24dulb3                        Verdict

1           As to Count Six, how do you find the defendant?

2    Guilty.

3                           COUNT SEVEN

4           (Conspiracy to Commit Money Laundering)

5           As to Count Seven, how do you find the defendant?

6    Guilty.

7           Madam Foreperson, is this the jury's verdict?

8           THE FOREPERSON:  Yes.

9           THE COURT:  Would you please poll the jury.

10          THE CLERK:  Juror No. 1, is this your verdict?

11          JUROR:  Yes.

12          THE CLERK:  Juror No. 2, is this your verdict?

13          JUROR:  Yes.

14          THE CLERK:  Juror No. 3 is this your verdict?

15          (Pause)

16          THE CLERK:  Juror No. 4, is this your verdict?

17          JUROR:  Yes.

18          THE CLERK:  Juror No. 5, is this your verdict?

19          JUROR:  Yes.

20          THE CLERK:  Jury No. 6, is this your verdict?

21          JUROR:  Yes.

22          THE CLERK:  Juror No. 7, is this your verdict?

23          JUROR:  Yes.

24          THE CLERK:  Juror No. 8, is this your verdict?

25          JUROR:  Yes.

F24dulb3                          Verdict

1        THE CLERK:  Juror No. 9, is this your verdict?

2        JUROR:  Yes.

3        THE CLERK:  Juror No. 10, is this your verdict?

4        JUROR:  Yes.

5        THE CLERK:  Juror No. 11, is this your verdict?

6        JUROR:  Yes.

7        THE CLERK:  Juror No. 12, is this your verdict?

8        JUROR:  Yes.

9        THE COURT:  Juror No. 3, is this your verdict?

10       JUROR:  (Indicating)

11       THE COURT:  I need an audible --

12       JUROR:  Yes, your Honor.

13       THE COURT:  Thank you, sir.

14       THE CLERK:  The jury is polled, your Honor.

15       THE COURT:  Thank you, ladies and gentlemen.

16       Counsel, is there any reason not to dismiss the jury

17  at this time?

18       MR. TURNER:  No, your Honor.

19       MR. DRATEL:  No, your Honor.

20       THE COURT:  Ladies and gentlemen of the jury, I want

21  to thank you for your jury service.  I want to thank you for

22  coming each day and listening carefully to the evidence, to

23  doing that under circumstances that I know were difficult day

24  in and day out now over several weeks.

25       As I told you at the outset, having folks like you who

1    will take this role very seriously is an essential part of the

2    American justice system.  Without it, without juries, we cannot

3    have the system that we have.  So I want to thank you for doing

4    your jury service so responsibly and so carefully.

5           What we're going to do now is Joe is going to -- who

6    could talk to you again -- Joe is going to lead you out and

7    give you some final instructions.  You are now also released

8    from your oath of silence and you may now talk to others,

9    should you choose to do so, about this case.  However, you need

10   not talk to anyone should you choose not to talk to anybody.

11   Should you choose to be silent, that's entirely up to you.  You

12   need give no one your name.  You need give no one any

13   information at all.

14          The one thing that I do ask is if you do choose to

15   talk about this case, that when you're talking about your role,

16   that you talk just about yourself, and that you respect the

17   integrity and the secrecy of the jury process and that you not

18   speak for your other fellow jurors who may choose to be silent.

19          Again, I want to thank you.  And you are dismissed.

20          The jury may leave.

21          THE CLERK:  All rise as the jury leaves.

22          (Jury not present)

23          THE COURT:  All right, ladies and gentlemen.  Let's

24   all be seated.

25          The verdict form has been marked as Court Exhibit 2

F24dulb3

1    and it will be posted to the docket.

2              Are there any applications?

3              MR. TURNER:  Sentencing date, your Honor.

4              THE COURT:  All right.  Let me just get the agenda.

5              Any from you, Mr. Dratel?

6              MR. DRATEL:  Yes.  Post-trial motions and we will need

7    a considerable period obviously beyond the ordinary 14 days.

8    So --

9              THE COURT:  Well, the information relating to the

10   post-trial motions is well known.  We have been briefing these

11   for a long period of time.  So --

12             MR. DRATEL:  That's not the issue.

13             THE COURT:  What we'll do is why don't you confer with

14   your team and with the government and then write me a letter

15   and give me your proposed dates rather than coming up with them

16   now, because if there are various things in play then, I want

17   to make sure that you've got, you know, the right amount of

18   time, but I want to set a sentencing date as well.

19             MR. DRATEL:  The Court could set a sentencing date,

20   but I was not talking about beyond the sentencing date.

21             THE COURT:  All right.  So the sentencing date that I

22   am thinking of would be April, in late April.

23             MR. TURNER:  I have travel plans through that time,

24   your Honor.  If we could do either early April or early May?

25             THE COURT:  Early May.  Then that actually builds in a

F24dulb3

1      little bit more time.

2                  MR. DRATEL:  I think 90 days is the minimum, your

3      Honor, for purposes of a presentence report and an appropriate

4      sentencing investigation by Probation, and I think it is the

5      minimum at this point.

6                  THE COURT:  I think May is within that period of time.

7                  MR. DRATEL:  Yes, May is in the neighborhood.

8                  THE COURT:  I think we can figure out what 90 days is.

9                  All right.  Let's come up with a timeframe.  It is

10     February 4th.  All right.  Why don't we say, Joe, can you come

11     up with a date around May 15th for me, a sentencing date,

12     May 15th?

13                  THE CLERK:  Friday, May 15th, at 10 a.m.

14                  THE COURT:  All right.  Friday, May 15th, at 10 a.m.

15                  MR. DRATEL:  I would just suggest April 4th for

16     motions.

17                  THE COURT:  To make the motions?

18                  MR. DRATEL:  Yes.

19                  THE COURT:  Why don't you talk with the government

20     about when they would then get their response done.  I want to

21     make sure I have time to go over them and all of that.  If

22     that's the timing that we're talking about, that's going to be

23     fine, but it would be better for me if you could get them in

24     late March but there may be reasons why you want April 4th.

25                  All right.  So that means that within 14 days,

F24dulb3

1   Mr. Turner, you will get the statement of facts to Probation?

2            MR. TURNER:  Yes, your Honor.

3            THE COURT:  And you will get on the calendar of

4   Probation, Mr. Dratel, within two weeks?

5            MR. DRATEL:  They call me and then I will set up the

6   schedule.

7            THE COURT:  OK.  The way it works is, as you know,

8   that you have to work with them to get on their calendar, and

9   in the two-week period you have to get on their calendar -- you

10  don't have to have the interview within two weeks.

11           All right.  Terrific.  Is there anything else that we

12  should do right now?

13           MR. TURNER:  No, your Honor.

14           MR. DRATEL:  No, your Honor.

15           THE COURT:  All right.  Then we are adjourned.  Thank

16  you.

17           MR. DRATEL:  One second.

18           (Pause)

19           Nothing, your Honor.  Thank you.

20           THE COURT:  All right.  Thank you.

21           We are adjourned.

22           THE LAW CLERK:  All rise.

23

24                              -   -   -

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300