UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                     :
UNITED STATES OF AMERICA                             :
                                                     :
                                                     :
            -v-                                      :        14-cr-68 (KBF)
                                                     :
ROSS WILLIAM ULBRICHT,                               :        SEALED
                                                     :        MEMORANDUM &
                        Defendant.                   :        DECISION[1]
                                                     :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

  On November 21, 2014, the Government submitted a letter (the "November

21, 2014 Letter" or the "Letter") disclosing an ongoing federal grand jury

investigation of a former special agent of the Drug Enforcement Agency ("DEA"),

Carl Force ("SA Force" or "Force"), by the U.S. Attorney's Office for the Northern

District of California ("USAO-San Francisco"), in conjunction with the Public

Integrity Section of the Criminal Division of the Department of Justice.  In sum and

substance, the grand jury investigation (the "Force Investigation") concerns an

inquiry into whether Force "went rogue" at some point during an independent

investigation of Silk Road by the U.S. Attorney's Office for the District of Maryland

("USAO-Baltimore")—stealing bitcoins, corruptly converting proceeds from Silk

Road transactions to his own use, and/or providing inside information regarding the

USAO-Baltimore investigation to an individual known as "Dread Pirate Roberts"

("DPR").  DPR is alleged to have controlled the Silk Road website.  The Force

Investigation is active and its scope is non-public.  Notably, the November 21 Letter

---

[1] References to defendant's ex parte submissions have been redacted from this version of the Sealed
Memorandum & Decision.

does not disclose known facts regarding Force's conduct, but rather discloses the fact and scope of an investigation into potential misconduct.

The Government requested leave to disclose the November 21, 2014 Letter to defense counsel pursuant to Rule 6(e)(3)(E) of the Federal Rules of Criminal Procedure under a protective order prohibiting outside disclosure of the Letter and its contents. At that time, the Government asserted—and it continues to assert— that the disclosure is not pursuant to any <u>Brady</u> obligation as the information contained in the Letter is neither exculpatory nor material to any potential defense. On December 1, 2014, the Court granted the Government's request to provide the Letter to defendant pursuant to a protective order.

The parties filed motions <u>in limine</u> on December 9, 2014. As one of his motions, defendant moved for an order unsealing the November 21, 2014 Letter.[2] The Government opposed.[3] On December 15, 2014, the Court held a sealed hearing on the motion. The parties subsequently submitted additional correspondence on this issue, including a second <u>ex parte</u> letter by the defense.

During the December 15, 2014 hearing, the Government argued that significant information regarding what is actually known about Force's role in the investigation of Silk Road by USAO-Baltimore had long ago been disclosed to the defense in discovery. Documents subsequently produced by the Government

---

[2] Defendant's motion <u>in limine</u> was accompanied by an <u>ex parte</u> letter-motion to unseal.

[3] On December 12, 2014, the Government submitted an <u>ex parte</u> letter providing responses to the Court's inquiries regarding the ongoing grand jury investigation of SA Force. A redacted version of this <u>ex parte</u> letter has been provided to the defendant.

confirmed this.[4]  The defense maintained that the issues under investigation by

USAO-San Francisco might have a significant bearing on this case, and that while

certain information was received as part of ordinary pre-trial disclosures,

information regarding Force's potentially rogue conduct was not.  Based on the

discussion at the hearing and all of the submissions on this issue to date, it is clear

that precisely what Force did (or did not do) remains unknown.

On December 18, 2014, defendant submitted a lengthy list of extremely broad

discovery requests—seeking 28 separate categories of information relating to SA

Force from the Government.  Defendant has not sought to obtain truly targeted

discovery from the Government or any third party.  The Government has opposed

disclosure of any of the discovery requested on the basis that it would interfere with

the ongoing grand jury investigation.

Currently before this Court are the two related motions by defendant: to

unseal the November 21 Letter and to compel the Government to produce the 28

enumerated categories of discovery.  Notably, none of defendant's submissions

explains why it is necessary to have the entirety of the November 21 Letter

unsealed and made part of the public record—versus requesting public disclosure of

particular isolated facts from that Letter.  Nor has the defendant attempted to

demonstrate how and why his discovery requests are appropriate under the rules

and in light of the Government's assertions regarding the potential impact on the

---

[4] The Government produced a binder of documents relating to Force's role in the investigation—all of which had been previously disclosed to defendant.  These documents reveal the type of technical access Force had to the Silk Road website as part of his work for the DEA on the USAO-Baltimore investigation.

ongoing investigation. Nevertheless, the Court has carefully reviewed defendant's arguments and sets forth its ruling below. Both of defendant's applications are DENIED.

I.    BACKGROUND[5]

A.    SA Force's Role in the USAO-Baltimore Investigation

In 2012 and 2013, SA Force participated in an independent investigation of Silk Road conducted by USAO-Baltimore. USAO-Baltimore has a pending indictment against Ulbricht charging him with, inter alia, soliciting the murder-for-hire of Curtis Green ("Green"), a former Silk Road employee known by the username "Flush." (See November 21, 2014 Letter at 1, 3.) As part of his duties in connection the USAO-Baltimore investigation, SA Force infiltrated the Silk Road website under the username "Nob." (Id. at 2, 4.) Force managed to strike up an online relationship with DPR, who, the Government contends, is the creator and lead administrator of the Silk Road website. At the heart of its case against Ulbricht is the Government's contention that he is DPR.

Acting in his capacity as a special agent for the DEA, SA Force—via his Silk Road identity, Nob—portrayed himself as someone who wished to distribute large quantities of narcotics through Silk Road. (Id. at 4.) In short, Nob was a fictional "big-time drug dealer." In January 2013, DPR solicited Nob to arrange for the murder-for-hire of Green, the owner of the Flush account. (Id.) The Government intends to introduce evidence that DPR believed that Green had stolen

---

[5] The Court assumes familiarity with the underlying facts of this case.

approximately $350,000 worth of bitcoins, the currency used to effect Silk Road transactions.

According to the Government, the events leading up to the solicitation of the murder-for-hire of Green are as follows.[6]  Green was arrested on narcotics charges on January 17, 2013, and began cooperating with the authorities promptly after his arrest.  (See id. at 3; Government's Six-Page Letter of December 18, 2014 ("Gov't December 18, 2014 Letter") at 2.)  As part of his cooperation, Green provided Force with access to the Flush account.  (Gov't December 18, 2014 Letter at 2.)  Force changed the login password on the Flush account to secure it for undercover purposes.  (Id.)

On January 19, 2013, Force provided Green with the changed password to the Flush account so that Green could engage in online conversations with DPR as a confidential informant.  (Id.)  On January 26, 2013, a Silk Road support staff member with the username "Inigo"[7] informed DPR that Flush might have reset the passwords of Silk Road users in order to steal approximately $350,000 worth of bitcoins.[8]  (Id. at 3.)  DPR messaged Flush, accusing him of stealing the money and warning that he was "taking appropriate action."  (November 21, 2014 Letter at 4.)  Later that day, DPR engaged in an online TorChat with Nob, in which he told Nob

---

[6] Information regarding these events was provided to the defense in discovery.

[7] Inigo has been identified as Andrew Michael Jones, who was indicted in a separate case pending before Judge Griesa.  Jones has pled guilty to the charges.

[8] The November 21, 2014 Letter notes that "[a]s a Silk Road administrator, 'Flush' had administrative privileges on the Silk Road website that gave him certain effective access to user funds, such as the ability to reset user passwords and thereby take over user accounts."  (November 21, 2014 Letter at 4 n.4.)

that Flush was Green and asked Nob if he could arrange to "get someone to force [Green] to return the s [sic] funds." (Gov't December 18, 2014 Letter at 3.)  A few minutes later, Inigo informed DPR that he had successfully stopped the theft of bitcoins by resetting the password on the Flush account. (<u>Id.</u>)  The Government alleges that defendant subsequently ordered Nob to arrange for Green's murder in exchange for $80,000, and that defendant later informed Inigo and another associate—with the TorChat username "cimon"—that Green had been successfully executed. (<u>Id.</u>)

  B.  <u>The Force Investigation</u>

  USAO-San Francisco began investigating Force in the spring of 2014 after learning of suspicious transactions that Force had with a certain Bitcoin exchange company. (November 21, 2014 Letter at 2.)  Further investigation revealed that Force held accounts at several Bitcoin exchange companies, exchanged hundreds of thousands of dollars' worth of bitcoins for U.S. currency during 2013 and 2014, and transferred the U.S. currency into personal accounts. (<u>Id.</u>)  USAO-San Francisco also learned that Force used his position as a DEA agent to protect these funds. (<u>Id.</u>)  After learning this information, USAO-San Francisco has been investigating, <u>inter alia</u>, how SA Force acquired such a large quantity of bitcoins and whether he did so through exploiting his role in the USAO-Baltimore investigation. (<u>Id.</u>)

  In particular, USAO-San Francisco is investigating whether SA Force may have (1) leaked information about the USAO-Baltimore investigation to Ulbricht in exchange for payment, (2) himself used access to Green's Flush account to steal the

$350,000 in bitcoins, and/or (3) received and converted to personal use payments from DPR of approximately $85,000 in bitcoins. (See id. at 2-5; Memorandum of Law in Opposition to the Defendant's Motions In Limine ("Gov't Opp.") at 15.)

The Government has represented that (1) Force did not play any role in the investigation that culminated in Ulbricht's indictment in this District, (2) the Government will not call Force as a witness at trial, and (3) the Government will not use any evidence obtained in the USAO-Baltimore investigation in this case. (Gov't Opp. at 16.) The Government also has represented that it will not seek to introduce at trial any communications between Ulbricht and Force, including communications regarding Ulbricht's alleged hiring of Nob to arrange Green's murder-for-hire. (Id. at 16 n.2.) According to the Government, Nob will be referenced at trial only in connection with TorChat logs in which Ulbricht and his alleged co-conspirators mention Nob as the party that Ulbricht solicited to arrange the murder-for-hire of Green. (See id.; Gov't December 18, 2014 Letter at 2.)

C.     Defendant's Asserted Relevance of the Force Investigation

Defendant has submitted two ex parte letters to the Court describing the ways in which information relating to or derived from the Force Investigation might be relevant, material, and exculpatory. According to defendant, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████

██████████████████████████

D.    Defendant's Discovery Requests

On December 18, 2014, defendant submitted a letter under seal that set forth 28 discovery demands for the Government.  Together, the demands seek, inter alia, any documents in the Government's possession relating to its investigation of SA Force, including financial analyses, forensic computer analyses, interview notes, reports, warrant applications, evidence obtained via searches and wiretaps, and surveillance footage.  The demands also seek any records in the Government's possession regarding SA Force's finances (specifically, records pertaining to his bank, bitcoin, and investment accounts), Internet and telephone communications, and disciplinary records or reports.[9]

## II.    LEGAL STANDARDS

A.    Grand Jury Secrecy

The Supreme Court consistently has "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."
Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 218 (1979) (citation omitted).  The fivefold rationale for this policy is

---

[9] The breadth of the requests is evident on their face.  For example, defendant seeks without any other qualification or limitation: "bank account records from any and all bank accounts maintained by former SA Force or his spouse in the U.S. or overseas"; "the contents of any email accounts operated by former SA Force or any of his aliases"; "the contents of any and all social media accounts operated by former SA Force or any of his aliases (including but not limited Facebook, Linkedin, and/or Twitter)"; and "any and all reports prepared by the government regarding its investigation of former SA Force."  (Defendant's December 18, 2014 Discovery Requests ("Disc. Requests") ¶¶ 1, 10, 14, 17.)

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

In re Grand Jury Subpoena, 103 F.3d 234, 237 (2d Cir. 1996) (quoting United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978)).

Rule 6(e) implements this policy of secrecy by providing that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(6). "The plain language of the Rule shows that Congress intended for its confidentiality provisions to cover matters beyond those actually occurring before the grand jury: Rule 6(e)(6) provides that all records, orders, and subpoenas relating to grand jury proceedings be sealed, not only actual grand jury materials." In re Grand Jury Subpoena, 103 F.3d at 237 (emphasis in original).

"[W]hen the district court finds that disclosure of the confidential information might disclose matters occurring before the grand jury, the information should be protected by Rule 6(e)," which means "it receives a presumption of secrecy and closure." Id. at 239 (citation omitted). While this presumption is rebuttable, "[t]he

burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy." Id. (quoting Moten, 582 F.2d at 662) (internal quotation marks omitted). "A party makes a showing of particularized need by proving 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" Id. (quoting Douglas Oil, 441 U.S. at 222). "If a showing of particularized need has been made, disclosure should occur unless the grand jury investigation remains sufficiently active that disclosure of materials would prejudice a legitimate interest of the government." Moten, 582 F.2d at 663 (citation omitted).

      B.   <u>Discovery in Criminal Cases</u>

          1.   <u>Rule 16</u>

"[I]n all federal criminal cases, it is Rule 16 that principally governs pre-trial discovery." United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013). Under Rule 16(a)(1)(E), a defendant is entitled to obtain from the Government documents and objects that are "within the government's possession, custody, or control" if they are "material to preparing the defense."[10] Fed. R. Crim. P. 16(a)(1)(E).

---

[10] Rule 16(a)(1)(E) also permits the defendant to obtain government documents and objects "within the government's possession, custody, or control" if "the government intends to use [them] in its case-in-chief a trial," or if they were "obtained from or belong[] to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Neither scenario applies here. Additionally, under Rule 16(a)(2), the pre-trial discovery authorized by Rule 16 does not encompass "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). However, Rule 16(a)(2) does not enable the Government to escape potential Rule 16 discovery obligations in this case because the discovery defendant seeks does not concern the investigation or prosecution of

Evidence is "material" under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Stein, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993)). "Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense." Id. at 357 (quoting United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993)). "There must be some indication that the pretrial disclosure of the disputed evidence would . . . enable[ ] the defendant significantly to alter the quantum of proof in his favor." Id. (alterations in original) (quoting United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991)).

A speculative laundry-list discovery request is improper under Rule 16. See, e.g., United States v. Persico, 447 F. Supp. 2d 213, 217 (E.D.N.Y. 2006) (rejecting a discovery request for "long list of items" because the request was based on "mere conjecture"); United States v. Larranga Lopez, 05 Cr. 655 (SLT), 2006 WL 1307963, at *7-8 (E.D.N.Y. May 11, 2006) (Rule 16(a)(1)(E) "does not entitle a criminal defendant to a 'broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up.'" (alteration in original) (quoting Jencks v. United States, 353 U.S. 657, 667 (1957))).

---

the instant case, but rather a different investigation conducted by a different U.S. Attorney's Office concerning a different defendant. See United States v. Armstrong, 517 U.S. 456, 463 (1996) (Rule 16(a)(2) prohibits a defendant from "examin[ing] Government work product in connection with his case." (emphasis added)); United States v. Koskerides, 877 F.2d 1129, 1133-34 (2d Cir. 1989) (purpose of Rule 16(a)(2) is to protect prosecutors' interest in protecting communications concerning trial tactics).

Rule 16(d)(1) provides that the Court may "[a]t any time" deny pre-trial discovery "for good cause," which may be shown "by a written statement that the court will inspect ex parte." Fed. R. Crim. P. 16(d)(1). "[C]ourts have repeatedly recognized that materials . . . can be kept from the public if their dissemination might 'adversely affect law enforcement interests.'" Smith, 985 F. Supp. 2d at 531 (quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)) (collecting cases).

For example, in Smith, the Government sought a protective order for materials concerning an ongoing investigation of possible misconduct in connection with the case. Id. at 516. The Government submitted an ex parte letter that "provided specific details of ongoing investigations that [we]re related to the discovery materials" sought. Id. at 531. The Court ruled that the Government established "good cause" for the protective order under Rule 16(d)(1), noting that the possible public disclosure of an ongoing investigation "could alert the targets of the investigation and could lead to efforts by them to frustrate the ongoing investigations." Id. at 531-35.

2.    Rule 17

A party seeking to issue a Rule 17 subpoena must demonstrate that the materials sought are (1) relevant, (2) admissible, and (3) specific. United States v. Nixon, 418 U.S. 683, 700 (1974); see also United States v. Cuti, 528 Fed. App'x 84, 86 (2d Cir. 2013) ("Under Nixon, a party moving for a pretrial Rule 17(c) subpoena, must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." (internal quotation marks omitted)). "Rule 17 subpoenas are properly used to obtain

admissible evidence, not as a substitute for discovery." United States v. Barnes, 560 Fed. App'x 36, 39 (2d Cir. 2014) (summary order) (citing United States v. Murray, 297 F.2d 812, 821 (2d Cir. 1962)).

The party seeking the Rule 17(c) subpoena "must be able to 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hop[e] that something useful will turn up.'" United States v. Louis, No. 04 Cr. 203, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (alteration in original) (quoting United States v. Sawinski, No. 00 CR 499(RPP), 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000)). Courts in this District have repeatedly noted that Rule 17 does not countenance fishing expeditions; subpoenas cannot simply seek broad categories of documents without an articulation of how they will enable defendants to obtain specific admissible evidence that is probative of defendant's guilt. E.g., United States v. Mendinueta-Ibarro, No. 12 Cr. 379 (VM), 2013 WL 3871392, at *2 (S.D.N.Y. July 18, 2013) ("Subpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by Nixon." (citing Louis, 2005 WL 180885, at *5)); United States v. Binday, 908 F. Supp. 2d 485, 492-93 (S.D.N.Y. 2012) (rejecting Rule 17 subpoena seeking "vast array of documents" because it was "a fishing expedition, not a targeted request for evidentiary matters"); Louis, 2005 WL 180885, at *5 (rejecting Rule 17 subpoena requesting "any and all" documents relating to "several categories of subject matter (some of them quite large), rather than specific evidentiary items").

Rule 17(c)(2) provides that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

### 3. Brady

Under Brady v. Maryland, 373 U.S. 83 (1963), the Government has a constitutional duty to disclose favorable and material information to the defendant, id. at 87. However, "Brady is not a rule of discovery—it is a remedial rule." United State v. Meregildo, 920 F. Supp. 2d 434, 440 (S.D.N.Y. 2013) (citing United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001)). Brady imposes a disclosure obligation on the Government; it does not give defendant a constitutional entitlement to obtain discovery. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one . . . ."); see also United States v. Bonventre, No. 10CR228–LTS, 2014 WL 3673550, at *22 (S.D.N.Y. July 24, 2014) (court denied discovery request under Brady because Brady is "not a discovery doctrine that could be used to compel the Government to gather information for the defense"); Meregildo, 920 F. Supp. 2d at 439 ("An interpretation of Brady to create a broad, constitutionally required right of discovery would entirely alter the character and balance of our present systems of criminal justice." (quoting United States v. Bagley, 473 U.S. 667, 675 n.7 (1985))).

## III.   DISCUSSION

### A.   Motion to Unseal the November 21, 2014 Letter

It is undisputed that the November 21, 2014 Letter "relates to" an ongoing grand jury investigation, Fed. R. Crim. P. 6(e), such that unsealing the Letter

14

"might disclose matters occurring before the grand jury," In re Grand Jury
Subpoena, 103 F.3d at 239. The Government has repeatedly represented that
unsealing information regarding the Force Investigation would result in significant
prejudice to the integrity of the investigation. Specifically, the attorneys handling
the grand jury investigation believe that disclosure "threatens to harm the
investigative process, by revealing to Force or others the full scope of the
Government's investigation, which is currently unknown to Force." (See
Government's December 19, 2014 Letter at 1.) Such a revelation may cause Force—
as well as potential co-conspirators, aiders and abettors, and others—to flee,
intimidate witnesses, destroy evidence, and conceal proceeds of criminal activity.[11]
(Id. at 2.)

The November 21, 2014 Letter thus is entitled to "a presumption of secrecy
and closure." Id. (citation omitted). To overcome this presumption, defendant must
make a showing of "particularized need" by proving that disclosure of the November
21, 2014 Letter is "needed to avoid a possible injustice," "that the need for disclosure
is greater than the need for continued secrecy," and that defendant's "request is
structured to cover only material so needed." Id. (quoting Douglas Oil, 441 U.S. at
222). Defendant has not carried this burden here.

---

[11] The Government's letter of December 12, 2014 sets forth additional reasons why disclosure of the
November 21, 2014 Letter threatens to jeopardize the ongoing investigation of SA Force. First, there
is a serious risk that the significant level of media attention that the allegations against SA Force
would likely generate would "influence the information or testimony provided by witnesses, bias
grand jury members, or otherwise impact the integrity of the investigative process." In addition,
disclosure of the investigation at this time would risk publicly airing suspicions of wrongdoing that
may not materialize due to lack of evidence.

1.    "Possible Injustice"

a.    Defendant's arguments

Defendant argues that "evidence of an investigation of former SA Force is exculpatory, and thus Brady material.'" (Memorandum of Law in Support of Defendant Ross Ulbricht's Motions In Limine at 29.) Defendant describes the supposed exculpatory value of the November 21, 2014 Letter in two ex parte letters to the Court.







### b.    Analysis

Defendant has not made a showing that either the fact of the Force

Investigation or the information learned during that investigation is "needed to

avoid a possible injustice."  Contrary to defendant's arguments, the statements in

the November 21, 2014 Letter are not exculpatory.[13]

In discovery, the Government

produced information that (1) the Nob account was controlled by an undercover

DEA agent, (2) Green a/k/a Flush was arrested in January 2013 on narcotics

charges, and (3) the undercover agent had obtained access to the Flush account

---

[13] If anything, the November 21, 2014 Letter is inculpatory.  The Letter indicates that SA Force may have leaked information about USAO-Baltimore's investigation to DPR in exchange for payment.  If Ulbricht is DPR, this is evidence of Ulbricht's criminal state of mind and attempts to protect his criminal enterprise by purchasing investigative information.

after Green's arrest. (Gov't December 18, 2014 Letter at 2.) ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

To whatever extent this provides a basis for a defense, it has been known to the defendant for some time. It is not news. The defense also learned in discovery that the Flush account may have had administrative privileges. In fact, the Government produced evidence that, on January 26, 2013, Inigo told DPR that Flush may have stolen $350,000 in bitcoins by resetting the passwords of Silk Road users. (See id. at 3.) ████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

The only new information in the November 21, 2014 Letter is that USAO-San Francisco is investigating whether Force may have stolen the $350,000 in bitcoins, converted other bitcoins to personal use, and/or leaked investigative information to DPR. ████████████████████████████████████████████████

Notably, "USAO-San Francisco has not uncovered any evidence that Force fabricated any evidence against the defendant or the 'Dread Pirate Roberts' online persona." (Gov't December 18, 2014 Letter at 4.) To the contrary, there is persuasive evidence that no such fabrication occurred. (See id. at 4-5.)

Nor does the November 21, 2014 Letter help attack the Government's murder-for-hire allegations. The Government alleges that Ulbricht solicited Green's murder-for-hire in part because he believed that Green had stolen the $350,000 in bitcoins. The fact that SA Force may have been responsible for the theft is irrelevant unless defendant knew about it, and there is no evidence that he did. As the Government correctly points out, "[r]egardless of whether SA Force, Green or anyone else stole the Bitcoins, the identity of the culprit is wholly irrelevant to the fact that the defendant believed that they were stolen by his employee, 'Flush'" (Government's Opp. at 17) and that Flush was Green. █████████████



Importantly, nothing about the Force Investigation prevents defendant from doing that which he could always do: presenting a theory supported by the technical capabilities of Silk Road and the materials produced in discovery. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ To be clear, to the extent the Government now or at any point in the future develops any exculpatory information, such as information suggesting that Force did fabricate evidence against DPR, it would have a <u>Brady</u> obligation to disclose it to the defense. The Government has affirmed that it fully understands its obligations under <u>Brady</u>, that it currently knows of no exculpatory information, and that, if it acquires any exculpatory material, it will readily produce it to the defense. (<u>See, e.g.</u>, Government's December 19, 2014 Letter at 4.) The Court has no reason to believe that the Government has not complied with all of its <u>Brady</u> disclosure obligations to date or that it will not comply with those obligations in the future.

The Court finds that defendant has not met his burden of showing that unsealing the November 21, 2014 Letter is "needed to avoid a possible injustice." The Government's ongoing <u>Brady</u> obligations, as well as its representation that it will not call SA Force as a witness at trial, will not use any evidence obtained in the USAO-Baltimore investigation, and will not seek to introduce any communications between Ulbricht and SA Force further mitigate the (virtually non-existent) risk of "possible injustice" from maintaining the November 21, 2014 Letter under seal.

████████████████████████████████████████████████████████

### 2.    Need for Disclosure Versus Need for Continued Secrecy

Defendant also has not demonstrated that any "need for disclosure is greater than the need for continued secrecy." The grand jury investigation of SA Force is ongoing, and the Government has indicated that unsealing the November 21, 2014 Letter would result in significant prejudice to the integrity of the investigation. The Court credits this statement. In particular, after consultation with USAO-San Francisco, the Government has advised the Court that disclosure of the November 21, 2014 Letter threatens to compromise the investigative process by revealing to SA Force the full scope of the investigation against him. Learning about the full range of misconduct that is the subject of the USAO-San Francisco investigation might jeopardize that investigation by causing Force, and others, to flee, destroy evidence, conceal criminal proceeds, and/or intimidate witnesses. (Government's December 19, 2014 Letter at 2.) Under these circumstances, the Court finds that the minimal, if any, value of the November 21, 2014 Letter to Ulbricht's defense is significantly outweighed by the need for continued secrecy.

### 3.    Structure of the Request

Finally, the Court finds that defendant's request to unseal the November 21, 2014 Letter is not "structured to cover only material" needed to avoid a possible injustice. Rather than requesting to unseal specific facts from the Letter and explaining why disclosure of those facts is necessary for a fair trial, defendant seeks to unseal the entire Letter based on broad, vague allegations that it contains exculpatory information.

In sum, the Court finds that defendant has failed to make a showing of "particularized need" sufficient to overcome the presumption of secrecy.  Moreover, even if defendant had made such a showing, the Court nonetheless would conclude that the November 21, 2014 Letter should remain under seal while the grand jury investigation of SA Force is ongoing.  See Moten, 582 F.2d at 663 ("If a showing of particularized need has been made, disclosure should occur unless the grand jury investigation remains sufficiently active that disclosure of materials would prejudice a legitimate interest of the government." (emphasis added) (citation omitted)); In re Grand Jury Subpoena, 103 F.3d at 240 ("We have grave doubts as to whether Appellants made a showing of particularized need to the district court.  Yet, even were we to decide that they had, we would not favor opening the hearing to the press while the grand jury investigation is on-going.").

Over the course of the trial, defense counsel may find that they have a basis to believe that specific information in the November 21, 2014 Letter is useful or necessary for effective cross-examination.  If such a situation arises, defense counsel should so inform the Court and make a proffer as to the probative value of the particular information sought to be disclosed.

B.    Defendant's Discovery Requests

Defendant is not entitled to the discovery he seeks either under the Federal Rules of Criminal Procedure or under Brady.

1.    Rule 16 Discovery

The evidence defendant seeks does not meet the threshold of materiality required by Rule 16(a)(1)(E), as there is at present no strong indication that the

discovery defendant seeks will play an important role in uncovering admissible evidence or will significantly aid in the preparation of defendant's case. As the Government long ago produced discovery regarding SA Force's access to administrative privileges on Silk Road, the only information that should be new to defendant is that SA Force is being investigated for leaking information, and the conversion and/or theft of bitcoins. Defendant has not articulated a coherent and particular reason why the fact of SA Force's investigation, or the fruits of that investigation, could themselves "counter the government's case" or "bolster a defense." Stein, 488 F. Supp. 2d at 357 (quoting Stevens, 985 F.2d at 1180).

Indeed, this much is made clear by defendant's open-ended laundry list of discovery demands, which represent precisely the kind of speculative fishing expedition not permitted by Rule 16. For instance, defendant seeks discovery as to "bank account records from any and all bank accounts maintained by former SA Force or his spouse in the U.S. or overseas," (Disc. Requests ¶ 1), which could encompass SA Force's spouse's bank statements from the time before she married SA Force. Defendant also seeks "the contents of any email accounts operated by former SA Force or any of his aliases," (Disc. Requests ¶ 10), which could encompass all of SA Force's non-work-related emails and emails relating to investigations other than that of Silk Road. Indeed, eighteen of defendant's twenty-eight requests request "any and all" materials in a particular category, and none is time-delimited. Such broad and speculative requests are inappropriate under Rule 16. To the extent that the defendant requests issuance of truly targeted requests, and can

support those requests under the rules, the Court will review those and make an individualized determination.

Finally, the Court notes that it is not unusual for the Government to investigate many aspects of a criminal case and numerous people involved at the same time, nor (sadly) is this the first occasion on which a court has confronted a situation in which the Government's own investigative team has been accused of misconduct in the course of an investigation. See, e.g., Brown v. United States, No. 1:10 CV 752, 2014 WL 4231063, at *1-2 (N.D. Ohio 2014) (DEA agent indicted by a grand jury on charges of creating incriminating evidence, withholding exculpatory evidence, and committing perjury). The fact that multiple investigations of criminal conduct occur simultaneously does not mean that—even if related as to certain facts—one must or even should await the outcome of the other. It is perfectly appropriate for the Government, in the reasonable exercise of its prosecutorial discretion, to pursue charges as and when it deems it appropriate and necessary. Except in unusual circumstances, courts should not attempt to alter the Government's chosen timing.

In any event, even assuming arguendo that the information defendant seeks is material, good cause exists under Rule 16(d)(1) for denying defendant's request. Here, as in Smith, disclosure of the materials sought by defendant could alert Force to the full scope of the ongoing grand jury investigation and lead to efforts by him to frustrate the investigation. Defendant's pre-trial discovery requests are accordingly DENIED under Rule 16.

2.    <u>Rule 17 Subpoenas</u>

In its December 19, 2014 letter, the Government opposed the issuance of any Rule 17 subpoenas based on defendant's discovery requests. Rule 17 subpoenas must be limited to information that is specific, relevant, and admissible. As explained above, defendant's requests collectively seek "any and all" materials with regard to several broad categories of information, and defendant has not articulated any specific items of admissible evidence he seeks. Simply put, were defendant to request the materials he seeks via Rule 17 subpoenas, he would be engaged in "a fishing expedition, not a targeted request for evidentiary matters." <u>Binday</u>, 908 F. Supp. 2d at 492. Further, and again as explained above, the issuance of Rule 17 subpoenas in this case could endanger the ongoing grand jury investigation of SA Force. Accordingly, the issuance of subpoenas based on defendant's discovery requests would be "unreasonable or oppressive" under Rule 17(c)(2), and therefore inappropriate.

3.    <u>Brady</u>

<u>Brady</u> does not provide a vehicle for defendant to obtain the discovery he seeks—it imposes an obligation on the Government to apprise defendant of any exculpatory information obtained via the Force Investigation, but it does not entitle defendant to obtain access to materials from that grand jury investigation, or for that matter any other materials. The Government has an ongoing <u>Brady</u> obligation in this case; this means that to the extent there is any information revealed or developed during the Force Investigation that is material and potentially exculpatory, the Government must disclose such information to the defense.

The Court is aware that defendant argues that the Government cannot know what may be exculpatory as it may not anticipate certain defenses. This is as true here as in any case. To the extent that defendant wants to ensure that the Government provides exculpatory information of which it is aware and that is responsive to a particular theory, it must give the Government enough information to understand that theory. Opening statements are only two weeks away, and the mysteries of the defense theories will be largely revealed at that time; defendant's tactical interest in preserving the mystery of a particular defense theory may now be outweighed by his desire to determine whether particular information supportive of that theory has come to light.

IV.    CONCLUSION

For the reasons set forth above, defendant's motion to unseal the November 21, 2014 Letter and discovery requests are DENIED. As explained above, the Court will, over the course of the trial, entertain specific requests to use information from the November 21, 2014 Letter on cross-examination. In addition, if, during the course of the trial, the Government opens the door to specific information or facts develop which render particularized disclosure of facts or documents relevant, the Court will entertain a renewed application at that time.

Dated:    New York, New York
          December 22, 2014


_____
KATHERINE B. FORREST
United States District Judge

28