**PAUL GRANT**
*LAW OFFICE OF PAUL GRANT*
P.O. Box 2720
Parker CO 80134
paul_pglaw@yahoo.com
303-909-6133

February 20, 2018

**BY ECF**
Hon. Katherine B. Forrest
United States District Judge
United States District Court
500 Pearl Street
New York NY 10007

Re:   *United States v. Ross William Ulbricht, et al*, 14 Cr. 68 (KBF)
        Petition for Rehearing Re Denial of Motion for Recusal

Dear Judge Forrest:

        I write on behalf of Defendant Ross Ulbricht to submit this petition for rehearing and motion for reconsideration, asking that the court vacate its February 5, 2018 order (Doc. # 310) denying Mr. Ulbricht's Motion for Recusal, and that the court now grant the motion.  I have contacted the government about this request and AUSA Eun Young Choi advises that the government objects to the requested relief.

        Mr. Ulbricht believes that the court has misapprehended, overlooked, not addressed, or misapplied the facts and pertinent law provided by Mr. Ulbricht.

*1.     The court's order denying the Motion for Recusal describes Mr. Ulbricht's Motion as "frivolous and full of many misstatements of the record."*  Doc. 310.  The court's order did not explain why the Motion was frivolous nor what the alleged "many misstatements of the record" may consist of.

        The court's order did not address any of the factual allegations nor any of the legal arguments advanced by Mr. Ulbricht.

*2.      The order denying the Motion for Recusal did not address Mr. Ulbricht's three bases for calling into question the impartiality of the court.*  Each of these will now be addressed:

A. The empaneling of an anonymous jury

        What the court overlooked or misapprehended about Mr. Ulbricht's claim that the court's empaneling of an anonymous jury undermined the presumption of innocence and prejudiced his jurors against him, is the following:

(1)      As Mr. Ulbricht established in his Motion, the record shows that the 183 prospective jurors called for this case were provided with a juror questionnaire prior to trial, and asked to fill out that questionnaire.  Doc. 301, Memorandum of Law in Support of Motion for Recusal,  at page 2.

As Mr. Ulbricht established in his Motion, the record shows that out of 183 prospective jurors who filled out the juror questionnaire, only a handful (14) of jurors wrote their name where they were required to provide:    YOUR FULL NAME _____.   Doc. 302, Declaration of Paul Grant in Support of Motion for Recusal.

As Mr. Ulbricht established in his Motion, the record shows that out of the handful of prospective jurors who did write their names in the space provided on Page 1 of the Juror Questionnaire, 11 of those jurors then crossed through their names.  Doc. 302, Declaration of Paul Grant in Support of Motion for Recusal.

As Mr. Ulbricht established in his Motion, the record shows that a few of the prospective jurors wrote their juror number, not their full names, in the space provided for them to write their full names.  Doc. 302, Declaration of Paul Grant in Support of Motion for Recusal.

It is not clear from the record who presented the juror questionnaires to the 183 prospective jurors.  As Mr. Ulbricht stated previously, he has learned from discussions with the jury administrator and her staff, that when prospective juror panels are brought into the courthouse to fill out juror questionnaires, the panels are turned over to the trial court for administering of juror questionnaires.  See Doc. 313, Request to Add Jury Selection Documents and Records to the Public Docket, at page 4.

It is not clear from the publicly docketed record, whether there is a record of the administering of the juror questionnaire in this case, but the jury administrator and staff said that decision was up to the judge and one would have to ask the judge to find out if such a record was made.  Doc. 313 at page 4.  Mr. Ulbricht did ask the court if a record of those proceedings was made.  *Id*. The court declined to answer the question.  Doc. 314.

Without any record of what instructions were given to the 183 prospective jurors when they were asked to fill out the juror questionnaires, one can still make educated guesses about what they were told.  Based on the written responses of the jurors, *i.e.,* based on the information that jurors did and did not provide on their questionnaires, it is reasonable to surmise that the jurors were given instructions similar to the following:

(a)  ***"Do not write your names on Page 1 of the questionnaire where the form asks you to provide Your Full Name."***  This is a reasonable inference since the overwhelming majority (180 out of 183) of jurors either did not provide their names, or wrote their names and then crossed them out.  The jurors would have written in their names where their names were required, if they had not been instructed not to.

2

(b) ***"If you already did write your name on Page 1 of the form, cross it out."*** This is a reasonable inference since out of the 14 jurors who did write in their names, 11 crossed their names out.

(c) ***"If you have not written anything in the space provided for your name, either leave the space blank or draw a line through that space."*** This is a reasonable inference because the overwhelming majority of prospective jurors either left the space blank or drew a line through it.

(d) ***"Your names will not be used in this trial proceeding.  You will only be referred to by your juror numbers."*** This is a reasonable inference because several prospective jurors wrote their assigned Juror Number in the space provided on the questionnaire for them to write their full names.  Why else would a juror write their Juror Number in a space provided for them to write their name?

This last inference is also supported by the fact that during in-court *voir dire*, the record shows that each of the jurors spoken to was referred to by the court or the courtroom deputy, by their juror number, and none were referred to by their name.  See generally the Transcript of Jury *Voir Dire* (which will be, but has not yet been placed on the public docket); Doc. 314, court order to place that transcript on the public docket).

Without a record of what was said to the 183 jurors, there is no way to guess what else they may have been told.  There is no way to know what the prospective jurors were told as to why a decision had been made, after the questionnaire was printed, that they should not write their names on the form in the space set aside for their names, or why their names would not be mentioned in this case.

(2)     The trial court's assertion that Mr. Ulbricht's Motion for Recusal contained many misstatements of the record, prompted Mr. Ulbricht to request that the relevant record be made available to the public, so that the public could determine what was in the record. Doc. 313, Request to Add Jury Selection Documents and Records to the Public Docket.

In that request, presented in the interests of his rights to a fair and public trial, in the interest of the openness of judicial proceedings, and in the interest of fundamental justice, Mr. Ulbricht requested three items be added to the public docket: (1) the transcript of the in-court jury voir dire; (2) the filled-out juror questionnaires; and (3) any record of the administering of the jury questionnaire proceedings.  Doc. 313.

The court responded to Mr. Ulbricht by granting the first request, but denied requests (2) and (3).  The court offered as the reason for refusing the request to make the juror questionnaires public, that the form itself stated that "All information contained in this questionnaire will be kept confidential and under seal."  That promise is not an adequate finding to justify sealing a court record.  See below.

The court declined to answer the question whether there is a record of the proceeding in which the jury questionnaire was presented to the 183 prospective jurors (regarding request (3)), but the court also denied Mr. Ulbricht's request to make that record public.  The court did not offer any reason why that record (if it exists) should be kept secret.

(3)     The trial court has recently (February 13, 2018) stated, in responding to Mr. Ulbricht's request to make the jury selection records public, "***to dispel a misconception, the jury in this case was not 'anonymous.' Counsel of record always had access to the names and addresses of the full venire panel***." Doc. 314.

This statement from the court appears to be a direct response by the court to Mr. Ulbricht's claim in the Motion for Recusal, that the court did empanel an anonymous jury, without request, without making findings, and without notice to the public or to the defendant. Since the court's statements in Document 314 appear to be made in response to Mr. Ulbricht's Motion for Recusal, <u>Mr. Ulbricht is responding in this Petition to statements in Documents 313 and 314, as collectively containing the court's response to his Motion for Recusal.</u>

(a)     The jurors' names, but not their addresses, were  disclosed to the lawyers, but not to the public.  Based on the (sealed) record available to undersigned counsel, it appears that counsel of record for both the government and Mr. Ulbricht were provided the names of the 183 prospective jurors.  It does not appear, however, that counsel of record were provided with the addresses of any of the prospective jurors.  Counsel of record appear to have been provided with the name of the city in which each prospective juror lived, but not with any of their addresses.  Declaration of Paul Grant in Support of Petition for Rehearing and Motion for Reconsideration of Denial of Motion for Recusal.

Based on the sealed and unsealed record available to undersigned counsel, it does appear the court is factually mistaken - *i.e.*, the jury empaneled was, in fact, an anonymous jury. Their names were not disclosed to the public.

(b)     The court did empanel an anonymous jury.  That action had consequences.

The entire prospective jury venire of 183 persons was informed that the jurors should not provide their names on their juror questionnaires, despite the fact that the questionnaire called for them to provide their full names, and despite the fact that they were promised - on the questionnaire - that their responses would remain confidential and under seal.  If their responses would never to be revealed, why did the jurors need to avoid writing their names on the questionnaires?   What extraordinary circumstances required instructing the jurors not to write their names on the forms?  What danger were the jurors in?  And from whom?

It appears from the sealed record that some or all of the 183 prospective jurors were told that their names would not be mentioned in this case and that they would only be identified by their juror numbers.  See above. The not-yet docketed transcript of the jury voir dire shows that neither the court, the courtroom deputy, or counsel referred to any of the jurors by their name

during in-court proceedings.  Transcript Jury Voir Dire, generally.

The trial transcript shows that those members of the jury panel that brought back the verdict in this case were told upon their discharge that they would not have to tell their names to anyone:  *"You need give no one your name. You need give no one any information at all."*  Doc. 220, Tr. (2/4/2015), at 2339 (page 89 of 92).

Anonymous means: "not identified by name; of unknown name.  Origin: Late 16th century: via late Latin from Greek anōnumos 'nameless' (from an- 'without' + onoma 'name') + -ous."  English Oxford *Living* Dictionaries. https://en.oxforddictionaries.com/definition/anonymous

Mr. Ulbricht's jurors appeared in court and were not identified by name.  Thus, they were anonymous.

The question is not whether counsel knew the jurors' names, but whether the public did. When a judge decides to prevent the names of the jurors from being disclosed to the public, and implements that plan, the jury empaneled is an anonymous jury.  *See U.S. v. Barnes*, 604 F.2d 121, 137 (2nd Cir. 1979).  An anonymous jury is a jury where the members' names were not disclosed to the public. Mr. Ulbricht's jury was an anonymous jury.

"A judge may properly determine to empanel an anonymous jury if the judge finds strong reason to think that the jury deserves protection, and if the court takes appropriate measures to minimize the prejudicial impact a decision to empanel an anonymous jury may have on the jurors' opinion of the defendant."  *U.S. v. Thomas*, 757 F.2d 1359, 1365 (2nd Cir. 1985).  Empaneling an anonymous jury does impose a burden on the presumption of innocence, and must receive close scrutiny. *See Id.*, at 1363.

The reason empaneling an anonymous jury will prejudice the defendant is that the jurors will likely attribute the need for hiding their names from the public (and from the defendant), to some possible threat that the defendant or his supporters may pose to them.

Here, the court's action was unannounced and thus not publicly visible.  The sealed and unsealed record shows that neither party requested an anonymous jury; no argument from counsel was entertained; no findings were made; and no effort was made to minimize the harmful impact that empaneling an anonymous jury would have on Mr. Ulbricht's right to be presumed innocent. The court did make sure the jurors' names remained confidential, even to the point of telling the prospective jurors not to write their names on their already-confidential questionnaires.

The sealed and unsealed record, including the transcript of the jury voir dire, shows, contrary to what the court now states (Doc. 314), that Mr. Ulbricht's jury was, in fact, an anonymous jury.

The trial court's hidden implementation of a plan to empanel an anonymous jury provides

the appearance that the trial court judged Mr. Ulbricht to present a threat to the jurors, decided to empanel an anonymous jury, and did so, without revealing to Mr. Ulbricht or to the public what the court had done. The act of empaneling an anonymous jury imposed a severe burden on Mr. Ulbricht's right to be presumed innocent.

Because the record in this case shows that the trial court took hidden actions which ignored and compromised Mr. Ulbricht's right to be presumed innocent, a reasonable person might well question the impartiality of the court, thus requiring that the judge recuse herself.  *See U.S. v. Carlton*, 534 F.3d 97, 100 (2nd Cir. 2008).  "The goal of section 455(a) is to avoid even the appearance of partiality."  *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988).

Mr. Ulbricht described what the record shows and does not show about the court's actions in his Memorandum in Support of the Motion for Recusal (Doc. 301), with specific references to the record, where the record exists.  The Court's order (Doc. 313) does not rebut any of the facts presented by Mr. Ulbricht.

(c)      The court has kept the juror questionnaire and other jury selection proceedings secret.

The Court's order (Doc. 314) denying Mr. Ulbricht's request to make the juror questionnaires public, pointed to the promise on the form that the information provided would be kept confidential and under seal.  The Court's order did not address the case law provided by Mr. Ulbricht that shows the law favors public court proceedings, not secret ones.  "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury."  *In re Oliver*, 333 U.S. 257, 270 (1948).  A public jury selection process, with jurors identified, encourages honest responses, discourages perjury from jurors, and protects the defendant's right to the presumption of innocence.

When the court (or the court's surrogate) told prospective jurors not to write their names on their questionnaires; and told them that anything they wrote on their questionnaires would be kept confidential and under seal; and when the court made sure that jurors were only referred to by their juror numbers in court, the court sent a message to the jurors: their identities were secret and that they would not be held accountable to the public for what they said on their questionnaires or for what they said in court.

The court's refusal to add the juror questionnaires to the public docket did not explain why secrecy is necessary, nor why Justice Harlan was wrong when he wrote:  "The public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings."  *Estes v. Texas*, 381 U.S. 532, 588 (1965) (Harlan, J.,concurring).

The court mentioned (Doc. 314) that the parties did not object to sealing the juror questionnaires but overlooked Mr. Ulbricht's declaration, in which he stated: he never waived his right to a public trial; he didn't waive his right to be present at all critical stages of his trial

proceedings; and he never authorized his lawyer to waive any of his fair trial rights. Doc. 303. Mr. Ulbricht did not waive his rights to object to secret jury proceedings. See generally, Declaration of Ross Ulbricht Regarding Non-Waiver of Rights (Doc. 303).

The court's order refusing to add the juror questionnaires to the public docket does not provide any explanation why the juror questionnaires could not be redacted if they contained any sensitive personal information. *See Press-Enterprise Co. v. Superior Court (Press-Enterprise I)*, 464, U.S. 501, 505 (1984). The court's order does not state that there is any sensitive personal information that needs to be protected. The court's order presumes that continued secrecy is a value that should be maintained, without explaining why.

When the court decides to seal a record of proceedings in a criminal case, "the judge must articulate on the public or sealed record a sufficiently detailed basis for his serious concern about public dissemination risks . . and his preference for [sealing] over alternative remedies." *In Re Application of The Herald Co.*, 734 F.2d 93 (2nd Cir. 1984) (dealing with the First Amendment right of access to court proceedings). The trial court has not indicated that there is any record of the court having made findings justifying sealing of the juror questionnaires.

A criminal defendant's Sixth Amendment right to an open jury selection process is . . . as extensive as the public's right of access under the First Amendment. *Presley v. Georgia*, 558 U.S. 209, 212 (2010). In any case where closed jury selection proceedings are utilized, the trial court must make findings adequate to support the closure. *Waller v. Georgia*, 467 U.S. 39, 45 (1984). The court's order (Doc. 314) refusing to add the juror questionnaires to the public docket, defies the teachings of *Waller*.

The secret jury proceedings described above "can only breed ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 587 (1976) (Brennan, J., concurring). Where a judge's impartiality can reasonable be questioned, the judge has a duty to recuse herself. 28 U.S.C. § 455(a).

"[F]ree and robust reporting, criticism, and debate can . . . improve the quality of that system by subjecting it to the cleansing effects of exposure and public accountability." *Nebraska Press Ass'n v. Stuart*, 427 U.S. at 587, *supra*, (Brennan, J.,concurring).

The court's pronouncement (Doc. 314) that the jury was not anonymous, does not address the record-based facts discussed above.

The guarantee that a trial will be conducted in public view, without secret proceedings, is "a safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver, supra*, at 268-270. Conversely, hiding jury proceedings or records of jury proceedings, including juror questionnaires, provides the opportunity to use the courts as instruments of persecution. Guaranteeing public access to records of judicial proceedings is an effective restraint on abuse of judicial power. *See Id.*, at 270.

7

Secret judicial [and jury] proceedings are a "menace to liberty . . . justice cannot survive behind walls of silence." *Gannett Co. V. DePasquale, supra*, at 412 (Blackmun, J., concurring in part and dissenting in part).

Secret Juror Elimination Proceedings

The trial court not only conducted the jury questionnaire proceeding outside of court and off the record, the court then joined with counsel for the government and defense counsel to eliminate half (92 out of 183) of the prospective jurors through further out-of-court, out of public view, and unrecorded *juror elimination* proceedings.

Counsel for the government and defense counsel consulted in private and agreed to eliminate 59 out of the 183 prospective jurors who filled out juror questionnaires, and the court accepted their recommendations.  See Doc. 144, Order.  No discussion of the reasons for striking any of those jurors was provided on the record.  The trial court then eliminated an additional 33 jurors, on her own motion, out-of-court, and with no explanation offered why the judge eliminated any of those jurors.  Doc. 144.

There is no record as to why any of these 92 jurors were eliminated from the prospective jury panel.  These were not public proceedings.  Mr. Ulbricht was not present to witness these proceedings.

The results of the hidden or secret jury selection proceedings in this case can be summarized as follows: juror questionnaires were presented to 183 prospective jurors in a proceeding the trial court chose not to record; the jurors were promised that their responses on the questionnaires would remain confidential and sealed; the prospective jurors were told not to write their names on the questionnaires which were always going to remain secret and sealed, anyway; and the judge and the attorneys eliminated 92 out of 183 jurors.  All of this was done off the record, out of court, out of public view, and out of the defendant's view and presence.

The jurors were put on notice through these highly unusual proceedings, that the trial court was going to great lengths to protect their anonymity.  That action severely compromised the defendant's right to the presumption of innocence.  That action also gave jurors the idea that whatever they said would likely remain unattributed to them, thus increasing the chances that some of the jurors may have chosen to be less than truthful.  An anonymous juror can deny a bias, or make one up, for the purpose of getting selected to, or excluded from a jury, with little chance of getting caught.

Jury selection proceedings are presumptively open to the public.  *See Press-Enterprise I* at 505.  That is a right of the public and of the defendant.  *Presley v. Georgia,* 558 U.S. at 212.

The court's recent efforts to maintain the secrecy of the jury questionnaire proceedings give the impression that the court was at the time of trial, and still is, committed to secret jury selection proceedings, and call into question the impartiality of the court.  A fair and impartial judge should be expected to protect the defendant's right to a public trial, and should not be

expected to invent ways to circumvent the public jury selection processes which are guaranteed by the First and Sixth Amendments.

<u>The Threat To Empanel An Anonymous Jury</u>

      As Mr. Ulbricht pointed out in his Memorandum In Support of Motion for Recusal, the trial court made statements during the first day of trial that had the effect of concealing from the public and from Mr. Ulbricht that an anonymous jury had been empaneled.  Memorandum at 3. During that first day, and after the jurors had been sworn, the court threatened to empanel an anonymous jury.  Tr. 1-13-2015 at 116.  That statement does not make sense.  If the jury was not already anonymous, their names would have been known to the public and there would have been no way to make that jury anonymous.  A new trial and a new jury would have been required.

      But that is not what the trial court had in mind.  The court knew the jury was already anonymous and admitted as much when the court stated  "we won't let it go any longer than that because it's a classic reason to allow for *additional procedures*." Tr. 1-13-2015 at 103 [emphasis added].  A judge cannot anonymize a jury where the jurors have already been identified by name in open court.  The judge can, however, add "*additional procedures*" for protecting an already anonymous jury from unwanted contact, procedures such as what the court described as having the jurors "brought out to a different place and brought in specially. . ."  Tr. 1-13-2015 at 102.

B.   The court's order (Doc. 313) denying the Motion for Recusal, did not address Mr. Ulbricht's contention that by instructing the jury that they would be receiving all the evidence they needed to reach their verdicts, and by assisting the prosecutor by offering advice on how to strengthen the presentation of his case to the jury, the trial court appeared to be helping the prosecutor convince the jury to convict.

      The arguments and facts presented stand unrebutted.

C.  The court's order (Doc. 313) denying the Motion for Recusal did not address Mr. Ulbricht's arguments that the remarks made by the trial court at sentencing display judicial bias in that the court's remarks would cause a reasonable person to believe that sentence was imposed, at least in part, because of the trial court's hostility toward and fear of Mr. Ulbricht's political or philosophical views.

      The arguments and facts presented stand unrebutted.


*3.  Recent Action By The Court Bolsters The Arguments For Recusal.*

      In addition to the facts established in the Motion for Recusal, recent action by the court provides further support for the Motion for Recusal.  Mr. Ulbricht calls the court's attention to the following:

On 2/5/2018, Mr. Ulbricht made a timely request (Doc. 307) for an extension of time to file his Rule 33 Motion for a New Trial Based on Newly Discovered Evidence.  The court denied the motion on the same day.  Doc. 309.  In the court's order denying the motion, the court stated, in part: *"Whatever is in the file was necessarily known to prior counsel."*

In the motion requesting an extension of time, Mr. Ulbricht made known to the court that prior counsel had refused since he was terminated in the first week of June 2017, to provide his complete client file to undersigned counsel.  Prior counsel who has been terminated yet refuses to turn over the client file to new counsel, has abandoned his client and no longer represents his client.

It is remarkable that the court did not see good cause for an extension of time, in Mr. Ulbricht's need for his client file.  It is remarkable that a judge would suggest that Mr. Dratel, who abandoned Mr. Ulbricht, can be trusted to have protected Mr. Ulbricht's right to research and submit a Rule 33 Motion, during a period of more than eight months after his representation was terminated.

The court had no reason to suggest that Mr. Dratel has been representing Mr. Ulbricht's best interests since he was terminated.  The court had no reason to believe that Mr. Dratel was adequately representing Mr. Ulbricht's interests at many points before or during the trial, either.

At one point in these proceedings, in an order precluding defense experts for inadequate and belated disclosure by the defense, the court expressed concern and wrote at great length about numerous unfathomable decisions made by Mr. Dratel during trial and pre-trial proceedings.  See Doc. 173.

The court described as a tactical decision Mr. Dratel's decision to wait until [too] late in the trial to disclose his experts, but questioned those decisions since Mr. Dratel knew the rules.  Doc. 173 at 3.  The court wrote that the "defense's decision to put in such belated and substantially inadequate notices of expert witnesses was a tactical choice."  Doc. 173 at 6.  The court stated that a consistent body of case law "leaves no doubt that such disclosures are inadequate."  *Id.*

The court speculated as to what Mr. Dratel's motives might have been in making his belated and obviously inadequate expert disclosures - accumulating appeal points, perhaps; perhaps something else.  Doc. 173 at 8.  The court made the point that choices have consequences, and then excluded both proffered defense experts.  Doc. 173 at 2; 18.

Mr. Dratel is an experienced criminal defense attorney and he had to know that his expert witness disclosures were inadequate, so why did he bother?  Mr. Dratel's many strange decisions in this case were motivated by something, but not, apparently, by his concern for the best interests of his client.  Whatever his agenda may have been, Mr. Dratel appears to have abandoned his client during the trial, and post-trial proceedings.

Considering the court's lengthy written comments on various incidents of peculiar and inexplicable defense counsel behavior that resulted in harm to Mr. Ulbricht, or that at least resulted in wasted effort and resources, it is entirely unreasonable for the court to now say that trial counsel knew what was in Mr. Ulbricht's file, implying that trial counsel was looking out for Mr. Ulbricht's interests. The court knew when denying the requested extension of time, that prior counsel had been terminated and had refused to turn over the complete client file, and that Mr. Ulbricht had retained undersigned counsel to help him research and submit his Rule 33 Motion. Prior counsel's refusal to turn over the complete client file has obstructed that effort.

The court's suggestion that prior [but terminated and non-cooperative] counsel was looking out for Mr. Ulbricht's interests and right to pursue a Rule 33 Motion was absurd. That statement would cause a reasonable person to question the impartiality of the court.

## CONCLUSION

For all the reasons stated above, the court should grant this petition for rehearing and motion for reconsideration, vacate the order denying the Motion for Recusal, and the trial court should recuse herself from further proceedings in this case.

Respectfully submitted,

/s/ Paul Grant
Paul Grant
Counsel for Ross William Ulbricht

cc: Eun Young Choi (by ECF)
    Assistant United States Attorney

11