UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA, | 14 Cr. 68 (KBF) |
| Plaintiff, | DECLARATION OF PAUL GRANT IN SUPPORT OF MOTION PURSUANT TO 28 U.S.C. § 2255 |
| -v- | |
| ROSS WILLIAM ULBRICHT, | |
| Defendant. | |

------------------------------------------------------X

I, Paul Grant, pursuant to 28 U.S.C. § 1746, hereby affirm under penalty of perjury:

I am an attorney licensed in the State of Colorado and admitted *pro hac vice* in this case for purposes of my representation of Ross Ulbricht in this matter. I state the following to be true:

1. I represent Mr. Ulbricht in this matter in his pursuit of relief pursuant to 28 U.S.C. § 2255. I make this Declaration in support of Mr. Ulbricht's motion for relief.

2. The bases for the motion are set forth in the accompanying Memorandum of Law. Mr. Ulbricht respectfully requests that the facts set forth within the Memorandum of Law, be incorporated by reference into Mr. Ulbricht's motion.

3. On October 10, 2017, I requested post-trial discovery on behalf of Mr. Ulbricht from the United States Attorney's Office for the SDNY ("USAO") relating to all pen-trap orders,

including four of the five known magistrate's pen-trap orders,[1] each of which was dated in September 2013. Each of those five orders authorized the collection of pen register and trap and trace data ("PRTT" data). I already had the data resulting from one of the orders.

4. In November 2017, the USAO advised me that they were searching for those records in FBI files. On February 2, 2018, three days before Ulbricht's Motion for a New Trial was due, the USAO advised me that they had located some files that apparently contained PRTT data, and that they would send me those files.

5. Upon being retained to represent Mr. Ulbricht, I requested all discovery from trial counsel (Joshua Dratel) for Mr. Ulbricht, and he did provide me with significant amounts of discovery in various digital formats, but he did not provide me with any PRTT data files resulting from any of the five pen-trap orders signed by the magistrates.

6. I have also requested PRTT and other electronic surveillance data from the FBI through a FOIA request, the FBI responded that some of the records being sought are in the control of the Executive Office for United States Attorneys, and to date, the FOIA request has resulted in no PRTT or any other electronic data being provided - or offered - to me.

7. It is my understanding from talking to trial counsel and his co-counsel, Joshua Horowitz, that the government provided the defense with pre-trial discovery in this case on multiple occasions, beginning with the government providing to the defense several terabytes of data on auxiliary hard drives. Supplemental discovery was provided on several occasions after the initial production, and that supplemental discovery was typically provided to trial counsel on DVDs or

---

[1] These were orders authorizing the collection of pen register or trap and trace data from computer networks supposedly used by Ulbricht. See Doc. (From the public docket) 47, Declaration in Support of Pre-Trial Motions, ¶ 3(c), 3(d), 3(e), 3(g), and 3(h).

thumb drives. It was the practice of trial counsel to copy the DVD or thumb drive materials onto his office computer, then pass the DVD or thumb drive on to Mr. Ulbricht for his use. Mr. Ulbricht was also provided his own copies of the initial discovery on hard drives provided to him, as well as a computer that he could use to review the discovery from time-to-time, while he was incarcerated and awaiting trial.

8. The only PRTT data I have ever received in this case came in the form of (1) pcap-formatted files (called Ulbricht Home Comcast 67.169.90.28), files provided to Mr. Ulbricht by trial counsel before trial (and to me after the trial), and in the form of (2) csv-formatted files from the USAO, provided to me in 2018, 3 years after the trial.

9. I have requested assistance in analyzing the PRTT data available to me, from cybersecurity expert Andrew Sayler, who I provided with the pcap files produced in pre-trial discovery, and with the csv files produced in 2018. I have also asked Mr. Sayler to examine the search warrant materials the government used to obtain the search warrant authorizing the government to search and seize Mr. Ulbricht's laptop computer.

10. I have examined the records of trial counsel that were delivered to me and talked to trial counsel and to his technical matters co-counsel, Josh Horowitz, and have found no indication that trial counsel ever examined the PRTT data that he apparently received and passed on to Mr. Ulbricht, or that he realized that he was not provided with the PRTT data that was referenced in the laptop and residence search warrant applications.

11. I have read the book "American Kingpin" by Nick Bilton, a 2017-published book about the government's investigation into the Silk Road, including Bilton's account of what he claims that he was told by agents who conducted surveillance of Ulbricht's residence in San Francisco, a

short time before Ulbricht's arrest on October 1, 2013. His account correctly identifies several agents who were involved in that surveillance, as I know from having reviewed the trial transcripts and the discovery produced in this case. Based on the discovery provided to the defense, and on the testimony at trial, Bilton's description of the involvement of FBI special agents Christopher Tarbell and Thomas Kiernan, and of HSI special agent Jared Der-Yeghiayan, is consistent in some details with their accounts of their involvement, but adds additional detail regarding undisclosed surveillance of the interior of Ulbricht's residence.

12. Based on my examination of discovery provided to me by trial counsel and by Mr. Ulbricht, and on data later provided to me by the USAO, it appears that the PRTT data I provided to Mr. Sayler for examination, data in pcap files and in csv format, was all of the PRTT data that has ever been provided to the defense in this case.

13. I have, to the best of my ability, examined all of the files in Mr. Ulbricht's case that were provided to me by his trial counsel, Joshua Dratel. Those files include discovery materials and 3500 material provided by the government, some of the work product of trial counsel and his team, some correspondence involving trial counsel and the trial court, and some correspondence involving trial counsel and counsel for the government.

14. I have reviewed case-related materials that are found in the public record, including pleadings and hearing and trial transcripts, as well as court communications and orders. I have also reviewed those sealed records filed in this case that were made available to me by the trial court or by trial counsel.

15. Based on my review of the materials available to me, it does not appear that trial counsel ever examined the pen register and trap and trace ("PRTT") data that was provided to him in

discovery. It also does not appear that trial counsel retained a copy of the PRTT data he had been provided in discovery because he did not provide me with a copy of that data. I obtained a copy of the PRTT data that was provided by the government to the defense, directly from the defendant, who apparently had received his copy from trial counsel.

16. Based on my review of the work product and other materials provided to me by trial counsel, it does not appear that trial counsel investigated the veracity of the statements made in the laptop (and residence) search warrant applications. If he had investigated these matters, he would have discovered (as I have) that many false statements were contained in the applications. If he had investigated these matters, he would also have discovered (as I have) that the government never produced in discovery the PRTT data that it claimed (in the laptop search warrant application) to have collected.

17. If trial counsel had thoroughly investigated these matters involving the laptop search warrant application, he would have found a basis for challenging the validity of the laptop search warrant.

18. I have reviewed the public record and those portions of the sealed record made available to me and found no record of any court or other explanation why the defense spreadsheet providing anticipated objections was filed under seal, or why the government's "exhibit chart" was never filed on either the public docket or in sealed records.

19. I reviewed the public record in this case as well as the sealed records made available to me, and discussed filing procedures with trial counsel, and it appears that numberous documents were sent to the trial court by email, but those documents never became part of the official record.

20.  I have reviewed client files provided to me by trial counsel, as well as publicly available trial records, and found no indication that trial counsel ever requested expert disclosures from the government.

21.  I found no documents or other indication that showed that the government ever provided any notice that they intended to introduce any expert testimony at trial.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 28th day of June, 2019.

                                                /s/ Paul Grant
                                                Paul Grant