UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA,                    14 Cr. 68 (LGS)

                Plaintiff,                    DECLARATION OF ROSS
                                              ULBRICHT IN SUPPORT OF
                                              MOTION PURSUANT TO
                                              28 U.S.C. § 2255

       -v-

ROSS WILLIAM ULBRICHT,

        Petitioner- Defendant.

-------------------------------------------------------X

      I, Ross Ulbricht, pursuant to 28 U.S.C. § 1746, hereby affirm under penalty of perjury:

I am the petitioner and defendant in this case and I state the following to be true:

1.  I was represented during pre-trial and trial proceedings, including sentencing, and during my direct appeal, by three lawyers, lead counsel Joshua Dratel ("trial counsel"), Lindsay Lewis ("co-counsel"), and Joshua Horowitz, who dealt with technical matters.

2. Prior to trial, I discussed with Mr. Dratel his strategy in defending me at trial, if we chose to go to trial. I told Mr. Dratel that if we went to trial, I wanted him to contest my guilt and put the government to its proof, and he assured me that he would. He did not guarantee my acquittal, but he did lead me to believe that he would vigorously defend me against the charges. We did discuss the possibility of a plea bargain but I ultimately decided I would go to trial and hope for the best. I never authorized him to concede my guilt on any of the charges.

3. Mr. Dratel assured me that he was highly experienced in handling complex federal trials and

he explained that although the case would be difficult, we did have a viable defense.

4. Shortly before the trial began, Mr. Dratel informed me that, as part of his strategy, he was going to admit in his Opening Statement that I had created and managed the Silk Road website. He said that he still had a strategy that would allow him to persuade the jury that I was not guilty of the charges. He did not explain to me how that would work.

5. Later on in the trial, Mr. Dratel told me he was going to stipulate to the admissibility of government evidence regarding drugs purchased on the Silk Road website by undercover agents, including the fact that two DEA labs had verified that the substances purchased by the undercover agents were indeed illegal drugs, as advertised on the website. Trial counsel assured me that these stipulations were consistent with defending me against the charges. I did not realize that trial counsel's stipulations and admission of my role were concessions of my guilt. I expected him to challenge the government's evidence and the credibility and knowledge of its witnesses.

6. Mr. Dratel never told me my defense was hopeless. If he had, I would have chosen to plead guilty to the charges against me, even though I would have hoped to get something in return, in the form of a plea bargain or, at the least, a reasonable chance of less than a life sentence. I went to trial hoping for acquittal, but realized that was a long shot. I did not put myself and my family through the anguish and expense of a trial for the purpose of having my lawyer concede my guilt. If I had intended to plead guilty, I would not have gone to trial.

7. I did discuss the possibility of a plea bargain with trial counsel, before the first indictment. He told me that under the charges in the complaint, I was facing a possible sentence of from 10 years to life, and if I pled guilty to the charges in the complaint before the indictment issued, I

could avoid being charged with engaging in a continuing criminal enterprise. He informed me that the CCE charge would increase my sentencing exposure to 20 years to life, with 20 years being the mandatory minimum sentence I could receive. Trial counsel told me that the government's position was that if I took the plea, the government would argue for an offense level of 50, but at least I would have the chance to ask for a sentence of less than 20 years. Trial counsel recommended I reject the government's offer because the sentencing exposure was too great, there was nothing to be gained by pleading guilty, and nothing to lose by going to trial. I was advised to make a counteroffer. I asked trial counsel to counter with an offer to plead guilty to the complaint if the government would recommend a sentence of 18 years, or if they would recommend a sentence of 10 - 20 years. I was later told that my counteroffer had been rejected.

8. When I had my initial discussions regarding the possibility of pleading guilty to the complaint, trial counsel had not yet received any discovery from the government.

9. The initial indictment in this case was filed on February 4, 2014. See Doc. 12. The indictment contained four charges against me: conspiring to violate the narcotics laws by means of the internet, engaging in a continuing criminal enterprise, engaging in a computer hacking conspiracy, and conspiring to launder money. Doc. 12. I was arraigned on that indictment on February 7, 2019. See Doc. 23, Transcript of Arraignment and Pre-Trial Conference. The government asked for a 90 day schedule to provide their initial discovery. Doc. 23 at 5.

10. Before recommending I reject the initial plea offer, trial counsel did not advise me as to our possible defenses at trial, or as to what he thought about the strength of the government's case or of our defenses. I relied on his advice, rejected the offer, but asked that he present a counteroffer.

3

11. I was not advised that I would have a better chance of avoiding a life sentence if I pled guilty. A couple of months before my trial, I told co-counsel Lindsay Lewis that I had heard from other jail inmates that defendants who go to trial tend to be sentenced more harshly if convicted at trial and I asked her if there was a way I could avoid a life sentence. She told me that defendants who go to trial and lose do tend to suffer a "trial tax." She told me that pleading guilty would not help because the 3 point reduction I would get for accepting responsibility would not reduce my guidelines sentence calculation below the maximum offense level, so I would still face the same sentence. I asked Lewis to convey a new offer on my behalf: I would plead guilty to the superseding indictment if the government would recommend a sentence of 30 years. She told me she did not think the government was open to further plea negotiations. I had no further discussions about a possible plea bargain, not with trial counsel or with co-counsel.

12. Neither trial counsel nor co-counsel advised me that I was likely to be acquitted at trial, but they did advise me that I was not risking much by going to trial. Trial counsel never discussed with me what the odds are of winning acquittal in a federal criminal case. I learned much later that the odds are roughly 100 - 1 against an acquittal. Trial counsel never told me that 97% of all federal defendants plead guilty because most defense attorneys and defendants typically consider going to trial too risky and as likely to result in a harsher sentence (the "trial penalty") if the defendant is convicted at trial. I was not told (but learned later) that during 2012 and 2013, 97% of all federal defendants convicted in the United States pled guilty prior to or during trial. United States Attorney's Annual Statistical Reports, Fiscal Year 2012, 2013. I was not told that in 2012, 4 defendants were found not guilty, 1217 not guilty, or that in 2013, two defendants were found not guilty, and 1181 defendants were found guilty, in the Southern District of New

York.  See Id.  I was not told that in 2012 and 2013, 3% of federal criminal defendants went to trial, or that more than 90% of those who went to trial were convicted at trial.  Id.  I was not informed that fewer than 1% of federal criminal defendants in the United States were found not guilty in 2012 or 2013.  Id.  Had I been made aware of those or any similar statistics, at any point in time, I would have pled guilty and done what I could to minimize my sentence.

13.  I did my best to study, understand and exercise my rights throughout all stages of pre-trial and trial proceedings.  I asked my counsel to explain to me all legal proceedings in my case and all of my rights in my case.

14.  I did my best to assert my rights whenever given the opportunity to exercise my rights.

15.  I understand that I have various fair trial, public trial, and due process rights as a criminal defendant, rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution.

16.  I consider my fair trial, public trial, and due process rights as fundamental and important rights I would not waive or compromise or surrender.

17.  I did not knowingly or intentionally waive my fair trial, public trial, or due process rights.

18.  I did not knowingly or intentionally waive my right to trial by a fair and impartial jury.

19.  I did not knowingly or intentionally waive my right to have my trial presided over by a fair and impartial judge.

20.  I did not knowingly or intentionally waive my right to a public and speedy trial.

21. I did not knowingly or intentionally waive my right to be present at all critical stages of my case and my trial.  I attempted to understand all of the trial proceedings, to the best of my ability, but I could not follow the trial discussions regarding admission of exhibits, objections to

exhibits, rulings on the objections, objections to questions to witnesses, and rulings on objections to questions. I could not follow those discussions because the lawyers and the judge did not make their discussions intelligible, not to me, to the public, or the jury.

22. I did not knowingly or intentionally waive my right to object to being denied any of my fair trial, public trial or due process rights.

23. I did not knowingly or intentionally waive my right to be present for and to participate in any meaningful trial proceedings, including jury selection. I was unaware of and not present when the trial judge or her staff apparently met secretly, out of court and out of public view, with 183 prospective jurors and administered juror questionnaires to those prospective jurors. I have no idea what was said to those jurors or what questions they may have asked about my case and their role as jurors, nor what they were told in response. I was not aware that the prospective jurors were told not to provide their names on their questionnaires. I was unaware of and not invited to participate in out-of-court proceedings in which my lawyer apparently reviewed filled-out juror questionnaires and negotiated with the prosecutor and reached agreement on which prospective jurors they thought should be eliminated from the jury panel. I was not present when the trial judge eliminated 33 prospective jurors based on her own private review of the juror questionnaires. I was unaware that the judge told the trial jurors not to provide their names in court, or what the significance was of an anonymous jury. I was not able to meaningfully participate in discussions with my counsel during in-court *voir dire*, concerning which jurors I wanted to keep and which jurors I wanted to strike, because the trial court did not allow us sufficient time to have such discussions. My counsel discussed these matters with a jury consultant and I was effectively left out of their discussions. My counsel did not object to my

being excluded from that process.

24. I did not knowingly or intentionally waive my right to the presumption of innocence, nor did I consent to, or waive my right to object to, the compromise or erosion of that right.

25. I did not knowingly or intentionally waive my right to object to being excluded from critical stages of the trial proceedings.

26. I did not knowingly or intentionally waive my right to any of the fair trial, public trial or due process protections afforded by the Constitution, statutes, or rules governing trial procedures.

27. I did not authorize my counsel to waive any of my fair trial, public trial, or due process rights, including, but not limited to, the specific rights mentioned above. Since my counsel had a duty of loyalty to me, I had every reason to expect that my counsel would at all times protect, and not ignore, compromise, or impair my rights.

28. My counsel did not ask me to waive any of my fair trial, public trial, or due process rights.

29. If my counsel knowingly or intentionally ignored, failed to protect, compromised or impaired my rights, including the right to determine whether I would testify, and right to decide whether I would go to trial and contest my guilt, then counsel betrayed his duty of loyalty to me.

30. During my trial, I became upset because the government was misrepresenting my character and presenting a false picture of who I am. I decided that I wanted to testify in order to give myself a chance to correct those government misrepresentations, and, possibly, to give myself a chance at a better outcome.

31. Near the end of the prosecutor's case, I met with Mr. Dratel in a holding cell just outside the trial courtroom. At that time, I informed Mr. Dratel that I had decided to testify. He was quite disturbed with my decision and he told me he would withdraw as my counsel if I insisted on

testifying. He told me I would be on my own if I insisted on testifying and that I would have to testify in a narrative format. He said that his withdrawal and my testimony in narrative form would make me look bad to the judge, the jury, and the public. He then turned around and walked out of the holding cell and we had no further discussion about whether I would testify.

32. Mr. Dratel had given me a terrible choice: either forget testifying, or give up my right to assistance of counsel. Faced with that choice, I decided not to testify.

33. Shortly after this confrontation with Mr. Dratel, I was asked by Judge Forrest if I had decided whether I would testify. I told her I had decided not to testify. Tr 2040. Mr. Dratel did not know until that moment what my decision was going to be.

34. I felt I had no choice but to abandon my decision to testify because I could not imagine completing the trial without the assistance of my lawyer, Mr. Dratel.

35. When I told Judge Forrest I would not testify, she told me that if I later changed my mind, after some of my other witnesses testified, I could "make an application to be able to testify," and that she was unlikely to preclude me. Tr. 2040. I had no idea what an application for permission to be able to testify was, and neither trial counsel or Judge Forrest explained that to me. What Judge Forrest said to me suggested that she would consider allowing me to change my mind about testifying, if I gave her a satisfactory explanation as to why I had changed my mind, including telling her what I wanted to say.

36. I had heard the judge require my trial counsel to disclose what some of our other witnesses were going to say before they were allowed to testify, and she had precluded both of our proposed experts, finding problems with their proposed testimony and the adequacy of the disclosures regarding their proposed testimony. See Doc. 173, p. 8, Order precluding testimony

would be allowed to testify about. Tr. 2069 - 2074. I had no idea what I would have to say to persuade the trial court to let me testify, or what limits she would place on my testimony.

37. Had Mr. Dratel not threatened to withdraw, I would have testified. I regret to this day that I did not get the chance to testify. I had many important things I wanted to tell the jury. I don't know if that would have changed the outcome of my trial, but it would have allowed me to explain to the jury many things which were misrepresented by the government or which were not made clear at my trial, and to correct their misrepresentation of who I am.

38. As our presentation of evidence concluded, I was still wishing that I could testify, to show the jury a more honest picture of who I am. Given the threat from my counsel and the instructions from Judge Forrest as to what I would have to do to get her permission to testify, I allowed the trial to end without me testifying.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 25th day of June, 2019.

_____
Ross Ulbricht