United States District Court
Southern District of New York

| | |
|---|---|
| United States of America, | |
| Plaintiff, | |
| v. | Case No. 1:14-cr-00068-LGS |
| Ross William Ulbricht | |
| Defendant. | |

## Ulbricht's Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255

Defendant Ross William Ulbricht ("Ulbricht"), through his counsel of record, submits this Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. As discussed below, Ulbricht received ineffective assistance of counsel ("IAC") when his lawyer advised him to forgo a favorable plea offer and proceed to trial without any viable defense. If Ulbricht had received professionally reasonable advice he would have pleaded guilty instead of proceeding to trial. Accordingly, for the reasons and arguments herein, the Court should grant Ulbricht 28 U.S.C. § 2255 relief.

# Argument

I. **ADVISING ULBRICHT AGAINST ENTERING A GUILTY PLEA THAT WOULD HAVE LIMITED HIS POTENTIAL SENTENCING EXPOSURE AND AVOIDED A SENTENCE OF LIFE IMPRISONMENT WAS INEFFECTIVE ASSISTANCE**

## A. Ulbricht Rejects Plea Offer Based on Attorney's Advice

Before his trial, the Government offered Ulbricht a plea deal. The Government's offer required Ulbricht to plead guilty to an information containing federal narcotics violations. Under the terms of the deal, Ulbricht faced a statutory range of 10 years to life imprisonment. The Government made it clear that they were free to seek a sentence of life imprisonment, even if Ulbricht accepted the deal.

Trial counsel advised Ulbricht to reject the deal and proceed to trial because, according to trial counsel, Ulbricht risked nothing: even if he went to trial and lost, Ulbricht would be in no worse position at sentencing. Ulbricht took his trial counsel's advice and rejected the plea offer even though the evidence against him was overwhelming. After Ulbricht rejected the plea agreement, the government filed an indictment that increased the mandatory minimum to 20 years due to the existence of a Continuing Criminal Enterprise charge. ("CCE"). Later, a superseding indictment was filed that added three additional charges.

To make matters worse, trial counsel conceded during the opening argument and through stipulations that Ulbricht had created Silk Road and that large quantities of narcotics were sold through Silk Road—conceding every element of the charges against Ulbricht and functionally pleading him guilty at trial. Trial counsel conceded guilt to all the elements of the offenses, despite putting forward no proof, nor defense

that Ulbricht withdrew from the conspiracy. For its part, the district court could not understand why Ulbricht went to trial, and, after counsel filed a new trial motion, the court acknowledged the nature of the evidence against Ulbricht. (*See* Doc. 237 at 3) ("The evidence of Ulbricht's guilt was, in all respects, overwhelming. It went unrebutted."). At sentencing, the court imposed multiple life sentences.

## B. Advice Given to Ulbricht was Professionally Unreasonable

Trial counsel's advice to Ulbricht constituted ineffective assistance of counsel. The assessment conveyed to Ulbricht was premised solely on the operation of the sentencing guidelines. To be sure, Ulbricht would have had nearly the same advisory guideline range had he pleaded guilty. But the Guidelines no longer control sentences; they are advisory and that is all. It is universally known among defense lawyers that judges impose lighter when defendants make timely plea agreements, accept responsibility, and exhibit remorse. It is also widely known that there is a sentencing penalty for proceeding to trial and continuing to protest innocence in the face of strong evidence. *See, e.g.*, Andrew Chongseh Kim, *Underestimating the Trial Penalty: An Empirical Analysis of the Federal Trial Penalty and Critique of the Abrams Study*, 84 Miss. L.J. 1195 (2015) ("trial penalty" refers to the substantial difference between the sentence offered in plea bargaining before trial and the sentence imposed after a trial and conviction).

Trial counsel never explained how Ulbricht faced enormous risk by going to trial. Ulbricht, who had never faced a federal felony charge before this case, was unaware that the judge could, and likely would, be more lenient if he accepted the

government's plea offer. Ulbricht was also not told how strong the evidence against him truly was. Nor was Ulbricht told that the only defense at trial would be that while Ulbricht created Silk Road, and was involved in a conspiracy to distribute narcotics, he had quit by the time federal agents arrested him—a defense that was not viable without proof of withdrawal from the conspiracy.

Ulbricht never received constitutionally adequate advice before his decision to reject the guilty plea and proceed to trial. His lawyer's advice was professionally unreasonable, and had Ulbricht received proper advice he would have pleaded guilty. The Court can provide relief by placing Ulbricht in the same position he would have been in had he received effective assistance of counsel.

In the context of a criminal prosecution, the Sixth Amendment guarantees effective assistance at all critical stages of the proceedings. *Montejo v. Louisiana,* 556 U.S. 778, 786 (2009). This right extends to the plea-bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."). If a defendant can show that his lawyer provided constitutionally deficient advice, then "prejudice can be shown if the loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.*

In order to prove ineffective assistance of counsel at the plea stage, a petitioner must show that: (1) counsel's advice was unreasonable; 2) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court," (2) "the court would have accepted its terms," and (3) "the

conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164. The record reveals that Ulbricht can satisfy *Lafler*'s requirements on every score.

### C. Counsel's Advice on the Decision Whether to Accept the Plea or Go Forward With Trial Was Constitutionally Deficient.

By the time Ulbricht's case was making its way through the courts, counsel should have been well aware of the peril of making his case for mitigation before the jury rather than a judge. It is generally known that sentencing judges impose more lenient sentences when a defendant enters a timely plea of guilty, accepts responsibility, and exhibits remorse. *See, e.g.*, Rick Jones, *Coerced Consent: Plea Bargaining, the Trial Penalty, and American Racism*, 31 FED.SENT.R. 265, 269-70 (2019) (explaining that the "average federal sentence for drug offenses for individuals who accept a plea is 5 years, 4 months" and for those who went to trial, "the average is 16 years"); Michael M. O'Hear, *Remorse, Cooperation, and "Acceptance of Responsibility": The Structure, Implementation, and Reform of Section 3e1.1 of the Federal Sentencing Guidelines*, 91 NW. U. L. REV. 1507, 1511 (1997) (explaining the "remorse paradigm" in federal sentencing that "asks whether the defendant fully and freely admits to committing the offense, whether the defendant accepts punishment as an appropriate consequence of the offense, whether the defendant regrets what was done, and whether the defendant is sincerely committed to avoiding future criminal activity").

By contrast, putting the government to its burden of proof in the face of overwhelming evidence generally means a trial penalty of a significantly longer

sentence. *See* Andrew Chongseh Kim, *Underestimating the Trial Penalty: An Empirical Analysis of the Federal Trial Penalty and Critique of the Abrams Study*, 84 Miss. L. J. 1195 (2015) (revealing that the average federal defendant who goes to trial receives a sentence 64% longer than if he had instead plead guilty); *see also* NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, THE TRIAL PENALTY: THE SIXTH AMENDMENT RIGHT TO TRIAL ON THE VERGE OF EXTINCTION AND HOW TO SAVE IT 6 (2018) (describing the "trial penalty"). Here, opting for a trial in the face of overwhelming evidence where Ulbricht risked conviction on a CCE charge and three additional counts included later in a superseding indictment, all but guaranteed Ulbricht would receive a much more severe sentence.

When the criminal complaint was filed in this case, Ulbricht stood accused of three very serious federal offenses, (Doc. 1), for which the evidence against Ulbricht was strong. Prior to filing an indictment in this case, the government presented Ulbricht with an opportunity to make essentially an open plea and avoid additional charges. (Ulbricht Declaration[1] at _). Counsel, however, advised against it. (*Id*. at __). He told Ulbricht that losing at trial would produce the same sentence outcome under the guidelines as accepting responsibility and pleading guilty, and that Ulbricht should take his chances at trial rather than accepting the government's plea offer. (*Id*. at __). Counsel failed to explain that pleading guilty typically leads to a better chance at a downward variance, whereas, proceeding to trial was likely to scuttle any

---

[1] An executed declaration based on facts within the personal knowledge of Ulbricht is forthcoming and will be submitted to the Court shortly.

meaningful attempts at mitigation. (*Id.* at __). Trial counsel also failed to explain that Ulbricht would have, at trial, limited defenses and strong evidence against him. (*Id.* at __).

Believing he had nothing to lose and everything to gain by forcing the government to carry it's burden of proof at trial, Ulbricht rejected the government's offer. (*Id.* at __). As a result, the government filed an indictment against Mr. Ulbricht that added an additional CCE count (Doc. 1). Three additional counts were also added later in a superseding indictment (Doc. 52). The jury rendered a guilty verdict on all seven counts against Ulbricht (Doc. 237 at 3, Doc. 183). His refusal to accept responsibility, among other factors, subsequently led to the imposition of multiple life terms plus forty years' imprisonment (Doc. 277 at 94).

### 1) Advice Failed to Account for Advisory Nature of Guidelines

To begin with, trial counsel was correct that accepting a guilty plea versus going to trial would not have changed the sentencing exposure under the advisory guidelines. Given the nature of the numerous offenses at issue here, even if the CCE offense was removed from the sentencing calculus, a mere reduction for acceptance of responsibility would not have affected the Total Offense Level. The narcotics violations, money laundering, and computer hacking offenses would have been grouped.[2] When an adjustment for Ulbricht's role in the offense was applied under

---

[2] The guideline for a violation of 18 U.S.C. § 1956(h) is found in § 2S1.1, and under (a)(1), the base offense level is determined by the underlying offense, namely the narcotics offenses. Per 2D1.1(a)(5), (c)(2) and app. n.8(D), Ulbricht receives 36 levels from the quantity of drugs. Per § 2D1.1(b)(2), a 2-level enhancement is applicable as the offense involved credible threats of directed violence. Per § 2D1.1(b) (7), a 2-level enhancement is applicable because Ulbricht distributed controlled substances

U.S.S.G. § 3B1.1(a), a 4-level increase would have resulted. Resulting in a Total Offense Level of 48. Under U.S.S.G. §5A app. n.2, an offense level of more than 43 is to be treated as an offense level of 43, and that meant neither a 2-nor 3-level reduction for timely accepting responsibility under U.S.S.G. § 3E1.1 would have not affected Ulbricht's Total Offense Level in any meaningful way.

Although Ulbricht's advisory guideline range would not have changed, rejecting the government's plea offer and proceeding to trial in the face of overwhelming evidence carried great risk. The Guidelines are not the end-all, be-all of federal sentencing. See *Nelson v. United States*, 550 U.S. 350, 351 (2009) ("[T]he Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable.")(emphasis added); *Hughes v. United States*, 138 S. Ct. 1765, 1776 (2018) ("To be sure, the Guidelines are advisory only, and so not every sentence will be consistent with the relevant Guidelines range."). Sentencing courts are now free to fashion a sentence independent of the guidelines, *Nelson* at 352, and the north star for federal sentencing is no longer the advisory guidelines range, but the purposes of sentencing found in 18 U.S.C. § 3553(a).

Under Section 3553(a), a court must impose a sentence no greater than necessary to comport with the statutory goals of sentencing. Consequently, the district court in this case possessed significant discretion under the § 3553(a) factors to impose a sentence well below the Guidelines range. *Gall v. United States,* 552 U.S. 38, 50

---

via mass-marketing by means of an interactive computer service. And, per § 2D1.1(b) (12), a 2-level enhancement is applicable because Ulbricht maintained a premise for the purpose of manufacturing or distributing a controlled substance. Finally, accepting guilt for violating 18 U.S.C. § 1956, would have produced an additional 2-level increase, producing a total of 44.

(2007). Indeed, district courts within the Second Circuit have in the past issued a majority of sentences outside "the calculated Guidelines range." (Doc. 252 at 68) (quoting U.S. SENT. COMM'N., PRELIMINARY QUARTERLY DATA REPORT __ (2014). Despite the severity of the offense and obvious need for a significant prison sentence, a timely admission of guilt had the potential to cast Ulbricht's case for mitigation in an entirely different light and potentially avoid a sentence of life imprisonment.

Trial counsel's advice at the time Ulbricht rejected the government's plea offer failed to address the possibility of a variance from the sentencing guidelines and how that possibility would be compromised by contesting his guilt at trial. His advice did not convey to Ulbricht how the federal sentencing process works, in a world of advisory sentencing guidelines, and how Ulbricht's claim of mitigation at sentencing would have been significantly bolstered by a timely acceptance of a guilty plea. These failures are especially troubling since trial counsel would later concede guilt during Ulbricht's trial.

Reasonably strategy in a case where the evidence of guilt "was, in all respects, overwhelming" that went virtually "unrebutted" at trial, was to advise Ulbricht to take responsibility for these crimes at a stage in the proceedings where he could have received some conceivable benefit (Doc. 237 at 3). That is especially so here, where the only opportunity for Ulbricht to be spared from a lifetime of imprisonment was a guilty plea, acceptance of responsibility, and a claim of mitigation at sentencing. Trial counsel's advice to proceed to trial in Ulbricht's case had a negative effect on the Court's sentencing calculus under § 3553(a) and potentially meritorious mitigating

evidence presented following trial. *See United States v. Bangert*, 645 F.2d 1297, 1308 (8th Cir. 1981) (noting that the district court rested it's sentencing decision on the defendant's "lack of truthfulness and lack of remorse.").

Remorse following a guilty verdict at trial—where scarce judicial resources are squandered on unmistakably guilty defendants—seems far less genuine than choosing to accept responsibility at the outset of the case. In sum, counsel should have explained that there were real upsides in accepting a plea deal and real downsides in rejecting it and going to trial. Only by providing such advice could Ulbricht have made an informed decision on whether to accept or reject the plea offer.

By contrast, proceeding to trial in a case with overwhelming evidence provided no benefit whatsoever. Worse yet, counsel conceded guilt on every essential element of the crimes for which Ulbricht had been charged. *See United States v. Ulbricht*, 858 F.3d 71, 89-90 (2d Cir. 2017) (recognizing that Ulbricht's "principal defense strategy at trial [was] more of an effort at mitigation than outright denial of his guilt of the conspiracy and other charges in the indictment…"); (Trial Tr. at 61 (trial counsel speaking at opening argument) ("And Silk Road was Ross's idea. He created it as a completely freewheeling, free market site that could sell anything…").[3] Trial counsel's advice was simply unreasonable under the circumstances.

---

[3] *See* Doc. 237 at 1 ("The charges against Ulbricht stemmed from his alleged design, creation, and operation of Silk Road—a sprawling online marketplace for illegal narcotics, computer hacking materials, and fraudulent identification documents."). As discussed in further detail elsewhere, counsel also stipulated to numerous transactions involving a voluminous number of narcotics that occurred via the Silk Road marketplace. Collectively, these concessions formed the basis for Ulbricht's convictions for narcotics conspiracy, money laundering, and orchestrating a continuing criminal enterprise.

Trial counsel's consequential advice violated Mr. Ulbricht's Sixth Amendment right to effective assistance at perhaps the most critical stage of these proceedings: his *one and only* opportunity to avoid federal life immurement. *See United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) ("[T]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case. . . [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision.") (internal quotations and citations omitted).

Courts regularly find ineffective assistance where counsel fails to adequately explain the sentencing exposure of pleading guilty versus going to trial, in addition to the strengths of the case against the defendant. *See Purdy v. United States,* 208 F.3d 41, 45 (2d Cir. 2000) ("[C]ounsel must communicate the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him as well as the alternative sentences to which he will most likely be exposed.") ; *United States v. Gordon,* 156 F.3d 376, 380 (2d Cir. 1998) (holding counsel ineffective where counsel failed to provide the "comparative sentencing exposure between standing trial accepting [the] plea offer"). Counsel was required to "*explain a matter* to the extent necessary to permit the client to make informed decisions regarding the representation," *Davis v. Greiner,* 428 F.3d 81, 88 (2d Cir.2005) (internal citation omitted), and here trial counsel failed to provide Ulbricht with knowledge necessary to make an informed decision. In sum, trial counsel's advice fell well short of reasonable.

**D. If Ulbricht received competent advice, he would have accepted the government's plea offer and pleaded guilty.**

Had Ulbricht been properly advised that his potential sentencing exposure would almost certainly increase following a jury trial—where counsel planned on conceding guilt anyhow—he would have pleaded guilty with the hope of avoiding a life sentence. (Ulbricht Decl. at ___). Because Ulbricht was incorrectly led to believe that he risked absolutely nothing by proceeding to trial, he rejected the government's offer of making an open plea to avoid facing additional charges (*Id.* at ___). Had Ulbricht pled guilty to the three counts listed in the Complaint via an Information and spared the government the burden of a several-week trial, there was a reasonable probability he could have avoided a sentence of life imprisonment.

Notwithstanding the serious nature of the crimes Ulbricht committed, he possesses a number of very admirable qualities (Doc. 252 at 2-3) (summarizing the various grounds advanced in mitigation). Qualities that would have undoubtedly been viewed quite differently had Ulbricht atoned for his offense early on at the outset of this case. Ulbricht was a first-time—relatively young—offender with significant family and community support (Doc. 252 at 8-12). He also had a lengthy record of devoting both time and energy to charitable endeavors. (*Id.* at 12-14). While reasonable minds could certainly debate as to the appropriate punishment for Ulbricht, the numerous letters submitted on his behalf point to an individual with the capacity for reformation. (*Id.* at 12-18). Ulbricht had a compelling case to make for mitigation at sentencing.

While entering an essentially open plea of guilty would not have bound the court in fashioning an appropriate sentence, taking a non-adversarial position would have certainly reduced the likelihood of Ulbricht receiving a trial penalty consisting of life imprisonment. *See Jones v. United States*, No. 3:14-CV-01513 (VLB), 2018 WL 325234, at *13 (D. Conn. Jan. 7, 2018)("The Court imposed a below-guideline sentence, which would have been lower had the Defendant not made statements at sentencing that convinced the Court that he was more likely to recidivate, pose a danger to the community, *and disrespect the law by refusing to accept responsibility for his co-conspirators' conduct in furtherance of their conspiracy*.") (emphasis added). Had Ulbricht been properly advised, he would have accepted the plea offer. Because Ulbricht has shown deficient performance and prejudice, he has established ineffective assistance of counsel.

That leaves only the remedy, and *Lafler* provides the appropriate remedy here. *See id.*, 566 U.S. at 174-75 (remanding with instructions that the government reoffer the plea agreement but providing the court with discretion in terms of fashioning an appropriate remedy). The court should order the government to reoffer the open plea to an Information with the charges set forth in the Complaint; the court would simply return Ulbricht to the point in the proceedings where he was prejudiced by his counsel's unconstitutionally unreasonable and erroneous advice.

**E. To The Extent The Court Were To Conclude That The Original Plea Offer Was Not A "Firm" Offer, Ulbricht's Counsel Was Ineffective For Not Advising Ulbricht To Enter An Open Plea To The Original Indictment**

While Ulbricht respectfully submits that the Government's original plea offer was a firm offer, to the extent the Court concludes that it was not, Ulbricht alternatively argues that his counsel was ineffective for failing to advise him to enter an open plea to the original Indictment. While the penalties resulting from the original Indictment were severe, for all of the reasons already discussed, there is a reasonable probability the Court would have sentenced Ulbricht to less than life in prison had he pleaded guilty in the case. Given the overwhelming evidence against Ulbricht, it was deficient performance for counsel not to have discussed with Ulbricht the option of entering an open plea to the Indictment. *See e.g., United States v. Booth*, 432 F.3d 542 (3d Cir. 2005). Moreover, Ulbricht was prejudiced by counsel's deficient performance because there is a reasonable probability that he would have entered an open plea to the original Indictment with proper advice.

**II. TRIAL COUNSEL'S COMMITTED INEFFECTIVE ASSISTANCE OF COUNSEL BY CONCEDING ALL THE ESSENTIAL ELEMENTS OF THE OFFENSE, PLEADING ULBRICHT GUILTY WITH NO BENEFIT.**

Following advice from counsel, Ulbricht rejected the government's plea offer to accept responsibility for a three count Information. He then proceeded to trial and risked the certainty of a life sentence with absolutely no hope of prevailing. Shortly after the jury was empaneled, however, counsel conceded Ulbricht's guilt with respect to the most consequential offenses in the indictment. He did so without consulting with Ulbricht and ultimately deprived him of any opportunity to avoid a life sentence.

The result was a proceeding where trial counsel altogether failed to subject the prosecution's case against to adequate adversarial testing. For this reason, Ulbricht asserts that these unique circumstances constitute a constructive denial of counsel and warrant a finding or *per se* prejudice, as recognized by the Supreme Court in *United States v. Cronic,* 466 U.S. 648 (1984).

### A. Trial counsel failed to subject the government's case to adequate adversarial testing when he plead Ulbricht guilty at trial.

A guilty plea, as the Supreme Court recognized in *Boykin v. Alabama,* 395 U.S. 338 (1969), is an is an event of signal significance in a criminal proceeding. By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one's accusers *Id.* at 243. While a guilty plea may be tactically advantageous for the defendant in certain circumstances, the decision to do so rests solely with the client. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Absent an express waiver of such constitutional guarantees on the record, the full panoply of trial rights must be accorded to the defendant. That is true even when counsel believes the evidence against his client is strong. *See Cronic*, 466 U.S. at 656 n.19 (1984) ("[E]ven when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt."). While a defense lawyer must, of course, be "interested in preventing the conviction of the innocent, . . . absent a voluntary plea of guilty," it is crucial that a defense lawyer also "defend his client whether he is innocent or guilty."

*United States v. Wade,* 388 U.S. 218, 257 (1967) (White, J., concurring in part and dissenting in part).

There are, however, limited exceptions where lawyers have been permitted to concede guilt in various aspects of a criminal prosecution without constitutional consequences. While highly circumscribed in scope, an attorney's carefully tailored concessions will not be deemed ineffective so long as the objective was reasonably related to securing a material benefit for his client. *See Florida v. Nixon,* 543 U.S. 175, 190-93 (2004) (discussing an instance in which counsel made a reasonable strategic choice to concede defendant's guilt in consideration of the best outcome in the penalty phase); *Roblero v. Kernan,* 756 Fed. Appx. 688, 690 (9th Cir. 2018) ("Where the evidence of guilt on some counts is overwhelming, it may be sound strategy for defense counsel to concede guilt on those charges and focus on the more defensible charges, particularly if the defensible charges carry a greater penalty."); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991) (conceding guilt of lesser included offense is "a sound tactic when the evidence is indeed overwhelming . . . and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury"). In doing so, moreover, counsel must remain mindful of consulting with the client regarding the resulting waiver of rights. *See Nixon*, 543 U.S. at 190; *Strickland v. Washington,* 466 U.S. 668, 688 (1984).

None of these constitutional prerequisites mentioned immediately above were satisfied here. Ulbricht proceeded to trial under the impression that it was in his best interest *not* to plead guilty. Ulbricht was led to believe, albeit incorrectly, that his

*only* hope of avoiding a sentence of life imprisonment was obtaining an acquittal on the more serious offenses. Yet after the ideal time to plead guilty had passed, counsel decided to concede guilt as to these crimes anyways, thereby guaranteeing Ulbricht's conviction on the most consequential offenses and the very life sentence he sought to avoid by rejecting the government's plea offer. Counsel did so even though the object of the defense was to put the government to the burden of proof.

Trial counsel conceded in his Opening Statement that Ulbricht had created and run the Silk Road website for a few months (Doc 237 at 2). That concession essentially constituted Ulbricht's admission of guilt—subject to minimal corroborating evidence—much of which was subsequently stipulated to by trial counsel. The government obtained from trial counsel precisely what they needed in order to persuade the jury to convict Ulbricht of each of the major charges against him, including:

> (A) Count One, Narcotics Trafficking, where all the government was required to prove was (1) that Ulbricht distributed or aided and abetted the distribution of controlled substances, and (2) that he did so knowingly or intentionally (Doc 177 at 34);
>
> (B) Count Two, Distributing or Aiding and Abetting the Distribution of Narcotics by Means of the Internet, where the government had to prove (1) that the defendant aided and abetted others in delivering or distributing a controlled substance, and (2) that the delivery or distribution was accomplished by means of the Internet (Doc. 177 at 42);
>
> (C) Count 3, Conspiracy to Violate the Narcotics Laws (Doc 177 at 49). The jury was specifically instructed that the extent of the defendant's participation in the narcotics conspiracy has no bearing on whether or not he is guilty, and that it does not matter whether the defendant's role in the conspiracy may have been more limited or different in nature from the roles of other co-conspirators. Doc. 177 at 54. The

jury was also instructed that ceasing to participate in a conspiracy does not establish withdrawal from a conspiracy, and that committing subsequent acts to benefit a conspiracy, after initially attempting to withdraw, defeats any claim that the defendant withdrew from the conspiracy (*Id.*)

(D) Count 4, Continuing Criminal Enterprise, where the government had to prove that Ulbricht committed a federal narcotic felony as part of a series of such offenses, in cooperation with five or more people whom he organized or managed, and from which he derived substantial profit (Doc. 177 at 62-63).

Trial counsel conceded that Ulbricht created and ran the Silk Road. Stipulations were entered into where counsel agreed that numerous Silk Road vendors sold and delivered controlled substances (Trial Exhibits 801 and 801A, 802 and 802A). These same stipulations further acknowledged that Dread Pirate Roberts (allegedly the same person as Ulbricht) charged a commission on each of these unlawful transactions. These facts proved each of the immediately above identified charges, including Counts 2 and 4, which led to concurrent terms of life imprisonment (Doc. 277 at 94).

### B. Pleading Ulbricht guilty before a jury rather than a judge, all but guaranteed him a life sentence and constitutes a constructive denial of within the meaning of *Cronic*.

With no forewarning to his client, trial counsel conceded all the essential elements of the crimes against his client, pleading his client guilty and removing the government's burden of proof. As a result, counsel failed to subject the prosecution's case to meaningful adversarial testing.

In *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court defined the differences between ineffective assistance claims governed by *Strickland* and claims governed by

*Cronic*. If a claim is governed by *Strickland*, a defendant must typically demonstrate that specific errors made by trial counsel affected the ability of the defendant to receive a fair trial. If a claim is governed by *Cronic*, however, the defendant need not demonstrate any prejudice resulting from the lack of effective counsel. Three types of cases warrant *Cronic's* presumption-of-prejudice analysis. The first is the complete denial of counsel, in which "the accused is denied the presence of counsel at 'a critical stage.'" *Bell*, 535 U.S. at 695. The second is when counsel "'entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *Id.* (quoting *Cronic*, 466 U.S. at 659). The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance. *Id.*

Trial counsel's concession of guilt entirely failed to subject the prosecution's case to meaningful adversarial testing. *See Cronic,* 466 U.S. at 668. Trial counsel's concession and his stipulation to the drug evidence defeated any defense that Ulbricht might have had. After conceding that Ulbricht had created and managed the Silk Road, trial counsel provided no evidence or plausible argument that Ulbricht had withdrawn from the narcotics conspiracy, or that he had never joined the conspiracy (Doc. 237 at 2-3). *See e.g., United States v. Flaharty,* 295 F.3d 182, 192 (2d Cir. 2002) ("Withdraw is an affirmative defense and the defendant has the burden of showing that he performed affirmative acts that were "inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators, mere cessation of activity is insufficient.") (internal citations and quotations omitted); *United States v. Rodriguez,* 392 F.3d 539, 544 (2d Cir. 2004) ("To

sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it."). In fact, trial counsel expressly decided against advancing any claim that Ulbricht withdrew from the conspiracy. *See* Tr. 1567 ("Our defense is not withdrawal."); Doc. 168 at 4 ("As a threshold matter, the government's proposed instruction regarding withdrawal is inappropriate because Mr. Ulbricht does not intend to interpose the defense of withdrawal.").

The Supreme Court has recognized that defense counsel's concession of guilt at trial can constitute a constructive denial of counsel claim. In *Florida v. Nixon*, 543 U.S. 175 (2004), the Court considered whether defense counsel's strategic concession of guilt in a capital case was the constructive denial of counsel. The Court noted that "the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus." *Id*. at 191. As a result, the Court found that defense counsel's concession during a death penalty case, in which there was overwhelming evidence of guilt, was a wise strategic decision to lower the chance that the death penalty would be imposed. The Court thus concluded that defense counsel's concession was not the constructive denial of counsel. The Court, however, noted that "such a concession in a run-of-the-mine trial might present a closer question." *Id*. at 90. Such a question is presented here.

This was a non-capital case in which there was no strategic justification for counsel to plead his client guilty in the context of a trial and thus not subjecting the

case to meaningful adversarial testing. The constructive denial of counsel is established. The Court should accordingly grant § 2255 relief and afford Ulbricht a new trial.

### III. WHEN TRIAL COUNSEL CONCEDED GUILT, ULBRICHT'S RIGHT TO COUNSEL AND AUTONOMY WAS VIOLATED, WHICH IS STRUCTURAL ERROR REQUIRING REVERSAL OF ULBRICHT'S CONVICTIONS.

Trial counsel usurped Ulbricht's control over the objective of his defense, which was to rely on the presumption of innocence and put the government to its proof when he conceded Ulbricht's guilt in his opening statement and numerous stipulations. Trial counsel conceded Ulbricht's guilt without Ulbricht's understanding or consent because Ulbricht was led to believe that counsel's actions were still consistent with his strategy to contest Ulbricht's guilt.

The Sixth Amendment guarantees a defendant the assistance of counsel to aid him in his defense. U.S. Constitution, Amendment VI. The defendant's right to *assistance of counsel* recognizes that the defendant himself sets the objectives of the defense. *See Faretta v. California*, 422 U.S. 807, 820 (1975); *Gannett Co. v. DePasquale*, 443 U.S. 368, 382 (1979). While there are some decisions that trial counsel can make, the decision whether to plead guilty is not one of them.

The right to defend is personal to the defendant. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1509-1510 (2018). While counsel may manage some trial details, fundamental decisions remain for the defendant, including the decisions "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. *Id.* Autonomy to decide the objective of the defense in whether to plead guilty

or to contest guilt, is one of those fundamental decisions reserved to the defendant. *Id.*

Trial counsel's concession here, that Ulbricht created and ran the Silk Road, was not based on any reasonable or permissible trial strategy.[4] Trial counsel's actions do not measure up to the *reasonably effective assistance of* that is guaranteed by the Sixth Amendment. *See Strickland* 466 U.S. at 687. There are some actions by trial counsel, such as conceding guilt, which can never be found reasonable: "guilt is almost always the only issue for the jury [in non-capital cases], and therefore admitting guilt of all charged offenses will achieve nothing. It is hard to imagine a situation in which a competent attorney might take that approach." *McCoy,* 138 S.Ct. at 1514 (Alito, J., dissenting).

When a defendant's autonomy right (including the right to contest guilt and have his jury trial) is violated by counsel, he need not show prejudice because his claim is not subject to traditional ineffective-assistance-of-counsel analysis. *McCoy,* 138 S.Ct. at 1510-1511. Violation of the right to autonomy is structural error and is not subject to harmless error review. *Id.* Such an error requires reversal without further inquiry because "the right at issue is not designed to protect the defendant against erroneous conviction but instead protects some other interest," such as "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his liberty." *Id.* (quoting *Weaver v. Massachusetts*, 137 S. Ct. 1899,

---

[4] The government certainly treated trial counsel's concession as proof of Ulbricht's guilt when, in Closing Argument, the government attorney reminded the jury that "trial counsel ""admitted that the defendant started Silk Road." Tr at 2164.

1910 (2017)). A trial in which trial counsel compromises his client's right to be presumed innocent, and in which trial counsel concedes his client's guilt, is fundamentally unfair. For the reasons provided above, Ulbricht should be granted a new trial.

## IV. <u>An Evidentiary Hearing Is Warranted</u>

Under section 2255, an evidentiary hearing is warranted and must be granted "[u]nless the motion and the files and record of the case *conclusively show* that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (emphasis added). The standard to obtain an evidentiary hearing is not a "high bar for petitioners to meet." *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008). Here, the record evidence does not refute Ulbricht's claim that his trial attorney advised him to reject a plea offer because he incorrectly believed Ulbricht's sentencing exposure would not worsen after a trial. Similarly, Ulbricht's other claims are not refuted by the record evidence. Ulbricht's claims are non-conclusory and—if proven true—would entitle Ulbricht to § 2255 relief. Therefore, the Court should hold an evidentiary hearing in this case.

## Conclusion

Based on the foregoing, the Court should grant Ulbricht 28 U.S.C. § 2255 relief.

/s Zachary Lee Newland
Zachary Lee Newland
Senior Litigation Counsel
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Tel:  (802) 444-4357
Fax: (802) 779-9590
E-mail: zach@brandonsample.com
Texas Bar: 24088967
https://brandonsample.com

*Counsel for Ross William Ulbricht*


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this

28th day of June 2019, via CM/ECF on all counsel of record.

s/ Zachary L. Newland
Zachary L. Newland